Matthew C. Helland, CA State Bar No. 250451
helland@nka.com
Daniel S. Brome, CA State Bar No. 278915
dbrome@nka.com
NICHOLS KASTER, LLP
One Embarcadero Center, Suite 720
San Francisco, CA  94111
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

Attorneys for Plaintiffs and the putative class

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Dev Anand Oman, Todd Eichmann, and Michael Lehr, individually, on behalf of others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>Delta Air Lines, Inc.,<br><br>Defendant. | **Case No. 3:15-CV-00131-WHO**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT, AND MEMORANDUM OF LAW IN SUPPORT THEREOF AND IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:          November 18, 2015<br>Time:          2:00 p.m.<br>Courtroom:  2, 17th Floor<br>Judge:         Hon. William H. Orrick |

TO DEFENDANT AND ITS COUNSEL OF RECORD: Please take notice that on November 18, 2015, at 2:00 p.m. in Courtroom 2 on the 17th Floor of the above-captioned Court, Plaintiffs will and hereby do move this Court to enter summary judgment, pursuant to Federal Rule of Civil Procedure 56, in their favor on Delta's liability with respect to their First Cause of Action (failure to pay minimum wages in violation of California Labor Code sections 1182.12, 1194, 1194.2, and IWC Wage Order 9-2001).

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Supporting Declaration of Matthew Helland and accompanying exhibits, arguments of counsel, and the papers, records, and pleadings on file in this matter.

Dated: October 14, 2015                    NICHOLS KASTER, LLP

                                    By:    s/Matthew C. Helland
                                           Matthew C. Helland
                                           Daniel S. Brome

                                           Attorneys for Plaintiffs and the putative
                                           class

## **TABLE OF CONTENTS**

MEMORANDUM OF LAW AND POINTS OF AUTHORITIES ................................................... 1

I.    INTRODUCTION ................................................................................................................. 1

II.   STATEMENT OF FACTS ................................................................................................... 2

    A.    Delta Pays Plaintiffs Primarily Under the Flight Pay Formula, Which Does Not Pay For All Hours Worked ................................................................. 4

    B.    Delta's Other Compensation Formulas Provide Additional Pay for Some, But Not All, Hours Worked ................................................................... 5

        1.    Minimum Duty Period Credit / Average ........................................... 5

        2.    Trip Credit ......................................................................................... 6

        3.    1 for 2 Duty Period Credit ................................................................. 6

    C.    Delta's Business Model Requires its Flight Attendants to Have Significant Contacts with California ............................................................. 10

III.  ARGUMENT ...................................................................................................................... 11

    A.    California Minimum Wage Law Applies to Work Performed in California by Delta Flight Attendants .......................................................... 12

        1.    California Has Significant Interest in Applying its Laws to Work Performed in California ............................................................ 14

        2.    No Federal Law Prevents Application of California Minimum Wage Law ......................................................................................... 15

        3.    Delta's "de minimis" Defense Cannot Preclude the Application of California Law or a Finding of Liability .......................................... 17

        4.    Plaintiffs Do Not Seek Extraterritorial Application of California Law .................................................................................................... 18

    B.    Delta Violates California's Minimum Wage Law by Failing to Compensate Flight Attendants for All Hours Worked in California ............................ 18

        1.    Delta's Flight Pay Formula Violates California Law ....................... 19

        2.    The 1 for 2 Duty Period Credit Formula Does Not Cure Delta's Pervasive Minimum Wage Violations ............................................. 22

            i.    Delta's misrepresentation of the facts does not create triable issues, and cannot support judgment in Delta's favor ................. 24

            ii.   The 1 for 2 Duty Period Credit supports judgment in Plaintiffs' favor .................................................................... 26

        3.    The Minimum Duty Period Credit (4:45) and Time Away From Base Credit (1 for 3.5) Do Not Ensure that Flight Attendants Are Paid for Each Hour Worked ............................................................. 28

    C.    Delta Is Liable for Violations Under the Former NWA Work Rules, Because Delta Has Been Plaintiffs' Employer and Has Applied Consistent Pay Practices Throughout the Statutory Period ......................... 30

IV.   CONCLUSION .................................................................................................................. 30

1

### TABLE OF AUTHORITIES

2

CASES

3   *Aguilar v. Zep Inc.*, 2014 WL 4245988 (N.D. Cal. 2014) ........................................................ 13-14

4   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...................................................... 24

5   *Angeles v. U.S. Airways, Inc.*, 2013 WL 622032 (N.D. Cal. 2013) ................................. 17

6   *Armenta v. Osmose, Inc.*, 135 Cal.App.4th 314 (2005) ........................................12, 18-22, 27-29

7   *Brinker Rest. Corp. v. Superior Court*, 53 Cal.4th 1004 (2012) ..................................... 11

8   *Balasanyan v. Nordstrom, Inc.*, 913 F.Supp.2d 1001 (S.D. Cal. 2012) ............................ 20, 27, 29

9   *Californians For Safe & Competitive Dump Truck Transp. v. Mendonca*,
10  152 F.3d 1184 (9th Cir. 1998) ........................................................................................ 16

11  *Campagna v. Language Line Servs., Inc.*, 2012 WL 1565229 (N.D. Cal. 2012) .......................... 13

12  *Cardenas v. McLane FoodServices, Inc.*, 796 F.Supp.2d 1246 (C.D. Cal. 2011) .................... 20-26

13  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................. 11

14  *Cotter v. Lyft*, 60 F.Supp.3d 1059 (N.D. Cal. 2014) ................................................... 13, 15

15  *DeSaint v. Delta Air lines, Inc.*, 2015 WL 1888242 (D. Mass. 2015) ............................... 22

16  *Dilts v. Penske Logistics, LLC*, 769 F.3d 637 (9th Cir. 2014)
17  *cert. denied* 135 S. Ct. 2049 (2015) ............................................................................. 16

18  *Fair Housing Council of Riverside County, Inc. v. Riverside Two*,
19  249 F.3d 1132 (9th Cir. 2001) ........................................................................................ 11

20  *Gonzalez v. Downtown LA Motors, LP*, 215 Cal.App.4th 36 (2013) ................................20-22, 27

21  *Harris v. Pac Anchor*, 59 Cal.4th 772 (2014) *cert. denied* 135 S. Ct. 1400 (2015) ...................... 16

22  *In re Hitachi Television Optical Block Cases*, 2011 WL 9403 (S.D. Cal. 2011) .......................... 14

23  *Jimenez v. Servicios Agricolas Mex, Inc.,* 742 F. Supp. 2d 1078 (D. Ariz. 2010) ........................ 13

24  *Knepper v. Rite Aid Corp.*, 675 F.3d 249 (3d Cir. 2012) ................................................... 16

25  *McMahon v. Delta Air Lines, Inc.*, 830 F. Supp. 2d 674 (D. Minn. 2011) ........................... 17

26  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ..................................... 11

27  *Ontiveros v. Zamora*, 2009 WL 425962 (E.D. Cal. 2009) ................................................... 20

28  *Pac. Merch. Shipping Ass'n v. Aubry*, 918 F.2d 1409 (9th Cir. 1990) ........................................ 16

*Priyanto v. M/S Amsterdam,* No. 07-cv-3811 AHM,
2009 WL 175739 (C.D. Cal. Jan. 23, 2009) ................................................................. 13

*Quezada v. Con-Way Freight, Inc.*, 2012 WL 2847609 (N.D. Cal. 2012) ......................... 16, 20-21

*Ridgeway v. Wal-Mart Stores, Inc.*, 2014 WL 2600326 (N.D. Cal. 2014) ......................... 20-21, 26

*Rutti v. Lojack Corp.*, 596 F.3d 1046 (9th Cir. 2010) ..................................................... 18

*S.A. Empresa De Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.,*
690 F.2d 1235 (9th Cir. 1982) ...................................................................................... 24

*Sarviss v. Gen. Dynamics Info. Tech., Inc.,* 663 F. Supp. 2d 883 (C.D. Cal. 2009) ...................... 13

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234 (2d Cir. 2011)............................. 16

*Spoerle v. Kraft Foods Global, Inc.*, 614 F.3d 427 (7th Cir. 2010) .......................................... 16

*Stiller v. Costco Wholesale Corp.*, 298 F.R.D. 611 (S.D. Cal. 2014) ....................................... 17

*Sullivan v. Oracle*, 51 Cal.4th 1191 (2011) ............................................................... 12-13

*Tidenberg v. Bidz.com, Inc.,* 2009 WL 605249 (C.D. Cal. Mar. 4, 2009) .................................. 13

*Tidewater Marine W., Inc. v. Bradshaw*, 14 Cal. 4th 557 (1996) ............................................ 16

*Tokoshima v. Pep Boys Manny Moe & Jack of California,*
2014 WL 1677979 (N.D. Cal. 2014) .......... ............................................................... 27

STATUTES

29 U.S.C. § 218(a) ...................................................................................................... 15

45 U.S.C. §§ 151 *et seq.*............................................................................................ 13, 16-17

49 U.S.C. § 14501(c)(1)................................................................................................ 16

49 U.S.C. § 41713 ...................................................................................................... 16

Cal. Lab. Code § 221 .................................................................................................. 19

Cal. Lab. Code § 222 .................................................................................................. 19

Cal. Lab. Code § 223 .................................................................................................. 19

Cal. Lab. Code § 226 .................................................................................................. 24

Cal. Lab. Code § 1171.5(a) ........................................................................................... 12

Cal. Lab. Code § 1182.12 .......................................................................................... 12, 13

Cal. Lab. Code § 1194 ............................................................................................. 13, 22

Cal. Lab. Code § 1194.2 ............................................................................................ 13

Cal. Lab. Code § 2810.5 ............................................................................................ 24


OTHER AUTHORITY

Cal. Code Regs. tit. 8 § 11090 *et seq.* ................................................................. 11, 13

Fed. R. Civ. P. 56 ...................................................................................................... 11

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT & OPPOSITION TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

## MEMORANDUM OF LAW AND POINTS OF AUTHORITIES

## I. INTRODUCTION

Delta Air Lines, Inc. ("Delta") systematically fails to pay flight attendants for pre-flight and post-flight work. Indeed, the entire time Delta flight attendants are performing safety checks, boarding passengers on the plane, and helping passengers load carry-on luggage, they are not being properly paid. While flight attendants are generally required to report for work an hour before their first flight of the day departs, Delta's standard compensation formula only pays for time after the flight leaves the gate. Similarly, Delta fails to separately compensate flight attendants for time worked after a flight pulls into the gate at its destination.

While this policy is unpopular with flight attendants everywhere, it is not unlawful under federal law or most states' laws. In California, however, minimum wage laws are significantly more protective for workers, and require employers to pay at least minimum wage for every _hour_ (or part of an hour) worked, not just for every _week_. Because Delta pays Plaintiffs primary based on the Flight Pay formula, and because the Flight Pay formula fails to pay for pre- or post-flight work, Plaintiffs are entitled to judgment on their minimum wage claims.

Realizing the Flight Pay formula violates California law, Delta focuses its motion on its "1 for 2 Duty Period Credit" formula. According to the plain language of the work rules, however, this formula only pays Plaintiffs for one out of every two hours worked, and Delta fails to create a genuine issue of material fact to show that it operates differently. In the same manner, Delta's other two pay formulas (Minimum Duty Period Credit / Average and Trip Pay) unambiguously fail to separately pay Plaintiffs for each hour worked. The Court must therefore deny Delta's motion and enter judgment for Plaintiffs.

In an effort to narrow the impact of its minimum wage violations, Delta argues that the California Labor Code does not protect non-resident flight attendants when they work in California. But as this Court has previously recognized, the California Supreme Court squarely rejects this argument. Delta's significant California contacts include a payroll of 1,400 California-based flight attendants, a $229,000,000 investment in Los Angeles International Airport, and a business model that depends on moving customers (and flight attendants) from around the country

1  into California. Accordingly, Plaintiffs now ask this Court to enter summary judgment that Delta,

2  as Plaintiffs' employer throughout the statutory period,[1] systematically failed to separately pay

3  Plaintiffs for their work on the ground in California before, after, and between flights.

4  **II.    STATEMENT OF FACTS**

5  Plaintiffs are (or were) flight attendants for Delta. (Def. Ans. First Am. Compl., ECF No.

6  27, ¶¶ 5, 7, 9.) Each Plaintiff came under Delta's employ on May 1, 2009, after Delta's merger

7  with Northwest Airlines ("NWA"). (*Id.*) At all relevant times, Delta paid its flight attendants

8  (including Plaintiffs) pursuant to uniform pay practices. (*Id.* ¶ 16; Declaration of Matthew Helland

9  ("Helland Decl.") Exs. 1-3.) Delta's employment rules and policies for flight attendants are

10  outlined in a written document called the work rules. The work rules have been modified multiple

11  times over the past several years; new versions are published periodically (*see id.*), and each page

12  shows the date that page was last modified. (Moreau Dep. 37:10-38:10.)[2]

13  All Delta flight attendants have been subject to the same set of work rules since May 1,

14  2012. (Moreau Dep. 34:17-35:18.) Prior to that date, Delta compensated former NWA flight

15  attendants (like Plaintiffs) under NWA's pre-merger policies (Helland Decl. Ex. 4[3], the "Former

16  NWA Work Rules"), while pre-merger Delta employees were subject to previous versions of the

17  current work rules. (*see* Ex. 3.) Delta admits that the Former NWA Work Rules are substantially

18  similar to the Delta work rules in effect at that time and since. (ECF No. 32 at 8; Ex. 5.)

19  Delta flight attendants work a series of "rotations" throughout the month. "A rotation is a

20  preplanned sequence of flights that a flight attendant is expected [to work]." (Moreau Dep. 39:9-

21  10.) Each rotation is made up of one or more "duty periods." A duty period lasts from "the time

22  that the flight attendant reports for duty, until the time that they are released from duty for that

23  particular day or period." (Moreau Dep. 40:8-10.) Duty periods have maximum durations, based

24  on federal regulations. (Moreau Dep. 166:19-167:20.) A duty period consists of one or more

25  _____

26  [1] As explained in more detail below, Plaintiffs assert claims—and now seek judgment—for the full statutory period. (*See* ECF No. 24, ¶¶ 3, 4, 15, 30, 35, 83.) Delta has only moved for summary judgment for period after May 1, 2012. (ECF No. 32 at 11 (citations are to ECF page numbers).)

27  [2] Relevant selections from the Fed.R.Civ.P. 30(b)(6) deposition of Delta Air Lines, Inc., given by Mr. Moreau, are attached as Exhibit 18 to the Helland Declaration.

28  [3] All exhibit references are to the Helland Declaration unless otherwise noted.

flights, or "segments." (*See id.* at 41:6-8.) Time between two segments, within the same duty period, is referred to as "turn time," "sit time," or "transit time." (*Id.* at 44:4-19.) Thus, one or more flights make up a duty period, and one or more duty periods make up a rotation.

The "duty period" comprises flight attendants' work day, and Delta admits its flight attendants are "on duty" for the duration of their duty period. (Moreau Dep. 44:25-45:6, 46:17-20 ("a flight attendant during a duty period is on duty, and is subject to the rules and regulations of Delta Air Lines"); ECF No. 27, ¶ 20.) They are required to report for the start of a duty period at least an hour prior to the scheduled departure of their first flight for domestic flights, and up to an hour and half prior to scheduled departure for international flights. (Moreau Dep. 51:5-19; Ex. 6 at DELTA007277.) If a flight attendant is five minutes late, Delta locates a replacement flight attendant and removes the flight attendant from the rotation. (Moreau Dep. 53:21-54:4.) After participating in a preflight briefing and performing other work activities, flight attendants proceed to the gate for their flight. (*Id.* at 70:8-77:4; Ex. 6 at DELTA007253.) Flight attendants are required to be at the gate at least 40 minutes prior to departure. (Ex. 6 at DELTA007277.) Boarding then begins at least 35 prior to departure. (*Id.*) Flight attendants have several work responsibilities prior to boarding. (*Id.* at DELTA007253-54.) Delta admits flight attendants perform work prior to each flight's departure. (ECF No. 27, ¶ 18.) As outlined in more detail below, however, flight attendants are not paid for this pre-flight time.

Flight attendants also have work responsibilities after a plane lands, including deplaning passengers and performing safety checks. (Ex. 6 at DELTA007257-58.) Flight attendants must remain on board until all passengers have deplaned except to perform a safety-related duty. (Moreau Depo. at 158:6-13.) Although Delta admits flight attendants perform work duties after a plane lands, ECF No. 27, ¶ 19, it does not pay for that time. (*See infra* §§ 1.A, 1.B.)  During a turn (i.e., between flights in the middle of a duty period), flight attendants "must remain at the airport for possible contact from Crew Tracking. Flight Attendants must be contactable at all times in the event of changes in flight times or routing." (Ex. 1 at DELTA000783.) Assuming no changes in schedule, flight attendants must report to the gate at least 40 minutes prior to the departure of their next flight. (Moreau Dep. 105:14-106:16; Ex. 6 at DELTA007277.) Even though Delta "considers

the turn time to be duty time for purposes of compensation," ECF No. 32 at 13, it does not pay

Flight Attendants for this time. (*See infra* §§ 1.A, 1.B.) After flight attendants complete their final

flight of a duty period, they are released to a hotel for layover (mid-rotation) or to home (at the end

of a rotation).

**A.    Delta Pays Plaintiffs Primarily Under the Flight Pay Formula, Which Does Not Pay For All Hours Worked**

Delta expresses flight attendant pay as an hourly "Flight Pay" rate. (Ex. 1 at

DELTA000810, Ex. 2 at DELTA000554.) "Flight Attendant compensation is paid as an hourly

rate for all hours flown or credited." (Ex. 1 at DELTA000807; Ex 2 at DELTA000551; *accord* Ex.

4, at DELTA007383-84.) Delta's "Flight Pay" formula pays flight attendants based on scheduled

or actual flight time, which is measured from the time a flight "blocks out" for departure until the

time in "blocks in" at arrival. (Ex. 1 at DELTA000810; Moreau Dep. 41:24-42:09, 169:21-23; Ex.

4 at DELTA007375, 87.) For this reason, flight pay is sometimes referred to as "block" pay. Flight

Pay does not include time prior to block out or after block in. (Moreau Dep. 169:21-23.)

Accordingly, the Flight Pay formula does not pay flight attendants for the one hour (or more) of

work from report to departure (including boarding), for turn time, or for deplaning time.

Delta designs its pairings to maximize the number of rotations paid under the Flight Pay

formula, thereby minimizing additional compensation through other pay formulas. (Ex. 1 at

DELTA000855 ("Pairings are constructed using defined parameters including . . . Cost

effectiveness (reduced duty period credit, time away from base, and hotel costs"); Moreau Dep.

183:6-23.) Plaintiffs' flight records bear out Delta's intentions. (*See* Exs. 7-9[4]; Frederick Decl. Exs.

H, I, J.)[5] For example, Plaintiff Lehr worked 681 flights into or out of California between January

1, 2011 and May 1, 2015. (*See* Ex. 9; Frederick Decl. Ex. J.) Of those 681 flights, Lehr received

some sort of Duty credit on 52 flights, and Trip Credit on 50 flights[6]. (*Id.*) The remaining 579

flights (i.e. **85% percent of Lehr's California flights) paid Flight Pay only**. (*Id.*) Plaintiff

---

[4] In these records, any 1 for 2 Duty Period Credit, Minimum Duty Period Average / Credit, or Trip Credit pay is reflected next to the corresponding flight in the "Duty Cred" or "THC Total" columns. (Moreau Dep. 211:2-10, 222:2-223:24.) Therefore, a flight with a zero in those columns was paid solely based on Flight Pay.
[5] Delta filed the Frederick Decl. and exhibits at ECF No. 33, 34 and 35.
[6] These credits are described in more detail below.

Eichmann worked 178 flights into or out of California between January 1, 2011 and May 1, 2015. (*See* Ex. 8, Frederick Decl. Ex. I.) Of those 178 flights, Eichmann received some sort of Duty credit on 19 flights and Trip Credit on 10 flights. (*Id.*) The remaining 149 flights (i.e. **84% of Eichmann's California flights) paid Flight Pay only.** (*Id.*) Plaintiff Oman worked at least 27 flights into or out of California between November 24, 2011 and August 8, 2014. (*See* Ex. 7, Frederick Decl. Ex. H.) Of those 27 flights, Oman received 10 minutes of Duty Period credit on 1 flight, and 13 minutes of Trip Credit on 1 other flight. (*Id.*) The remaining 25 flights (i.e. **93% of Oman's California flights) paid Flight Pay only**. (*Id.*)

> **B.    Delta's Other Compensation Formulas Provide Additional Pay for Some, But Not All, Hours Worked**

Delta's three remaining pay formulas (Minimum Duty Period Credit / Average; Trip Credit; and 1 for 2 Duty Period Credit) sometimes pay flight attendants additional compensation on top of flight pay for some (but not all) hours worked. Delta's documents clearly describe these pay formulas and evidence their operation.

> **1.    Minimum Duty Period Credit / Average**

The Minimum Duty Period Credit / Average formulas applied at different times under the work rules. The current version of the work rules applies a Minimum Duty Period Credit. Under this credit, Delta pays a minimum of 4 hours and 45 minutes (or "4:45") for each duty period in a rotation. (Moreau Dep. 169:25-170:5; Ex. 1 at DELTA000812.) The credit is paid at the flight pay rate. (*Id.* at 170:7-10.) Previous versions of the work rules applied a Duty Period Average. (*Id.* at 174:15-17; Ex. 2 at DELTA000556.) The Duty Period Average took the entire rotation into account and guaranteed a total credit of at least 4:45 times the number of duty periods in the rotation. (*Id.* at 175:4-22.) The work rules do not define which portion of the duty period the 4:45 guarantee is meant to compensate. (Ex. 1 at DELTA000812.)

Under the Former NWA Work Rules, the Minimum Duty Period Credit paid a minimum of 4:15 of flight pay for each duty period. (Ex. 4 at DELTA007384.) The rules expressly provided that the credit "shall be computed and credited as a continuation of the last flight in the duty period or trip hour period." (*Id.*) Thus, the credit expressly failed to compensate flight attendants for turn time or pre-flight time earlier in the duty period. Delta's records show that under all versions of the

1  rules, the Minimum Duty Period Credit applies like the 1 for 2 Duty Period Credit; credit is added

2  to the flight attendant's block time, and all credits are paid at the flight pay rate. (*See*, Exs. 7-9.)

3          **2.    Trip Credit**

4          Some version of the Trip Credit has always existed under the work rules. (Moreau Dep.

5  173:23-175:1.) The credit pays "one hour for every 3.5 hours" of time "[f]rom the first report of

6  the rotation until the last release of the full rotation." (*Id.* at 170:19-171:3; *accord* Ex. 1 at

7  DELTA000813.) "It is paid at the hourly flight pay rate." (*Id.* at 171:7.) Although the credit pays

8  only 1 hour out of every 3.5 hours, the rules do not identify *which* hours are compensated. (*See* Ex.

9  1 at DELTA000813.)

10         Under the Former NWA Work Rules, the Trip Hour Credit pays 1 hour of flight pay for

11  each 3 hours and 36 minutes of a rotation. (Ex. 4 at DELTA007384.) Like the Minimum Duty

12  Period Credit, this credit was applied to the end of the duty period or trip, (*id.*) and therefore did

13  not compensate flight attendants for any turn time or pre-flight time earlier in the duty period.

14  Like the duty period credits, and under all versions of the work rules, Trip Credit is added to the

15  flight attendant's block time and is paid at the flight pay rate. (*See*, Exs. 7-9.)

16         **3.    1 for 2 Duty Period Credit**

17         Delta's motion for summary judgment relies most heavily on the 1 for 2 Duty Period

18  Credit. However, the motion fundamentally misrepresents the Duty Period Credit calculation.

19  Delta's work rules state the formula concisely: "You will be credited with **1 hour of flight pay for**

20  **every 2 hours on duty**." (Ex. 1 at DELTA000811; Ex. 3 at DELTA002428; *accord* Ex. 4 at

21  DELTA007384 (depending on the report time, Duty Period Credit pays 1 hour of flight pay for

22  every 2 hours of duty or 1 hour flight pay for each one hour and 1:45 of duty hours).) Thus, the 1

23  for 2 Duty Period Credit pays flight attendants for half their hours worked. The work rules are

24  explicit that this <u>credit</u> supplements Flight Pay, and not the other way around: "The 1 for 2 Duty

25  Period Credit will be credited at the end of the duty period in which it was earned and on the

26  calendar day the last flight for that duty period was scheduled to depart." (Ex. 1 at

27  DELTA000811.) The work rules contain examples of the 1 for 2 Duty Period Credit for clarity:

28         **Example C – Pays 1 for 2 Duty Period Credit:** A 12:30 duty day with 5:10 flight
         time. The pay calculation compares the flight time of 5:10, to the minimum duty

period credit of 4:45, and to the 1 for 2 duty period credit of **6:15 (12:30 divided by 2)**. The total pay for this duty period is **6:15** of 1 for 2 duty period credit.

(Ex. 1 at DELTA000807 (emphasis added).)

> **Example:** You are scheduled for a turnaround worth 6:00 block time with a scheduled duty period length of 10:00. Due to an operational delay, your duty period is lengthened to 14:00. **You will be paid 7:00** for the turnaround, comprised of 6:00 block time and 1:00 of 1 for 2 duty credit **(14:00 divided by 2).**

(*Id.* at DELTA000811, Ex. 3 at DELTA002428 (emphasis added).)

Delta's corporate designee confirmed the Duty Period Credit calculation:

Q: And then what is the 1 for 2 Duty Period Credit?
[objection omitted]
A: . . . For every two hours on duty, **one hour will be credited and paid *at the flight pay rate*.**

(Moreau Dep. 170:12-17 (emphasis added).)[7] He later testified that the description of the 1 for 2 Duty Period Credit contained in the rules ("You will be credited with one hour of flight pay for every two hours on duty for any given duty period") accurately reflects Delta's actual practices with respect to the calculation of 1 for 2 Duty Period Credit, and that the formula has been the same since at least January 1, 2011. (*Id.* at 175:23-176:17.)

Towards the end of his deposition, however, Mr. Moreau (perhaps recalling Delta's theory of the case) changed his explanation. He testified that the 1 for 2 Duty Period Credit formula compensates flight attendants for all hours worked, and that it is the only work rule to do so. (Moreau Dep. 183:25-184:24, 193:9-23.) When asked to reconcile this new explanation with the plain language of the work rules, Mr. Moreau's explanation devolved:

> Q. What rate are they compensated for all hours on duty?
> A. **They are credited with one hour for -- actually, they are compensated at a minimum** of one-half of their flight hourly rate for every hour on duty.
> Q. Can you show me where in the flight attendant work rules there is a reference to flight attendants being paid at half their flight pay rate?
> A. **There is no specific reference.**
> . . .
> Q. And this example does not say that under the duty period credit, the flight attendant is paid for 12 hours and 30 minutes of duty period at half their flight pay rate; correct?

---

[7] Incredibly, Delta cites this passage for its factual assertion that the 1 for 2 Duty Period Credit pays *one-half the pay rate for all hours on duty*. *See* ECF No. 32, at 19. In truth, **Mr. Moreau testimony was exactly the opposite; the Duty Period Credit pays *one hour of pay for every two hours on duty*.** (Moreau Dep. 170:12-17.) Delta also cites page 181 of Eichmann's deposition on this point, which contains no discussion of the Duty Period Credit.

[Objection omitted]

A. The example states that there is a 12 hour and 30 minute duty period, and it also states – as a pay calculation. And it also shows the pay calculation of 12:30 divided by 2, which will establish an effective rate for the flight attendant, which is half of their hourly rate. So it is clear from the division of 12:30 divided by 2 that the calculation starts at the beginning of the duty period, and ends at the end of the duty period, because it is exactly the same as a duty period.

. . .

Q.  . . . please show me in this example where it says that the flight pay rate is divided by two, and paid across 12 hours and 30 minutes of work?

[Objection omitted]

A.  Well, the document clearly states that it is 12 hours and 30 minutes divided by two. It states that's a paid calculation. The calculation of taking the entire duty period of 12 hours and 30 minutes, which is equal to the math and divided by 2, means that when you pay that, you are paid for the entire 12 hours and 30 minutes at half the flight hourly rate. It's math.

(Moreau Dep. 185:1-9, 190:24-191:14, 192:6-19 (emphasis added).) As Mr. Moreau's shifting (and at times unintelligible) testimony confirms, there is no factual support for Delta's theory that the 1 for 2 Duty Period Credit pays flight attendants at half their pay rate for all hours worked.

Indeed, Delta's documents confirm the 1 for 2 Duty Period Credit pays the *flight pay rate for half the hours worked*, as opposed to *half* the flight pay rate for *all* hours worked. For example, the work rules confirm that hours flown or credited will be paid at the flight attendant's flight pay rate. (*See* Ex. 1 at DELTA000807, 10-13; Ex. 2 at DELTA000551, 54-57; Ex. 3 at DELTA002423, 26-29, Ex. 4 at DELTA007353, 83-84.) The work rules list flight attendants' flight pay rates, (Ex. 1 at DELTA000810, Ex. 2 at DELTA000554, Ex. 3 at DELTA002426, Ex. 4 at DELTA00007353), but contain no mention of pay at half the flight attendants' pay rate. (*Id.*; Moreau Dep. 193:3-22.) Indeed, **Delta's own motion confirms that "Delta calculates the total number of credits a Flight Attendant would receive under each formula [and]** *multiplies it by the Flight Attendant's Pay Rate***."** (ECF No. 32, at 18 (emphasis added).)

By way of contrast, Delta's work rules outline other types of compensation and reimbursement in great detail. (*See, e.g.*, Ex. 1 at DELTA00813[8] ($9.00 per hour for Surface Deadheads), DELTA000814 ($10.80 report pay for cancelled trips), DELTA00815 (expense reimbursement for meals at $2.20 per hour), DELTA00817 (Holding Pay of $15.00 and Flight Pay

---

[8] Plaintiffs do not include cross-citations to the other versions of the rules for ease of reading.

for Ground Time in certain delay / reroute situations), DELTA000818 (Crew Compensation Pay of $7.25 for flight time when a flight is understaffed; International Pay of $1.25 per hour of flight time for international flights; additional pay when serving as Purser or Flight Leader), DELTA000819 (Language of Destination Pay of $1.80 per hour of flight time), DELTA000821 (draft pay), DELTA000823 (rerouted into off day pay), DELTA000824 (rerouted into vacation day pay), DELTA000826 (incentive pay for picking up flights), DELTA000827 (Holiday Pay).

Likewise, Delta's flight records and wage statements only list the flight pay rate for hours flown or credited; they do not report *any* hours worked at *half* the flight pay rate. (*See* Ex. 9 at DELTA005554-55 (showing 1 minute of duty credit for June 21, 2012, and three minutes of Trip Credit for June 3, 2012, and explaining "to calculate what you were paid," a flight attendant should "take minutes flown . . . multiplied by **your pay rate** for total dollars paid.") (emphasis added); Ex. 10 at DELTA005195-96 (June 2012 wage statements include pay for hours worked at full flight pay).) This makes sense, because, again, the 1 for 2 is a credit, applied "at the end of the duty period." (Ex. 4 at DELTA000811.) Delta's flight records confirm that it treats duty period pay as additional pay on top of *flight pay,* and that duty period time is paid at the *flight pay rate* for *half* the hours worked. (Moreau Dep. 222:2-7; Exs. 7-9.) A selection from those records is reproduced here (with corresponding headers) for the Court's convenience.

| FLIGHT NUMBER | DATE | DY | SEGMENT FROM | TO | REPT TIME | BLOCK OUT | BLOCK IN | ACTL TIME | SCHD/MKT TIME | DUTY CRED |
|---|---|---|---|---|---|---|---|---|---|---|
| 1221 | 18-Jun | MO | SFO | ATL | 2225 | 2327 | 658 | 433 | 0433* | 0 |
| 1528 | 19-Jun | TU | ATL | MSP | 1640 | 1802 | 1926 | 247 | 0247* | 0 |
| 759 | 19-Jun | TU | MSP | GEG | | 2248 | 2341 | 305 | 0305* | 0 |
| 1037 | 20-Jun | WE | GEG | SLC | 1205 | 1302 | 1525 | 137 | 0137* | 0 |
| 2360 | 20-Jun | WE | SLC | DCA | | 1652 | 2256 | 409 | 0409* | 0 |
| 629 | 21-Jun | TH | DCA | DTW | 1140 | 1234 | 1356 | 135 | 0135* | 0 |
| 237 | 21-Jun | TH | DTW | SFO | | 2011 | 2245 | 0534* | 504 | 1 |

(*See* Ex. 9 at DELTA005554.) Delta's corporate representative confirmed that the data identifies flight hours paid at the Flight Pay rate (under ACTL TIME), and **one minute of 1 for 2 Duty**

**Period Credit paid at the Flight Pay rate** (under the DUTY CRED) column.[9] (Moreau Dep. 225:4-226:6.) Throughout the thousands of documents produced in discovery, Delta has not produced a single document evidencing payment to flight attendants at one half their pay rate.

Delta's failure to pay flight attendants for all hours worked is not a matter of mere semantics. According to a Delta Vice President, Delta flight attendants have requested additional pay for the boarding process for years. (Ex. 11 at DELTA007330.) And a survey of flight attendants earlier this year "showed that 'boarding pay' continues to be an item of focus for flight attendants across the system." (*Id.*) By Delta's own admission, "boarding multiple legs in a duty period can be more demanding for flight attendants." (*Id.*) In response to its flight attendants' concerns about the lack of boarding pay, Delta considered paying flight attendants $10-$20 per hour for boarding flights. (*Id.*) However, Delta rejected the idea based on cost. (*Id.*)

**C.  Delta's Business Model Requires its Flight Attendants to Have Significant Contacts with California**

Delta's business model depends on moving customers – along with its flight attendants – into and out of the state of California. Indeed, as a Delta senior executive recently noted in a press release, "New York-JFK to Los Angeles and San Francisco are essential domestic markets from New York City, and Delta is committed to offering our customers a superior schedule and product on these routes." (Ex. 12 at P0001372.) New York-JFK to LAX and SFO are "two of the busiest routes in the United States," and Delta prides itself on its industry "leading position" on these routes, offering "the most seats of any airline." (*Id.*) Delta's recent $229,000,000 facilities investment at LAX, and a new Delta Sky Club at SFO, further evidence the importance of these destinations to Delta. (*Id.* at P0001373.)

Although Delta is headquartered in Georgia, it is a sizeable California employer. Delta has maintained a payroll of over 1,400 California-based flight attendants throughout the last five years. (Ex. 13, Delta Supp. Resp. Oman Irog. No. 2.) Delta paid $50 million to California employees in profit sharing alone in 2014. (Ex. 14.) Since the profit sharing equaled over 16% of employees'

---

[9] For ease of use, not all of the columns are included. This sample is from May 2012, after full integration of former NWA flight attendants. However, Ex. 9 also contains records, from when Plaintiffs were paid under the Former NWA Work Rules, and they are virtually identical. (*See* Ex. 9 at DELTA005550.)

1  annual earnings, *id.*, Delta paid over $312,000,000 in wages to California employees in 2014. (*Id.*)

2       Importantly, however, Delta's contacts with California are not limited to its California-

3  based employees; non-California flight attendants also have significant contacts with the state. For

4  example, in April 2015 flight attendants based at non-California airports flew 24,488 flight legs

5  into or out of the state of California. (Ex. 15, Delta Supp. Resp. Oman Doc. Req. Nos. 8, 10.)

6  Assuming an average of 37.5 minutes of uncompensated work time in California for each flight

7  (based a one hour report time for departures and fifteen minutes deplaning for arrivals), these flight

8  attendants worked 15,305 uncompensated hours in California last April. Extrapolated over a year,

9  this equates to an annual average of 293,856 California flight legs, and 183,660 uncompensated

10  California hours, worked by flight attendants based outside the state of California.

11  **III.    ARGUMENT**

12       On cross motions for summary judgment, "each motion must be considered on its own

13  merits." *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136

14  (9th Cir. 2001). The Court must determine, "for each side, whether judgment may be entered in

15  accordance with the Rule 56 standard." *Id.* Summary judgment is appropriate here because there

16  are no genuine disputes over material facts. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323

17  (1986). Delta's work rules set out its pay policies, and its business records and corporate testimony

18  confirm that it followed those policies. Because Delta's stated policies do not separately pay flight

19  attendants for all hours worked as required by the California Labor Code, Delta cannot avoid

20  summary judgment by arguing "some metaphysical doubt as to the material facts." *Matsushita

21  Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Court should grant

22  Plaintiffs' motion because there are no genuine issues of material fact and Plaintiffs are entitled to

23  judgment as a matter of law. *See* Fed. R. Civ. P. 56.

24       California's minimum wage requirements derive from the Labor Code and the Industrial

25  Welfare Commission ("IWC") Wage Orders. The Wage Orders are "'presumptively valid'

26  legislative regulations" and must be given effect separately from statutory enactments. *Brinker

27  Rest. Corp. v. Superior Court*, 53 Cal.4th 1004, 1027 (2012). Wage Order 9-2001 regulates

28  employment conditions for workers in the transportation industry. Cal. Code Regs. tit. 8 § 11090.

1   Wage Order 9 requires that "[e]very employer shall pay to each employee wages not less than [the

2   minimum wage] for all hours worked. . ." *Id.*[10] Two points about this requirement bear special

3   emphasis. First, the requirement applies "by [its] terms to all employment within the state, without

4   reference to the employee's place of residence." *Sullivan v. Oracle*, 51 Cal.4th 1191, 1197 (2011)

5   (describing Labor Code's overtime requirements). Second, California law requires minimum wage

6   for all <u>hours</u> worked; this requirement differs significantly from the federal overtime law, which

7   ties coverage to "any workweek." *Armenta v. Osmose*, 135 Cal.App.4th 314, 323 (2005).

8        As explained in greater detail below, these concepts require summary judgment for

9   Plaintiffs. Contrary to Delta's unfounded assertions, California law applies to time worked by

10  flight attendants on the ground in California, regardless of their place of residence. And Delta

11  consistently fails to pay Plaintiffs and flight attendants for all their hours worked, in violation of

12  California's minimum wage requirements. Plaintiffs are therefore entitled to summary judgment.

13        **A.   California Minimum Wage Law Applies to Work Performed in California by Delta Flight Attendants**

14        Through this case, Plaintiffs seek payment according to California law <u>for time worked in</u>

15  <u>California</u>. The Labor Code, Wage Orders, and controlling decisions are very clear: the Labor

16  Code applies to work performed in California. California has substantial contacts with the claims

17  at issue, justifying California's interest in applying its laws. Because no federal law bars the

18  application of California's minimum wage law to the time period or claims at issue, the Court must

19  apply California law to all time worked in California.

20        The California Supreme Court recently held that "California's overtime laws apply by their

21  terms to all employment in the state, without reference to the employee's place of residence."

22  *Sullivan*, 51 Cal.4th at 1197. The court grounded this conclusion in the Legislature's explicit

23  declaration that rights under state law are available to all individuals "who are or who have been

24  employed" in California. *Id.* at 1198, citing Lab. Code § 1171.5(a). The court began with the text

25  of the Labor Code, noting that the laws "speak broadly, without distinguishing between residents

26  and nonresidents," and instead apply to "any employee." *Id.* at 1197. The court also noted that the

27

---

28  [10] The current minimum wage is $9.00 per hour. Cal. Lab. C. § 1182.12.

1  Legislature has created limited exemptions for out-of-state employers from workers' compensation

2  law, but did not include those exceptions for overtime requirements. *Id.* at 1197-98.

3      While the workers in *Sullivan* were seeking overtime, and the court's analysis was

4  therefore focused on overtime, "there is no reason to limit its holding only to overtime cases."

5  *Aguilar v. Zep Inc.*, 2014 WL 4245988, at *13 (N.D. Cal. 2014). Like California's overtime rules,

6  minimum wage requirements exist to ensure that workers "are fairly compensated for their work."

7  *Id.* (citing *Campagna v. Language Line Servs., Inc.*, 2012 WL 1565229, at *4 (N.D. Cal. 2012)).

8  Indeed, the *Sullivan* court specifically referred to Labor Code § 1194, which authorizes "any

9  employee receiving less than the legal minimum wage or the legal overtime compensation" to

10  bring a civil action. *Sullivan*, 51 Cal.4th at 1197.

11      As this Court held in *Aguilar*, it is broadly recognized that application of California's

12  employment laws turns on where the work at issue is performed:

13  > Since the court's holding in *Maez,* which focused on 'the location of Plaintiff's
   > employment,' several courts have also found that 'the critical factor is where the
14  > work at issue is performed' by the plaintiff. *Cotter v. Lyft,* Inc., 13-cv-04065 VC,
   > 2014 WL 3884416, at *3 n.2 (N.D. Cal. Aug. 7, 2014) (citing *Jimenez v. Servicios
15  > Agricolas Mex, Inc.,* 742 F. Supp. 2d 1078, 1099 (D. Ariz. 2010) ('Other courts
   > have similarly concluded that the place where the work takes place is the critical
16  > issue'); *Sarviss v. Gen. Dynamics Info. Tech., Inc.,* 663 F. Supp. 2d 883, 900 (C.D.
   > Cal. 2009) (focusing on the 'situs of employment as opposed to residence of the
17  > employee or the employer'); *Priyanto v. M/S Amsterdam,* No. 07-cv-3811 AHM,
   > 2009 WL 175739, at * 8 (C.D. Cal. Jan. 23, 2009) ('Plaintiffs cannot show that
18  > they work in the state of California, and consequentially cannot show that . . . the
   > California wage and hour laws can be applied to them'). *See also Tidenberg v.
19  > Bidz.com, Inc.,* 2009 WL 605249, at *4 (C.D. Cal. Mar. 4, 2009) (explaining that
   > the UCL applies to 'unlawful conduct [that] took place in California' because
20  > 'state statutory remedies may be invoked by out-of-state parties when they are
   > harmed by wrongful conduct occurring in California').

21  *Aguilar*, 2014 WL 4245988, at *12. Here, because <u>all</u> the work at issue occurred in California,

22  California law must apply. *Sullivan*, 51 Cal.4th at 1197; *see* Lab. C. §§ 1182.12; 1194; 1194.2.

23      Moreover, IWC Wage Order 9 explicitly covers employees working for interstate carriers,

24  and includes an exception from some of its provisions for "those employees who have entered into

25  a collective bargaining agreement under and in accordance with the provisions of the Railway

26  Labor Act, 45 U.S.C. Sections 151 et seq." Cal. Code Regs. tit. 8 § 11090(1)(E). But this

27  exemption *does not cover minimum wage requirements. See id.*, §§ 11090(1)(E); 11090(4). As the

28  court recognized in *Sullivan*, the existence of this limited exemption is powerful evidence that the

1   IWC intended the minimum wage requirements to apply broadly. *See* 51 Cal.4th at 1197-98.

2        Thus, the Labor Code and Wage Order 9 <u>apply</u> to work performed in California by Delta

3   flight attendants, such as Plaintiffs, without regard to their place of residence. These provisions are

4   <u>enforceable</u> by out-of-state flight attendants because (1) California has a significant aggregation of

5   contacts to the claims asserted to justify its interest in enforcing its laws, and (2) no federal law

6   precludes application of California law.

7            **1.    California Has Significant Interest in Applying its Laws to Work
                    Performed in California**

8        In April of this year alone, Delta flight attendants based outside of California flew **24,488**

9   flights into or out of California. (Ex. 15, Delta's Resp. to Oman Doc. Req. Nos. 8, 10.) At that rate,

10  non-California-based flight attendants would work approximately **294,000** California flight legs

11  over a year. This is a massive volume of work, and easily justifies California's interest in applying

12  its minimum wage laws to flight attendants based elsewhere.

13       To fall under the Labor Code's protection, non-resident plaintiffs "must allege that there is

14  'significant contact or a significant aggregation of contacts to the claims asserted to ensure that

15  application of the state law to a defendant's conduct would not violate the Constitution.'" *Aguilar*

16  *v. Zep Inc.*, 2014 WL 4245988, at *13 (N.D. Cal. 2014) (quoting *In re Hitachi Television Optical*

17  *Block Cases*, 2011 WL 9403, at *10 (S.D. Cal. 2011). In *Aguilar*, the court considered cross

18  motions for summary judgment as to Labor Code claims for workers who worked partially in

19  California and partially out of California. *Id*. at *1. One of the plaintiffs there, Theron Lee, first

20  worked as a sales representative in California, but then moved to Nevada and worked in both

21  states. *Id*. at *5. Lee "began his work day at his home in Nevada, traveled across the border into

22  California for part of the day, and ended back home in Nevada." *Id.* The parties disputed whether

23  California law applied "to the work that Lee performed in California while he was a resident of

24  Nevada." *Id*. at 11. The Court recognized that a Georgia corporation could have substantial

25  contacts in California where "it conducts substantial business in California through its California

26  offices, has several sales representatives in California, and . . . generates substantial revenue from

27  its sales in California." *Id*. at *13.

28       Here, Delta's contacts with California are dramatically more significant than Zep's. Delta

1   recently invested $229,000,000 improving its facilities at LAX, Delta considers routes from New

2   York to California "essential," and its routes to LAX and SFO[11] are two of the busiest in the

3   United States. (Ex. 12.) Delta has consistently employed over 1,400 California-based flight

4   attendants, and flies many more flight attendants into California every day. (Exs. 13-14.) These

5   facts demonstrate Delta's substantial contacts with California.

6       The fact that flight attendants may be in California for relatively short stints is of little

7   significance given the scope of Delta's California presence. Importantly, out-of-state flight

8   attendants only enter California because of Defendant's business model: each trip to California

9   generates revenue for Delta, and is part of Delta's larger business goal of providing coverage to a

10  wide variety of destinations. It should be self-evident that providing service to California from

11  outside of California is important for Delta's business. The trips that Plaintiffs flew are part of that

12  business. There is no Constitutional problem in requiring Delta to comply with California law for

13  everyone it employs in California, regardless of their residence.

14                  **2.    No Federal Law Prevents Application of California Minimum Wage Law**

15      California's ability to regulate work performed within its borders is subject to some federal

16  limitations. *E.g.*, *Cotter v. Lyft*, 60 F.Supp.3d 1059, 1061 (N.D. Cal. 2014). Importantly, however,

17  Delta's motion stops short of arguing that California's minimum wage law is preempted (despite

18  pleading preemption defenses). It instead argues, without explanation, that *only* Fair Labor

19  Standards Act (FLSA) minimum wage requirements should apply. (ECF No. 32 at 24, n. 19.) Delta

20  offers no compelling reason to conclude that federal law limits state minimum wage law.

21      Indeed, the FLSA's plain language makes clear that states may establish wage laws that are

22  more protective than the federal standard. 29 U.S.C. § 218(a) ("No provision of this chapter . . .

23  shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a

24  minimum wage higher than the minimum wage established under this chapter. . ."). Courts have

25  _____

26  [11] In light of Delta's arguments concerning the geographic reach of San Francisco's Minimum Wage Ordinance, Plaintiffs hereby withdraw their claims under that Ordinance. Plaintiffs may later seek leave to amend in order to assert claims under SFO-specific regulations, including SFO's

27  Quality Standards Program and the San Francisco Minimum Compensation Ordinance. Relatedly, the named Plaintiffs do not appear to have worked more than two hours in a workweek at San Jose.

28  Plaintiffs may later seek leave to amend to add Plaintiffs with San Jose claims.

1  consistently held that this savings clause prevents federal preemption of state wage and hour laws.

2  *See, e.g., Tidewater Marine W., Inc. v. Bradshaw*, 14 Cal. 4th 557, 566-67 (1996); *Pac. Merch.*

3  *Shipping Ass'n v. Aubry*, 918 F.2d 1409, 1424 (9th Cir. 1990); *Knepper v. Rite Aid Corp.*, 675 F.3d

4  249, 263-64 (3d Cir. 2012); *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 248 (2d

5  Cir. 2011); *Spoerle v. Kraft Foods Global, Inc.*, 614 F.3d 427, 430 (7th Cir. 2010).

6  Likewise, the Federal Aviation Administration Authorization Act ("FAAAA") preempts

7  state laws that regulate "prices, routes, or services" of air carriers,[12] but does not preempt generally

8  applicable employment laws. *Californians For Safe & Competitive Dump Truck Transp. v.*

9  *Mendonca*, 152 F.3d 1184, 1186 (9th Cir. 1998) (prevailing wage law not preempted). The

10  California Supreme Court and the Ninth Circuit recently rejected FAAAA preemption of state

11  employment laws. *Harris v. Pac Anchor*, 59 Cal.4th 772, 785 (2014) (UCL claims arising from

12  trucking company's independent contractor misclassification are not preempted. The Labor Code

13  sections at issue were "laws that regulate employer practices in all fields and simply require motor

14  carriers to comply with labor laws that apply to the classification of their employees."), *cert.*

15  *denied* 135 S. Ct. 1400 (2015); *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 647 (9th Cir. 2014)

16  (meal and rest break laws not preempted because they "do not set prices, mandate or prohibit

17  certain routes, or tell motor carriers what services they may or may not provide, either directly or

18  indirectly."), *cert. denied* 135 S. Ct. 2049 (2015). As recognized in *Harris*, California's minimum

19  wage laws apply generally; they do not tell airlines what they must charge or where they may fly.

20  59 Cal.4th at 785. Thus, FAAAA preemption does not apply. *See Quezada v. Con-Way Freight,*

21  *Inc.*, 2012 WL 2847609, at *6-7 (N.D. Cal. 2012) (the construction of California law requiring

22  minimum wage for each hour worked "is not preempted by the FAAAA.")

23  The Railway Labor Act ("RLA") also does not preclude application of California's

24

---

[12] 49 U.S.C. § 41713 ("a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.") This language was formerly part of the Airline Deregulation Act, but then combined with the Motor Carrier Act into the FAAAA. That Act contains identical language for motor carriers, so preemption decisions under both acts are applicable. *See* 49 U.S.C. § 14501(c)(1) ("a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier…").

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT & OPPOSITION TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

1  minimum wage laws to an interstate air carrier. The RLA was designed to promote industrial peace
2  and national uniformity among the nation's rail (and later air) carriers. 45 U.S.C. § 151a.
3  Accordingly, it preempts certain disputes that would require interpreting a valid collective
4  bargaining agreement. *Angeles v. U.S. Airways, Inc.*, 2013 WL 622032, at **5-6 (N.D. Cal. 2013).
5  Here, none of the work rules provide the required dispute resolution procedure that could trigger
6  preemption. The Former NWA Work Rules were initially bargained. However, after the November
7  2010 union vote, former NWA flight attendants "[were not] represented by a certified union"
8  meaning Delta could not comply with the grievance procedures in the contract. *McMahon v. Delta*
9  *Air Lines, Inc.*, 830 F. Supp. 2d 674, 694 (D. Minn. 2011); *see also* Ex. 16 ¶ 3. Moreover, even if
10  there were a valid CBA, Plaintiffs' minimum wage claims are not preempted because they can be
11  adjudicated without interpreting any contract. Instead, the Court need only look at the records of
12  hours worked and wages paid in order to determine if Delta complied with the law. *See Angeles*,
13  2013 WL 622032 at **6-7 ("determining whether or not Plaintiffs worked overtime-eligible hours,
14  and were paid the specified rates, are factual questions that do not require the interpretation of any
15  terms of the CBA."). The RLA offers no barrier to application of California's minimum wage law.

16      Delta would prefer not to apply California law, but offers no legitimate legal basis to show
17  either that state law does not apply to the work in question, or that federal law precludes
18  application of state law. Plaintiffs are entitled to California's minimum wage protections.

19          **3.    Delta's "de minimis" Defense Cannot Preclude the Application of
                 California Law or a Finding of Liability**

20      Delta has failed to pay flight attendants working in California for thousands of hours.
21  Among the many arguments Delta asserts as to why it should not have to pay for this work, Delta
22  suggests that this time is so miniscule that it should not even count. Delta is wrong.

23      First, Delta cites no legal authority for its argument that the hours of California work time
24  at issue are *de minimis*, and "[i]t is not clear that the *de-minimis* rule applies under California law."
25  *Stiller v. Costco Wholesale Corp.*, 298 F.R.D. 611, 626 n. 7 (S.D. Cal. 2014). Second, even if the
26  *de minimis* doctrine exists under California law, it would not apply on these facts. The federal *de*
27  *minimis* doctrine examines "(1) the practical administrative difficulty of recording the additional
28  time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work."

---

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
                                                        JUDGMENT & OPPOSITION TO DEFENDANT'S
                                                        MOTION FOR PARTIAL SUMMARY JUDGMENT

*Rutti v. Lojack Corp.*, 596 F.3d 1046, 1057 (9th Cir. 2010).[13] Here, Delta *does* track the time at issue, *see* Exs. 7-9, it just chooses not to pay for it. Likewise the amount of compensable time is significant in the aggregate: over 15,000 hours in a single month. And the work is exceedingly regular – it happens before and after every single flight. Delta cannot cite any cases suggesting that an hour and fifteen minutes of work time at the start and end of every duty period (not to mention turn time) is *de minimis*.

### 4. Plaintiffs Do Not Seek Extraterritorial Application of California Law

Delta spends two-and-a-half pages attacking the straw man argument that Plaintiffs seek extraterritorial application of California law. That is not the case. Plaintiffs have clearly communicated to Delta, in their discovery responses and elsewhere, that they only seek recovery for time worked within the State of California. (*See* Frederick Decl. Exs. H, I, J.) Delta's legal obligation is simple and clear: it must comply with California law whenever its employees work in this state. This obligation does not burden the Commerce Clause.

### B. Delta Violates California's Minimum Wage Law by Failing to Compensate Flight Attendants for All Hours Worked in California

California's minimum wage law, as set out in the Labor Code and in Industrial Welfare Commission ("IWC") Wage Orders, is different—and more protective—than federal minimum wage or the minimum wage laws of most other states. The most important difference here is that California requires that employers pay minimum wage for each hour worked, and does not allow employers to satisfy minimum wage obligations by showing that employees earned, on average, more than minimum wage. *Armenta v. Osmose, Inc.*, 135 Cal.App.4th 314, 323-24 (2005).

While Delta applies multiple formulas to calculate flight attendant pay, the basic structure of their pay plan is not complicated: "Flight Attendant compensation is paid as **an** hourly rate for **all hours flown or credited**." (Ex. 1 at DELTA000807 (Emphasis added).) Nothing in Delta's policies provides an alternate base pay rate other than the flight pay rate.[14] (*See* Moreau Dep. at

---

[13] Delta may have avoided the actual *de minimis* doctrine because it failed to plead it as an affirmative defense. (*See* ECF No. 27.)

[14] In some instances, flight attendants may earn additional amounts above their flight pay rate for time spent in flight, such as by working as the lead flight attendant. However, this additional pay does not cover the time at issue here. *See* Ex. 1 at DELTA000813-27. For example, "Time Away

192:6-193:22.) Instead, Delta pays that single rate for all hours "flown or credited," and its formulas show that the "hours credited" under the Flight Pay and 1 for 2 Duty Period Credit formulas will always be less than the "hours worked." Like the 1 for 2 Duty Period Credit, the Trip Credit and Minimum Duty Period formulas fail to tie the compensation directly to the work being done. Delta therefore violates California's minimum wage law, and Plaintiffs are entitled to summary judgment.

### 1. Delta's Flight Pay Formula Violates California Law

Delta's Flight Pay formula is a shining example of the sort of pay practice that California prohibits. The Flight Pay formula only compensates flight attendants for the time between each flight's "block out" (i.e., departure) and "block in" (i.e., arrival).[15] Flight attendants are paid for this time at their flight pay rate, which is often well above the minimum wage. However, California does not permit an employer to compensate workers at less than minimum wage for *any* hours worked, even if they are compensated at above minimum wage for other time periods.

*Armenta*, citing an opinion letter from California's Division of Labor Standards Enforcement, recognized that Labor Code sections 221, 222, and 223 prevent an employer "from using any part of the wage payments . . . for activities that are compensated in an amount that equals or exceeds the minimum wage, as a credit for satisfying minimum wage obligations for those activities that are compensated at less than the minimum wage under the CBA or contract." 135 Cal.App.4th at 320. There, the workers were paid hourly for their work maintaining remote utility poles, but were not paid for all of their duties; instead, the employer paid for "productive" time only, and not for certain categories of work. *Id.* at 317. The court recognized California's "clear legislative intent to protect the minimum wage rights of California to a greater extent than federally," and held that the "minimum wage standard applies to each hour worked by respondents for which they were not paid." *Id.* at 324.

The application of *Armenta* here is clear: Delta may not use the wage payments for flight

---

From Base Pay" covers all time away from base, but it is expense reimbursement, not wages. *Id.* at DELTA000815.

[15] The Flight Pay Formula has been part of the Work Rules throughout the statutory period. (Ex. 1 at DELTA000810; Ex. 2 at DELTA000554; Ex. 3 at DELTA002426; Ex. 4 at DELTA007383.)

1   time (paid at flight attendants' high flight pay rates) as a credit for its minimum wage obligations

2   for pre-flight and post-flight activities – which are not paid at all under the Flight Pay formula. *Id.*

3   at 323-24. Because the Flight Pay formula pays flight attendants nothing when they are on duty but

4   not blocked out for a flight, the Flight Pay formula violates California's minimum wage law.

5        In the ten years since the *Armenta* decision, its reasoning and holding have seen broad

6   acceptance across courts and industries. *See Gonzalez v. Downtown LA Motors, LP*, 215

7   Cal.App.4th 36, 51 (2013) (this analysis "applies whenever an employer and employee have

8   agreed that certain work will be compensated at a rate that exceeds the minimum wage and other

9   work time will be compensated at a lower rate."); *Ontiveros v. Zamora*, 2009 WL 425962, at *3

10  (E.D. Cal. 2009) (rejecting employer's motion for judgment on the pleadings where plaintiff

11  alleged "that employees are not necessarily compensated for every hour worked"); *Cardenas v.*

12  *McLane FoodServices, Inc.*, 796 F.Supp.2d 1246, 1252 (C.D. Cal. 2011) ("a piece-rate formula

13  that does not compensate directly for all time worked does not comply with California Labor

14  Codes, even if, averaged out, it would pay at least minimum wage for all hours worked."); 

15  *Quezada v. Con-Way Freight, Inc.*, 2012 WL 2847609, at *6 (N.D. Cal. 2012) ("California law

16  does not allow an employer to 'build in' time for non-driving tasks into a piece-rate compensation

17  system. . . . [E]mployees must be directly compensated for all time worked."); *Balasanyan v.*

18  *Nordstrom, Inc.*, 913 F.Supp.2d 1001, 1006 (S.D. Cal. 2012) ("compensation must be directly tied

19  to the activity being done"); *Ridgeway v. Wal-Mart Stores, Inc.*, 2014 WL 2600326, at *5 (N.D.

20  Cal. 2014) (truck drivers' pre- and post-trip work must be separately compensated, and average

21  weekly earnings cannot support summary judgment for employer).

22        Delta's failure to engage with this case law is telling. Indeed, its policy of paying for hours

23  "flown or credited" has the exact same illegal impact as the compensation plans invalidated in each

24  of these cases. Just like in *Armenta*, Delta pays for the "most important" duty (time in flight), but

25  not other tasks. 135 Cal.App.4th at 317 (not paid for time classified as "nonproductive," including

26  travel in company vehicles, loading equipment into company vehicles, and doing daily

27  paperwork); *see also Cardenas*, 796 F.Supp.2d at 1249-50 (employer failed to separately pay for

28  pre-shift duties, asserting they were "integral and necessary" to the primary compensable tasks).

The impact of Delta's compensation plan is that Delta consistently fails to pay flight attendants for pre- and post-trip duties. This is the same impact that has been rejected in *Cardenas*, *Quezada*, and *Ridgeway*, where employers paid truck drivers per mile but failed to pay for work activities other than driving. In *Quezada*, truck drivers' pay was "calculated by multiplying a preset mileage rate by the number of miles in a trip." 2012 WL 2847609, at *1. Although the employer paid a separate hourly rate for some non-driving tasks, such as loading freight, drivers were "not compensated at their hourly rate for pre- and post-trip vehicle inspection time, or for the first hour of wait time over the course of a shift." *Id.* Instead, the employer considered that time to be "built in to the per-mile rate." *Id.* The same facts were presented in *Ridgeway*, where Wal-Mart paid drivers based on mileage, but did not provide separate pay for, among other things, pre- and post-trip inspections and paperwork. 2014 WL 2600326, at **3-5. Wal-Mart treated these tasks as part of the driver's trip, and argued that they were "included as part of the driver's 'trip pay.'" *Id.* at *5. *Cardenas* involved a more complicated formula, which considered "(1) the number of cases of product delivered on a route; (2) the number of miles driven on a route; and (3) the number of delivery stops made on a route." 796 F.Supp.2d at 1249. The employer in *Cardenas* also treated pre- and post-trip duties, such as vehicle inspections and picking up manifests, as being compensated by the piece-rate formula. *Id.*

All three courts followed *Armenta*, to hold that the employers may not rely on a piece-rate formula that does not compensate directly for all time worked, "even if, averaged out, it would pay at least minimum wage for all hours worked." *Cardenas*, 796 F.Supp.2d. at 1252; *accord Ridgeway*, 2014 WL 2600326, at *5. The court in *Quezada* explained that California law does not allow an employer to "build[] in extra compensation into the piece-rate amount for mandatory work time in which the piece-rate cannot be earned." 2012 WL 2847609, at *4.

While the compensation plans at issue in these cases are based on the drivers' mileage, as opposed to hours in flight, they are functionally identical to Delta's Flight Pay plan. *See Cardenas*, 796 F.Supp.2d at 1251-52 (reasoning of *Armenta* applies whether employer pays hourly or piece-rate); *Gonzalez*, 215 Cal.App.4th at 48-49 (same). Under the Flight Pay formula, Plaintiffs receive **no** pay for work performed before the flight blocks out. Instead, Delta pays a rate above minimum

1  wage for hours in flight, and nothing for other work hours. Because the Flight Pay formula "does

2  not compensate directly for all time worked," it "does not comply with California Labor Codes,

3  even if, averaged out, it would pay at least minimum wage for all hours worked." *Cardenas*, 796

4  F.Supp.2d at 1252; *see also Gonzalez*, 215 Cal.App.4th at 49. Where Delta applied the Flight Pay

5  formula, and thereby paid for some (but not all) hours worked, it "violated section 1194 by failing

6  or refusing to pay" for other uncompensated tasks. *Armenta*, 135 Cal.App.4th at 324.

7        Instead of addressing California's minimum wage law and the cases applying it, Delta cites

8  to the Massachusetts *DeSaint* case. Significantly, Massachusetts minimum wage law aligns with

9  federal law, requiring that "an employee shall be paid not less than the applicable minimum wage

10  *each week*." *DeSaint v. Delta Air lines, Inc.*, 2015 WL 1888242, at *11 (D. Mass. 2015). For this

11  reason (and others), the *DeSaint* case is inapposite. Indeed, *DeSaint* **was not a minimum wage**

12  **case;** the plaintiffs "[did] not contend that Delta has failed to comply with the State's minimum

13  wage law or with any other statutory requirement." *Id.* at *10. Instead, Plaintiffs sought their full

14  flight pay rate for each hour on duty. *Id.* at *9. Delta's transparent attempt to cast *DeSaint* as a

15  minimum wage case "indistinguishable" from this one fails.

16        Delta fails to cite any California cases contrary to the substantial authority holding that all

17  hours must be separately paid. Because the Flight Pay formula fails to pay for pre-flight and post-

18  flight work, Plaintiffs are entitled to minimum wage payments for those uncompensated hours.

19  *Armenta*, 135 Cal.App.4th at 321, 327.

20          **2.**    **The 1 for 2 Duty Period Credit Formula Does Not Cure Delta's Pervasive**
                **Minimum Wage Violations**

21        Under the "Duty Period Credit (1 for 2)" formula, flight attendants "will be credited with 1

22  hour of flight pay for every 2 hours on duty for any given duty period."[16] (Ex. 1, DELTA000811.)

23  The plain language of this formula shows that it fails to compensate Plaintiffs for half of their

24  hours worked, yet Delta brazenly asserts that this formula pays flight attendants for all their hours

25  worked. (ECF No. 32 at 19, 26.) The crux of Delta's argument is that the 1 for 2 Duty Period

26

27  [16] Some variation of the 1 for 2 Duty Credit Formula has been part of the Work Rules throughout
the statutory period. (Ex. 1 at DELTA000811; Ex. 2 at DELTA000555; Ex. 3 at DELTA002428;

28  Ex. 4 at DELTA007384.)

Credit formula <u>considers</u> all hours worked, and therefore <u>compensates</u> for all hours worked. (*Id.* at 19.) However, as the court in *Cardenas* explained, this argument "misunderstands the meaning of 'compensates' or 'covers.'" 796 F.Supp.2d at 1253 (holding the employer's intent was irrelevant because the pay formula "did not actually directly compensate" the time at issue). Because Delta cannot point to any <u>evidence</u> showing that the Duty Period Credit formula <u>ever</u> actually paid employees for all hours worked, Delta's legal argument is no different than the one courts have repeatedly rejected; namely, that the average hourly compensation is above minimum wage.

Simply put, there is no factual support Delta's argument that the 1 for 2 Duty Period Credit pays for all hours worked at half Plaintiffs' pay rate. Indeed, Delta could not even maintain this guise throughout its entire brief, admitting that "Delta calculates the total number of credits a Flight Attendant would receive under each formula [and] **multiplies it by the Flight Attendant's Flight Pay Rate**" before brazenly claiming *on the very next page* that "the Duty Period Credit formula . . . pays one-half of the Flight Pay Rate for every hour" on duty. (ECF No. 32 at 18-19.) Delta was right the first time; the work rules make it abundantly clear that the 1 for 2 Duty Period Credit pays only for <u>half</u> of the hours in a duty period.

- **Example C – Pays 1 for 2 Duty Period Credit:** A 12:30 duty day with 5:10 flight time. The pay calculation compares the flight time of 5:10, to the minimum duty period credit of 4:45, and to the 1 for 2 duty period credit of **6:15 (12:30 divided by 2)**. The total pay for this duty period is **6:15** of 1 for 2 duty period credit.

(Ex. 1 at DELTA000807 (emphasis added).)

- **Example:** You are scheduled for a turnaround worth 6:00 block time with a scheduled duty period length of 10:00. Due to an operational delay, your duty period is lengthened to 14:00. **You will be paid 7:00** for the turnaround, comprised of 6:00 block time and 1:00 of 1 for 2 duty credit **(14:00 divided by 2).**

(*Id.* at DELTA000811, Ex. 3 at DELTA002428 (emphasis added).)

This second example illustrates that the 1 for 2 Duty Period Credit is indeed a **credit**, applied as an enhancement on top of Plaintiffs' Flight Pay. Delta's records of flight attendant compensation bear out this fact. Flight Pay is by far the most common pay formula, and the application of <u>any</u> credit is the exception, not the rule. (*See* Exs. 7-9 (Plaintiffs were paid only Flight Pay for 84%, 85%, and 93% of their California flights).) Similarly, when a credit is applied, it appears in Delta's records as an increase to the hours flown. (*See* Ex. 9 at DELTA005554

1   (showing one minute of duty credit added to the block time).) And the work rules and other

2   documents make abundantly clear that the 1 for 2 Duty Period Credit applies additional hours at

3   the *Flight Pay* rate, not *half* the Flight Pay rate.

4        It is precisely because of self-serving, revisionist descriptions of illegal pay practices such

5   as those Delta advances here that the Labor Code requires disclosure pay rates. For example, the

6   Labor Code requires wage statements disclosing "all applicable hourly rates in effect during the

7   pay period and the corresponding number of hours worked at each hourly rate by the employee."

8   Cal. Lab. Code § 226. Here, none of Plaintiffs' wage statements reflect payment for any hours at

9   one-half their flight pay rate. (*See* Ex. 10.)[17] Similarly, "[a]t the time of hiring, an employer shall

10   provide to each employee a written notice . . . containing . . . [t]he rate or rates of pay and basis

11   thereof." Cal. Lab. Code § 2810.5. Delta ignored this provision of California law completely. (*See*

12   Ex. 17.) At the end of the day, Delta's argument that "pay for all hours at half the pay rate is the

13   same as pay for half the hours at the full pay rate" cannot hide the reality that the 1 for 2 Duty

14   Period Credit fails to pay Plaintiffs for all hours worked.

15           i.   *Delta's misrepresentation of the facts does not create triable issues, and cannot support judgment in Delta's favor*

16        To defeat summary judgment, Delta must go beyond the generalized denials in its

17   pleadings and offer specific facts from admissible discovery material to show that flight attendants

18   are compensated for all hours worked. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49

19   (1986). A party "cannot create a genuine issue of material fact simply by making assertions in its

20   legal papers." *Cardenas*, 796 F.Supp.2d at 1249 (citing *S.A. Empresa De Viacao Aerea Rio*

21   *Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982)). Thus, Delta's

22   unsupported assertion that the 1 for 2 Duty Period Credit pays for all hours work is entitled to no

23   weight. And as discussed below, none of the testimony in the record creates genuine issues of

24   material fact which would preclude judgment in Plaintiffs' favor.

25

26   [17] The parties agreed to exclude Plaintiffs' wage statement claims from these cross motions for summary judgment. While Delta's wage statements have several notable deficiencies, including

27   Delta's failure to report the total number of hours worked, Delta's argument that it actually paid employees one-half their hourly rate for some hours worked would be ensure judgment in

28   Plaintiffs' favor on their wage statement claims—were it true.

1       For example, Mr. Moreau had ample opportunity to explain how Delta's policies pay for all

2  hours worked, and he failed. Instead, he attempted, unconvincingly, to explain why paying a flight

3  attendant for half of his hours is the same as paying for all his hours. Mr. Moreau's testimony

4  devolved to the point of being incomprehensible:

5          Q.  And this example does not say that under the duty period credit, the flight
           attendant is paid for 12 hours and 30 minutes of duty period at half their flight pay
6          rate; correct?

7          [Objection omitted]

8          A. The example states that there is a 12 hour and 30 minute duty period, and it also
           states – as a pay calculation. And it also shows the pay calculation of 12:30
9          divided by 2, which will establish an effective rate for the flight attendant, which is
           half of their hourly rate. So it is clear from the division of 12:30 divided by 2 that
10         the calculation starts at the beginning of the duty period, and ends at the end of the
           duty period, because it is exactly the same as a duty period.
           . . .

11         Q.  . . . please show me in this example where it says that the flight pay rate is
           divided by two, and paid across 12 hours and 30 minutes of work?

12         [Objection omitted]

13         A.  Well, the document clearly states that it is 12 hours and 30 minutes divided by
           two. It states that's a paid calculation. The calculation of taking the entire duty
14         period of 12 hours and 30 minutes, which is equal to the math and divided by 2,
           means that when you pay that, you are paid for the entire 12 hours and 30 minutes
15         at half the flight hourly rate. It's math.

16  (Moreau Dep. 190:24-191:14, 192:6-19.) These unintelligible explanations are insufficient to

17  create genuine issues of material fact. More importantly, Mr. Moreau's explanation is belied by

18  Delta's documents. A witnesses' mistaken understanding cannot correct an illegal compensation

19  system. *Cardenas*, 796 F. Supp. 2d at 1253 ("it is irrelevant whether the pay formula was *intended*

20  to compensate pre- and post-trip duties, or even if employees believed it covered those duties, if its

21  formula did not actually directly compensate those pre- and post-trip duties").

22       Likewise, Plaintiffs' testimony cannot create triable fact issues. Delta cites to only *one*

23  deposition answer, by one Plaintiff (Lehr), in support for its argument that Delta satisfied its

24  minimum wage obligations. (*See* ECF No. 32, at 35.) But Mr. Lehr's testimony was not as Delta

25  suggests, for many reasons. First, as a factual matter, Defense counsel's question was limited to

26  rotations where "the duty-period credit formulation was applied." (Ex. 18 (Lehr Dep.) 236:5-

27  237:16.) Second, the question was over several objections by counsel (calls for a legal conclusion,

28  "vague as to 'receive minimum wage,' as to which hours?"), and it followed a series of questions

1  about whether average pay of over $20 was greater than the legal minimum wage rates identified

2  in Plaintiffs' complaint. (*Id.* at 233:17-236:17.) Third, even if the statement can be taken as an

3  admission that the 1 for 2 Duty Period Credit pays for all hours worked (and it cannot), the

4  *Cardenas* and *Ridgeway* courts rejected the argument that a witness's belief about a pay practice

5  can outweigh reality. "It is irrelevant whether the pay formula was *intended* to compensate pre-

6  and post-trip duties, or even if employees believed it covered those duties, if its formula did not

7  actually directly compensate those pre- and post-trip duties." *Cardenas*, 796 F.Supp.2d at 1253.

8  Similarly, in *Ridgeway*, the employer's "argument that plaintiffs admitted they understood they

9  were paid for pre- and post-[trip] inspections and paperwork under the piece-rate pay plan does not

10  compel a finding that plaintiffs have no claim for unpaid wages." 2014 WL 2600326, at *5.

The work rules are clear. None of the witness testimony creates a triable issue of fact

12  preventing judgment in Plaintiffs' favor. Certainly, these statements do not negate the work rules'

13  clear description of Delta's pay practices, sufficient to warrant judgment in Defendant's favor.[18]

14          *ii.   The 1 for 2 Duty Period Credit supports judgment in Plaintiffs' favor[19]*

Because there are no genuine issues of material fact, the Court should enter judgement as a

16  matter for law for Plaintiffs on two issues: (1) that Delta violates the minimum wage law when it

17  applies the 1 for 2 Duty Period Credit formula, and (2) that the existence of that formula—even

18  when it is not applied—cannot cure the violations inherent in the Flight Pay formula.

Delta's rules demonstrate that when the 1 for 2 Duty Period Credit is applied, flight

20  attendants receive a composite number of credit hours: block hours + ((duty hours / 2) – block

21  hours). (*See* Ex. 1, DELTA000811 ("You will be paid 7:00 for the turnaround, **comprised of 6:00**

22  **block time and 1:00 of 1 for 2 duty credit (14:00 divided by 2)**.") Much like a mechanic paid on

23  a piece rate formula, flight attendants accrue a number of credited hours that is different from the

24  number of hours actually worked. In those cases, for "each task, a mechanic accrues the number of

25  labor hours assigned by the [employer policy], regardless of how much time he actually spends on

---

[18] Because Delta's motion fails as to Plaintiffs' minimum wage claims, the Court must also deny
Delta's motion as to Plaintiffs' Sixth Cause of Action (under the UCL).

[19] Delta's treatment of standby hours (i.e., payment of one hour for every two hours worked)
similarly violates California's minimum wage law.

1  the task." *Tokoshima v. Pep Boys Manny Moe & Jack of California*, 2014 WL 1677979, at *1

2  (N.D. Cal. 2014); *Gonzalez*, 215 Cal.App.4th at 41 (the "technician who completes a repair task

3  accrues the number of flag hours that Mercedes-Benz assigns to that task, regardless of how long

4  the technician actually took to complete it."). Just as a mechanic could work an 8-hour shift and

5  only accrue 6 credit hours, a flight attendant working a 10 hour duty period is only paid for 5 hours

6  when the 1 for 2 Duty Period Credit is applied. In both cases, the policy fails to guarantee that

7  workers are paid for <u>all</u> hours. As a result, the 1 for 2 Duty Period Credit does not prevent

8  violations even when it is applied, and Plaintiffs are entitled to their unpaid minimum wages for

9  each day the 1 for 2 Duty Period Credit is applied.

10       Delta's reliance on the 1 for 2 Duty Period Credit does not end there, however. Delta

11  argues that the formula ensures flight attendants are paid for every hour on duty, <u>even when the</u>

12  <u>formula does not generate payment</u>. According to Delta, the fact that this formula is always

13  <u>calculated</u> ensures compliance, even if the formula is not actually <u>applied</u>. Unfortunately for Delta,

14  the *Balasanyan* court rejected this very argument:

15  > What Nordstrom actually did was calculate the average rate that an employee
> earned per hour during selling time, which included up to 30 minutes of stocking
> assignments and 40 minutes of pre-opening and/or post-closing time, and

16  > compensated them either at the $10.85 rate or the actual average rate earned,
> whichever was higher. That guarantee . . . distinguishes the matter at hand from

17  > the *Armenta* defendants. But the crux of *Armenta* is that compensation must be
> directly tied to the activity being done, whether it is selling on commission or

18  > preparing to sell on commission.

19  913 F.Supp.2d at 1006. The fact that Nordstrom paid $10.85 an hour when the average hourly

20  commission rate fell below that amount did not save Nordstrom when it paid employees based on

21  commissions only. Thus, even if the Court finds that the 1 for 2 Duty Period Credit satisfies

22  Delta's minimum wage obligations when applied, the fact that Delta <u>could have</u> paid based on the

23  1 for 2 Duty Period Credit does not save Delta when it paid only Flight Pay.

24       The *Gonzalez* court rejected a similar policy that attempted to create a "minimum wage

25  floor." In *Gonzalez*, the employer tracked flag hours, but it also tracked all the time that the

26  mechanics spent at the work site, whether or not they were working. 215 Cal.App.4th at 41. For

27  each pay period, the employer calculated how much a mechanic would earn if paid the minimum

28  wage for all "clock hours," and, if that amount exceeded the pay based on the standard piece-rate

1  formula, the employer would supplement the pay to reach a "minimum wage floor." *Id.* at 41-42.

2  The court gave no weight to this fact, agreeing with the plaintiffs that workers must be "separately

3  compensated, at the applicable minimum wage rate, for 'each and every hour' of time spent

4  waiting for repair work." *Id.* at 45.

5      Ultimately, Delta attempts to reinvigorate the averaging method so clearly rejected in

6  *Armenta* and every case that has followed. (*See* ECF No. 32 at 27 ("Plaintiffs cannot make a valid

7  claim . . . as it is always possible to describe the identical mathematical computation in different

8  ways and yield the same result.").) According to Delta, California employers are only required to

9  pay their employees for half their hours worked, as long as the pay rate is double the minimum

10  wage. But the fundamental problem with this argument—like similar arguments rejected in other

11  cases—is that it allows the employer to take a credit against its minimum wage obligation by

12  paying above the minimum wage for certain hours and below the minimum wage (or here, nothing

13  at all) for other hours. *See Armenta*, 135 Cal.App.4th at 323. Every California court to consider

14  this argument since *Armenta* has rejected it, and this Court must do the same.

### 3.    The Minimum Duty Period Credit (4:45) and Time Away From Base Credit (1 for 3.5) Do Not Ensure that Flight Attendants Are Paid for Each Hour Worked

17      Flight Pay (which applies most frequently) and the 1 for 2 Duty Period Credit (which Delta

18  contends carries the day) are the most important formulas for the Court to address at this time.

19  However, the two other pay schemes (Trip Credit[20] and the Minimum Duty Period Credit) fail just

20  like the 1 for 2 Duty Period Credit. Namely, they do not comply with California's requirement that

___

21  [20] Delta's description of the Trip Credit formula in its briefing is much more candid than its
22  description of the 1 for 2 Duty Credit formula. Specifically, Delta admits that under this formula,
   "Delta credits Flight Attendants with one hour of their Flight Pay Rate for every three and a half
23  hours spent away from base during a rotation." (ECF No. 32 at 21.) Delta does not suggest that this
   formula pays flight attendants two-sevenths of their Flight Pay rate, and Delta *admits* the Trip
24  Credit Formula "[does not] compensat[e] Plaintiffs for all of the time they spend away from base."
   (*Id.* at 28.) Perhaps this was inadvertent, or perhaps Delta recognizes that under that calculation, it
25  would be admitting to minimum wage violations for flight attendants with less seniority than the
   Plaintiffs here. For flight attendants with fewer than five years of seniority, the Flight Pay Rate is
26  under $31.00 per hour – if that amount were divided by 3.5, the resulting rate would be below
   minimum wage. (Ex. 1 at DELTA000810.) Although the work rules describe this formula and the
27  1 for 2 Duty Credit Formula with virtually identical language ("You will be credited with 1 hour of
   flight pay for every 2 hours on duty for any given duty period" and "You will receive credit and
28  pay for 1 hour of flight time for each 3.5 hours you are away from base."), Delta interprets these
   provisions very differently. (*Id.* at DELTA000811, 000813.)

___

1    an employer pay at least minimum wage for every hour (or portion of hour) worked. Plaintiffs are

2    therefore entitled to judgment in their favor for duty periods paid under these credits.

3           Again, the fundamental problem with these formulas is that they apply as a credit on top of

4    Plaintiffs' flight time.[21] Mr. Moreau explained this application very clearly in describing the credit

5    Plaintiff Lehr received over the course of a three-day trip from San Francisco to Los Angeles, then

6    to Indianapolis and Atlanta, and back to San Francisco. (Moreau Dep. 222:9-223:24, Ex. 9 at

7    DELTA005552.) In addition to the Flight Pay, "14 minutes of trip hour credit were applied to this

8    rotation." (Moreau Dep. 223:19-24.) Delta makes no effort to correlate those 14 minutes of pay

9    with any 14 minutes of work. As a result, this formula does not satisfy California law: "the crux of

10    *Armenta* is that compensation must be directly tied to the activity being done." *Balasanyan*, 913

11    F.Supp.2d at 1006.

12           Similarly, the 4:45 Minimum Duty Period Credit sometimes applies to supplement a flight

13    attendant's block hours, but it does not correlate that credit to the actual work being done.[22] For

14    example, according to Delta's records, Plaintiff Lehr flew from San Francisco to Atlanta on April

15    29, 2015. (Ex. 9 at DELTA005632.) Mr. Lehr was required to report at 8:55 pm; the flight blocked

16    out at 9:53 pm, and blocked in at Atlanta at 7:21 the next morning, for a total block time of 4 hours

17    and 28 minutes. (*Id.*) Under the 4:45 Minimum Duty Period Credit formula, Mr. Lehr received an

18    additional payment of 17 minutes. (*Id.*) There is no way to tie those 17 minutes of credit to any

19    particular work. They could represent 17 minutes of pre-flight work performed at SFO, 17 minutes

20    of post-flight work performed in Atlanta, or simply a credit enhancement for the work performed

21    during the flight. In any case, there is no way for Delta to reconcile this payment with the

22    requirement to pay at least the minimum wage for every hour worked.

23           Courts in California have recognized for ten years that the "minimum wage standard

24    applies to each hour worked by [plaintiffs] for which they were not paid." *Armenta*, 135

---

26    [21] Some variation of the Trip Credit formula has existed throughout the statutory period. (Ex. 1 at

27    DELTA000813; Ex. 2 at DELTA000557; Ex. 3 at DELTA002429; Ex. 4 at DELTA007384.).

[22] Some variation of the Minimum Duty Credit / Average formula has existed throughout the

28    statutory period. (Ex. 1 at DELTA000812; Ex. 2 at DELTA000556; Ex. 3 at DELTA002429; Ex. 4 at DELTA007384.)

1  Cal.App.4th at 324. Delta's default policy is to pay its flight attendants for their block hours, and

2  not for hours before or after a flight. Delta's credit formulas, which apply in some cases and can

3  add to the hours that Delta pays, do not cure these violations. Delta cannot show by admissible

4  evidence that Plaintiffs were <u>ever</u> paid for all their hours worked. Plaintiffs are entitled to summary

5  judgment on Delta's liability for minimum wage violations.

6  **C.   Delta Is Liable for Violations Under the Former NWA Work Rules, Because
       Delta Has Been Plaintiffs' Employer and Has Applied Consistent Pay Practices
7       Throughout the Statutory Period**

8  Delta limited its summary judgment motion to the time period from "May 1, 2012 through

9  the present." (ECF No. 32 at 11.) Delta was well-aware that Plaintiffs assert claims for the full

10  four-year statutory period, but chose not to pursue any argument regarding the Former NWA Work

11  Rules. (*See* ECF No. 29 at 2 (ordering Delta to produce the Former NWA Work Rules and

12  explaining that arguments regarding NWA would be appropriate subjects for a summary judgment

13  motion).) Delta failed to present arguments that Plaintiffs' Complaint intentionally excluded time

14  prior to May 1, 2012, or that the Northwest rules should be treated differently.

15  Instead, Delta's motion is based on an argument that its pay formulas complied with

16  California law. As explained above, the Northwest formulas are either identical or functionally

17  equivalent to Delta's policies,[23] and this Court may rule on summary judgment for the entire period

18  in question. Because <u>all</u> of the work rules failed to separately pay Plaintiffs and other flight

19  attendants for all time worked, Plaintiffs are entitled to summary judgment.

20  **IV.   CONCLUSION**

21  The law is clear: work performed in California is covered by the California Labor Code.

22  Because Delta fails to pay flight attendants for all hours worked, in violation of California law,

23  Plaintiffs are entitled to summary judgment.

24  Dated:  October 14, 2015                          **NICHOLS KASTER, LLP**

25                                            By:    s/Matthew C. Helland
                                                  Matthew C. Helland
26
                                              Attorneys for Plaintiffs and Others Similarly Situated
27

28  [23] Delta admitted as much in its motion. *See* ECF No. 32, at 8 (Plaintiffs have "25 years as Flight
     Attendants subject to Delta's, or a similar, compensation system.").