UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEV ANAND OMAN, et al., <br> Plaintiffs, <br> v. <br> DELTA AIR LINES, INC., <br> Defendant. | Case No. 15-cv-00131-WHO <br><br> **ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** <br> Re: Dkt. Nos. 32, 36 |

On the parties' cross-motions for summary judgment, the core question is whether Delta's Work Rules violate California's minimum wage requirements. Given the complexities of scheduling and paying Flight Attendants, Delta has developed formulas for determining Flight Attendant pay. Those formulas ("Work Rules") are fully disclosed to Flight Attendants and form the basis for the minimum promised pay included in each Bid Packet for each Rotation that a Flight Attendant might want to work. Even where flights are delayed or rescheduled, a Flight Attendant will receive the minimum pay promised in the Bid Packet and the highest pay produced by applying each of the four Work Rules to the Rotation actually worked by the Flight Attendant. As explained in more depth below, I find that Delta's Flight Attendants are compensated for all hours worked in California at an amount exceeding the minimum wage.

There is no dispute – even when considering all hours a Flight Attendant was on Duty within each Rotation – that the Flight Attendants always received at least the California minimum wage rate for each hour within that Duty period. That Delta does not use a set hourly wage for each different type of task Flight Attendants perform (*e.g.,* time in flight, time spent in crew meetings or other pre-boarding duties, time spent on the ground in-between flight Segments, and time away from base) does not violate California law because Delta's formulas ensure that Flight Attendants are compensated for *all* time spent on Duty. Accordingly, I GRANT defendant's

motion for partial summary judgment on plaintiffs' First, Second, and Third claims for relief and DENY plaintiffs' cross-motion for summary judgment.[1]

## BACKGROUND

### I. DELTA'S FLIGHT ATTENDANT SCHEDULES AND PAY RULES

Delta provides air transportation for passengers and cargo throughout the United States and World through its network of hubs and international gateways. Declaration of Andrew P. Frederick (Dkt. No. 33), Ex. G at 2.[2] As of August 2015, Delta employed approximately 80,000 employees worldwide and 21,689 Flight Attendants in the United States. *Id*. at 10; Declaration of Brian Moreau (Dkt. No. 32-1), ¶ 2. The domestic flight attendants are primarily based at one of Delta's eight domestic hubs, Hartsfield-Jackson Atlanta International Airport ("ATL"), Los Angeles International Airport ("LAX"), Detroit Metropolitan Wayne County Airport ("DTW"), Minneapolis-St. Paul International Airport ("MSP"), New York – LaGuardia Airport ("LGA"), New York – John F. Kennedy International Airport ("JFK"), Salt Lake City International Airport ("SLC") and Seattle-Tacoma International Airport ("SEA"). Moreau Decl. ¶ 2. From May 1, 2012 to the present, between 5.3% and 6.2% of Delta Flight Attendants were based out of LAX, and between 1.2% and 1.5% based out of SFO. Moreau Decl. ¶¶ 3-4. Most Flight Attendants were and are based out of Atlanta and New York. *Id*. ¶ 5.

Every month, Flight Attendants "bid" on Rotations that are scheduled to depart from the Flight Attendant's base the following month. Frederick Decl., Exs. L-N.[3] Flight Attendants'

---

[1] In their First Amended Complaint, plaintiffs allege violations of San Francisco and San Jose's Minimum Wage Ordinances. *See* First Amended Complaint (Dkt. No 24). Delta moves for summary judgment on those claims. Delta MSJ at 26-27. Plaintiffs attempt to "withdraw" those claims in their Motion. Plaintiffs' MSJ at 15 fn. 11. Because plaintiffs do not *oppose* Delta's MSJ as to those claims for the three named plaintiffs, I GRANT Delta's Motion for Summary Judgment on plaintiffs' Second and Third claims for relief.

[2] The following facts are undisputed, unless otherwise noted.

[3] A Rotation is a sequence of flights that may consist of one or more flight segments (i.e., a single flight) or one or more Duty Periods. Deposition of Brian Moreau, Ex. D to Frederick Decl. (Dkt. No. 34-3) 39:9-25, 41:6-8. A Duty Period begins at the scheduled Report Time and ends upon the Flight Attendant's release from duty for that particular day or Rotation. Moreau Dep. 40:5-15. Report Time is the time a Flight Attendant must be present at the airport either for Sign-in or to return from a layover. Frederick Decl. Exs. E, F at G13 (Work Rules Glossary). Attendants do not have any duties or responsibilities prior to their Report Time. Moreau Dep.

2

schedules, therefore, fluctuate and depend upon the seniority-based bid process. Moreau Decl. ¶ 6.

A Rotation begins when a Flight Attendant reports to an airport at a designated Report Time for "Sign in," to let the Delta know he or she is present and available to work the assigned Rotation. Moreau Dep. 51:5-19, 52:17-21, 53:8-54:4. Report Time is typically one hour before the departure time for domestic flights, one and a half hours for international flights, and is the start of the Flight Attendant's Duty Period. Moreau Dep. 51:5-19. After reporting, the Flight Attendant is required to check his/her e-mail and/or mailbox and attend a pre-flight briefing with the other Flight Attendants working the flight (the "Crew") in the Flight Attendant lounge, reporting location, or other designated area. Moreau Dep. 67:15-16, 70:8-71:25.

The Flight Attendant must then report to the departure gate prior to boarding. Moreau Dep. 77:2-4. At the gate, the Flight Attendant's pre-flight responsibilities will vary depending upon whether they are serving as the Purser or Flight Leader,[4] regular crew member, or language destination Flight Attendant. Moreau Dep. 68:2-70:2. For example, the Purser/Flight Leader will typically obtain a copy of the flight's manifest and "brief" with the Captain while the rest of the Crew performs a number of duties to ensure the aircraft cabin is ready to receive passengers before assisting with the boarding process. Moreau Dep. 69:8-12.

Once the plane pushes back from the gate (referred to as "Block Out"), the Flight Attendant performs the necessary safety demonstrations and other in-flight duties. Moreau Dep. 41:24-42:3. At arrival, when the flight pulls into the gate (referred to as "Block In"), the Flight Attendant assists with the deplaning process after the boarding door has opened. Moreau Dep. 42:4-9.

For Duty Periods with multiple flight Segments, there is a period of time between the

---

74:23-75:3.

[4] The Flight Leader is the lead Flight Attendant on a domestic flight and the Purser is the lead Flight Attendant on a transoceanic flight. Moreau Dep. 20:5-20:16. Lead Flight Attendants and Pursers were paid premiums of $3.20 or $5.40 per hour flown during the relevant time period, in addition to the compensation earned for the Duty Period. Frederick Decl., Exs. E, F (Work Rules §2.P).

3

arrival on the first Segment and the departure of the next Segment referred to as Turn Time. Moreau Dep. 42:25-44:4-7. During the Turn Time, Flight Attendants do not have any responsibilities, but they are still on "duty." Moreau Dep. 108:2-12, 139:18-140:3. Flight Attendants must remain at the airport for possible contact from Crew Tracking. Work Rules at 11 ("Flight Attendants must be contactable at all times in the event of changes in flight times or routing."). Delta considers the Turn Time to be Duty Time for purposes of compensation. Moreau Dep. 108:11-12.

If the Flight Attendant's Duty Period ends in a destination city other than the Flight Attendant's base, he or she is released from work into Layover (usually overnight) until the next leg of the Rotation begins. Moreau Dep. 42:13-17. A Layover is a period of rest between Duty Periods of the Flight Attendant's Rotation. *Id*.

Regardless of whether the Duty Period is the only, first, middle or last Duty Period within a Rotation, the Duty Period ends 15 minutes after the block in of the last flight Segment. Moreau Dep. 101:11-18. However, in the event that deplaning takes longer than 15 minutes, Flight Attendants can notify the Scheduling Department to extend the Duty Time. Deposition of Dev Anand Oman, Ex. A to Frederick Decl. (Dkt. No. 34) 202:6-23; Deposition of Todd Eichmann, Ex. C to Frederick Decl. (Dkt. No. 34-2) 135:4-24. The Duty Period encompasses all time that the Flight Attendants are on Duty, including during the pre-flight meeting, preparation of the aircraft cabin, boarding, Flight Time, Turn Time, and deplaning of passengers, even when a Flight Attendant's release is delayed due to extenuating circumstances. Moreau Dep. 44:25-45:2.

The Bid Packets provided to Flight Attendants include a listing of all available Rotations that are scheduled to depart from the Flight Attendant's base the following month. Declaration of Michael Lehr, Ex. B. to Frederick Decl. (Dkt. No. 34-1) 187:17-188:4. For each Rotation, the Bid Packets describe the number and length of the Duty Periods encompassed within the Rotation, the Report Times for each Duty Period, the scheduled total flight time for each Segment within the Rotation (which is measured from Block Out to Block In), and the amount of time that the Flight Attendant can expect to be away from base. Moreau Dep. 195:4-204:18; Frederick Decl. Exs. L-N. The Bid Packets show which of Delta's four pay formulas will apply to the Rotations, what the

4

credit value of the Rotation is, and calculates the minimum compensation for each Rotation. Eichmann Dep. 175:8-176:14; Lehr Dep. 191:9-21, 202:13-19. The credit valuation included in the Bid Packets for each Rotation serves as a minimum guarantee for Flight Attendants with respect to credits. The actual compensation may increase as a result of delays, changes, or other contingencies; it cannot decrease. Eichmann Dep. 175:8-14.

Delta's bidding and compensation policies are laid out in Delta's Work Rules. Moreau Dep. 36:13-17. Delta uses four formulas to determine a Flight Attendant's actual pay. Delta runs each calculation for each Flight Attendant's Rotation and pays the Flight Attending using the formula that results in the highest amount of pay. Frederick Decl. Exs. E, F at 32-38 (Work Rules); Moreau Dep. 171:14-25. Delta asserts – and plaintiffs do not contest – that in no event is a Flight Attendant's pay less per hour worked in the Duty Period (all hours worked), than the California minimum wage rate.

Plaintiffs' challenge to the Delta's Work Rules stems from a misinterpretation of how the four formulas work in determining compensation. Each uses a "base" which Delta defines as "Flight Pay Rate."[5] The Flight Pay Rate is not an agreed to "hourly rate of pay;" it is instead part of the mathematical equation Delta runs to determine actual pay. Plaintiffs point to no evidence that Delta or its Flight Attendants understand that the Flight Pay Rate is an hourly rate of pay that promises or guarantees payment at that rate for each hour on Duty. Below is a brief description of each formula.

**A. Flight Pay**

The Flight Pay formula is based on the actual flight time and/or scheduled flight time of the Segments, whichever is greater. Work Rules at 35. Flight time for Flight Pay begins at Block Out and ends at Block In (generally 15 minutes after landing). *Id*. Under this formula, the flight time is multiplied by the Flight Pay Rate to produce the value.

---

[5] A Flight Attendant's Flight Pay Rate is based on an individual's length of service. Plaintiffs' Flight Pay Rates from May 1, 2012 through April 2015 were from $45.75 per hour up to $53.52 per hour. Moreau Decl. ¶ 8; Frederick Decl. Exs. E, F.

### B. Duty Period Credit

Delta refers to this formula in its Work Rules as "Duty Period Credit (1 for 2)." Frederick Decl., Ex. F ("Work Rules") at 36.[6] A Duty Period is the period of time from scheduled or actual Report Time to the release at a base or on Layover. Moreau Dep. 40:5-15. Under this formula, Delta "credits" flight attendants with "1 hour of flight pay for every 2 hours on duty for any given period." Work Rules at 36. As an example, Delta's Work Rules explain:

> You are scheduled for a turnaround worth 6:00 block time with a scheduled duty period length of 10:00. Due to an operational delay, your duty period is lengthened to 14:00. You will be paid 7:00 for the turnaround, comprised of 6:00 block time and 1:00 of 1 for 2 duty credit (14:00 divided by 2).

*Id*. Delta characterizes this formula as providing one-half of the Flight Pay Rate for every hour worked in a Duty Period. Delta's MSJ at 12. Plaintiffs point out that in Delta's own examples, DPC appears to be applied as a credit that supplements the Flight Pay value (otherwise known as block time). Work Rules at 36.

Delta's corporate designee (Brian Moreau) confirmed that DPC is a formula that for "every two hours on duty, one hour will be credited and paid at the flight pay rate." Moreau Dep. 170:12-17. Moreau also testified that the description of DPC in the Work Rules – "You will be credited with one hour of flight pay for every two hours on duty for any given duty period" – accurately reflected Delta's actual practices. *Id*. at 175:23-176:17. Moreau explained that under the DPC, Flight Attendants are "compensated at a minimum of one-half of their flight hourly rate for every hour on duty" and referred to the Flight Pay Rate as an "effective rate" that was half of the Flight Pay Rate. Moreau Dep. 185:1-9, 190:24-191:14, 192:6-19.

### C. Minimum Duty Period Credit

The Minimum Duty Period Credit (MDC) multiplies 4:45 hours by the Flight Pay Rate for each Duty Period within a Rotation that has at least one flight Segment. Work Rules at 37.[7] For example:

---

[6] Unless otherwise noted, I will refer to the 2015 Work Rules attached as Exhibit F to the Frederick Decl. As far as the record shows, all Flight Attendants have been subject to the same set of compensation Work Rules since May 1, 2012.
[7] Prior to April 1, 2014, the MDC was called the Duty Period Average, but functioned similarly. *See, e.g.*, Frederick Decl., Ex. E at 37.

> A 3-day trip has daily block time scheduled of 3:00, 5:00, and 5:00 respectively for the three days for a total of 13:00 block time. Because the 4:45 minimum guarantee applies for all 3 days, the total credit for the trip would be 14:45, and the pairing will generate 1:45 in MDC and you will be paid 14:45 for the trip (13:00 block time plus 1:45 MDC).

*Id*. The time paid will be at the Flight Pay Rate. *Id*. at 32.

Delta explains that the MDC was intended to provide Flight Attendants whose Rotations consisted of relatively short flight segments within multiple Duty Periods with higher compensation than they would have received under the other formulas. Moreau Decl. ¶ 7.

**D.      Trip Credit**

Under this formula, Flight Attendants receive credit for 1 hour of flight time for each 3.5 hours they are away from base. Work Rules at 38. As an example:

> Your 3-day trip is away from base a total of 60 hours. The 1 for 3.5 hours trip credit is 17:07 hours.

*Id*. This formula expressly includes non-Duty Period Time, such as travelling to airports during Layovers and time when Flight Attendants have been released from Duty.

Delta's Work Rules explain how these formulas are applied in slightly different ways. The 2015 Work Rules explain: "Flight Attendant compensation is paid as an hourly rate for all hours flown or credited." Work Rules at 32. "Each duty period of a rotation pays the greatest of: 1) flight time (includes deadhead flight time, minutes under, and flight pay for ground time), or 2) 4:45 minimum duty period credit (MDC), or 3) 1 for 2 duty period credit (DPC); The sum of the duty period credits listed above is then compared to 1 for 3.5 trip credit (TRP), which guarantees at least 1 hour pay for every 3.5 hours away from base. You will be paid the greater of the two values." *Id*. The 2014 Work Rules describe compensation as "for every trip, a comparison is made between block time (which includes Flight Pay, any 1 for 2 duty credit, and deadhead time[8]), the duty period average [now MDC], and the 1 for 3.5 Trip Credit (TRP). After taking these into consideration, you will be paid the greatest total trip value." 2014 Work Rules (Ex. E to Frederick

---

[8] Deadhead time is when a flight attendant is transported by plane as a passenger, for an assignment that will be begin at another airport. Moreau Dep. 196:18-21.

7

Decl.) at 36.[9]

Plaintiffs characterize Delta's Work Rules as having one standard compensation formula – the Flight Pay formula – and allege that despite Delta's use of the other "credit formulas" there are three different time periods where plaintiffs are not appropriately paid under California law: (i) pre-boarding time – the time from Report Time to Block In; (ii) post-landing – the time from Block Out until all passengers have deplaned and all other onboard duties have been completed; and (iii) Turn Time (in middle of duty period). Plaintiffs' MSJ at 1.

## II. PLAINTIFFS

### A. Oman

For the relevant period, Oman has been based out of JFK. Oman Dep. 40:15-18. From May 1, 2012 through his termination in September 2014, Oman worked a total of 106 Rotations consisting of 369 flights. Oman Dep., Exs. 5 & 18. With respect to those Rotations and flights: 11 Rotations included flight Segments arriving at or departing from a California airport; in those 11 Rotations there were 26 flight Segments (13 arrivals and 13 departures); ten of the 13 flights arriving in California were the last flight Segments of the Duty Period, meaning Oman was immediately off-duty thereafter; for the remaining three arrivals, Oman had a total Turn Time between Block-In and Block-Out of 5 hours and 12 minutes; and none of the flight Segments were intra-California flights – *i.e.*, a flight that both departed from and arrived at California-based airports. *Id*.

Plaintiffs contend that Oman worked at least 27 flights into or out of California between over a longer time period, November 24, 2011 and August 8, 2014. Frederick Decl. Ex. H, Ex. A. Oman received small amounts of Duty and Trip Credit on two flights, and the remaining 25 flights (93%) was paid Flight Pay only. *Id*.

### B. Eichmann

Eichmann has been based out of LAX since February 2014. Eichmann Dep. 35:16-22.

---

[9] Flight Attendants also receive various forms of premium pay, including for working at as Lead Flight Attendant or Purser, report pay, time away from base pay, and holding pay. Work Rules, Section 2.

Prior to that, he was based out of DTW and SEA. *Id*. 95:8-13. From May 1, 2012 through his relocation to LAX in 2014, Eichmann worked a total of 83 Rotations consisting of 312 flights. Eichmann Depo. Exs. 36, 48, 49.  Of those Rotations and flights:  five Rotations included flight Segments arriving at or departing from a California based airport; the five Rotations consisted of 10 such flight Segments (five arrivals and five departures); three of the five flight Segments arriving in California were the last flight of the Duty Period, meaning Eichmann was immediately off-duty thereafter; for the remaining arrivals, Eichmann had a total turn time of 4 hours, 32 minutes; and none of the flight Segments were intra-California flights.  *Id*.

From February 2014 through June 21, 2015 – when based at LAX – Eichmann worked 88 Rotations consisting of 414 flights, of which 196 flight Segments arrived at or departed from a California-based airport. *Id*., Exs. 36, 49.  Only one of those flight Segments was an intra-California flight – a June 19, 2014 segment from SJC to LAX. *Id*.

Plaintiffs contend that Eichmann worked 178 flights into or out of California over a longer time period, January 1, 2011 and May 1, 2015.  Frederick Decl. Ex. I, Ex. A.  Eichmann received Duty Credit or Trip Credit on 29 flights, and the remaining 149 flights (84%) was paid Flight Pay only.  *Id*.

**C.  Lehr**

Lehr has been based out of San Francisco and living in Las Vegas throughout his employment with Delta. Lehr Dep. 92:10-17. From May 1, 2012 through June 16, 2015, Lehr flew 230 Rotations consisting of 839 flights, of which 236 flights departed from SFO, 5 flights were intra-California flights. *Id*. Exs. 25, 29, 30. During that time, the initial flight of all but one of Lehr's Rotations departed from SFO and he never had more than five departures from SFO in any given seven day period. *Id*.  Moreover, of the 236 flights departing from SFO, 229 were the initial leg of the Rotation (*i.e*., Lehr's Duty Period began an hour before those departures), while the remaining seven consisted of five secondary attempts at taking off (*i.e*., the initial leg blocked out but had to return to gate) and two intra-Rotational flights (*i.e.,* subsequent flights within a Rotation). *Id*. For the two intra-Rotational flights, Lehr's Turn Times prior to departure were 35 minutes and 51 minutes, respectively. *Id*.

Plaintiffs contend that Lehr worked 681 flights into or out of California over a longer time period, January 1, 2011 and May 1, 2015. Frederick Decl., Ex. J, Ex. A. Of those 681 flights, Lehr received some sort of Duty Credit on 52 flights and Trip Credit on 50 flights. *Id*. The remaining 579 flights, or 85% of Lehr's California flights, paid Flight Pay only. *Id*.

Delta asserts – and plaintiffs do not dispute – that for every hour of Duty worked by plaintiffs, they were paid an amount per hour that far exceeded California's minimum wage floor. Plaintiffs nonetheless contend that under California law, the Flight Pay Rate is essentially a guaranteed hourly rate, and that it should be applied to all Duty hours worked, not just to certain hours that Delta credits under the Work Rules.

## LEGAL STANDARD

### I. MOTION FOR SUMMARY JUDGMENT

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id*. The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

On summary judgment, the Court draws all reasonable factual inferences in favor of the non-movant. *Id*. at 255. In deciding a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id*. However, conclusory and speculative testimony does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.1979).

## II. CALIFORNIA WAGE ORDER

The Industrial Welfare Commission (IWC) wage order that applies to the transportation industry, is Wage Order 9-2001, and that Wage Order provides:

> 4. Minimum Wages
> (A) Every employer shall pay to each employee wages not less than [minimum wage amount] per hour for all hours worked, . . . .
> (B) Every employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise.

Cal. Code Regs. tit. 8, § 11090.[10]

"Hours worked" means "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." *Id*., § 2(G). (O) "Wages" includes "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." *Id*., § 2(O).

## DISCUSSION

Delta argues that, assuming that California law applies to the work plaintiffs performed on the ground in California, Delta's compensation scheme is compliant with California law because plaintiffs were paid at least the California minimum wage rate for all of their Duty hours in California. Delta relies heavily on a recent case from the District Court in Massachusetts. In *DeSaint v. Delta Air lines, Inc.*, No. CIV.A. 13-11856-GAO, 2015 WL 1888242 (D. Mass. Apr. 15, 2015), the court faced exactly the same question on the same facts as here: whether Delta's use of its four pay formulas violated Massachusetts law by failing to pay plaintiff flight attendants for every hour worked. The court granted Delta's motion for summary judgment.

The court in *DeSaint* phrased critical issue in that case as follows:

> whether Delta's Flight Attendant compensation scheme runs afoul of the Wage Act because it fails to pay those employees all of their earned wages. The plaintiffs contend that under Delta's policies, Flight Attendants are paid an hourly rate, known as a "flight pay rate," for flying time or other working hours for which they receive a credit, but never receive compensation for each and every hour of

---

[10] As of July 1, 2014, "the minimum wage for all industries shall be not less than nine dollars ($9) per hour." Cal. Lab. Code § 1182.12.

11

> work that they perform for the defendant. Delta contends that its compensation scheme accounts for every minute of work that is performed by its Flight Attendants, and guarantees that those employees are paid well above minimum wage for all hours spent on duty.

*Id*. at *1. It concluded that because Delta's rules accounted for each hour worked – by paying Flight Attendants the highest value under each of the four formulas – the compensation was compliance with Massachusetts law. *Id*. at *4. In particular, it relied on the DPC, which guarantees that "Flight Attendants will be paid, at a minimum, at the rate of one half of their flight pay for each hour that they spend working on duty for defendant." *Id*. *5. It also found that plaintiffs' argument was based on a mischaracterization of the Flight Pay Rate as a guaranteed minimum hourly wage. Instead, it concluded that it was "in reality" "simply a number used as a starting point to calculate compensation for each rotation." *Id*. *5, 8-10. And under Delta's compensation formulas, "it is not the rate that each Flight Attendant will be paid for each hour worked." *Id*. With respect to the Flight Pay formula, the court explained that while that formula arguably did not account for all hours actually worked, because it could "only be used to increase their pay above the Duty Period Credit formula, which applies a specified hourly rate to all hours worked," there was no violation. *Id*. at *6.

In reaching its conclusion, the *DeSaint* court concluded that under Massachusetts law, employers did not have to use a fixed per hour rate to compensate workers and "were not prohibited from calculating the hourly rate by dividing earnings by the number of hours worked during the relevant pay period." *Id*. at *11. It is on that ground that plaintiffs' argue *DeSaint* is inapposite. They rely on a series of California cases that have rejected as impermissible under California law the approach that is permissible under the federal Fair Labor Standards Act. Under FLSA, in determining whether FLSA's minimum wage requirement was violated, courts can average all of the hours worked in a pay period by the amount paid in order to determine whether the employer has cleared the minimum wage floor; in other words paid their employees at least the minimum hourly wage for each hour worked. This, however, is not what Delta does, and the cases relied on by plaintiffs rejecting FLSA averaging, discussed below, are inapposite.

In *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314 (2005), employees who worked for a

12

company that maintained utility poles were covered by a collective bargaining agreement guaranteeing their pay at specific rates. The employees' work tasks were classified as "productive" or "nonproductive" hours. Employees were not paid for nonproductive time spent travelling, loading equipment, completing paperwork, and maintaining vehicles, despite written policies to the contrary. *Id*. at 318. When sued for failure to pay a minimum wage for all hours worked, the employer argued that because the employees were compensated weekly at an amount exceeding the total hours worked multiplied by the applicable minimum wage rate, their average hourly rate in any given pay period was higher than California's minimum wage floor and not in violation of the law. *Id*. at 319.

The California Court of Appeal recognized that California's wage laws, while patterned on federal FLSA statutes, were more protective of workers' rights. As such, while FLSA required payment or minimum wage to employees for their work in "any work week," California law required payment of a minimum wage for "every hour" worked. Therefore, the court concluded that the "averaging method" allowed under FLSA – which permits a court to average hours worked by the amount paid in a pay period "to assess" whether there was a violation of the federal minimum wage floor – is not allowed under California law. *Id*. at 323. The court also noted that provisions of the California Labor Code supported the principal that "all hours worked must be compensated at the statutory or agreed rate and no part of this rate may be used as a credit against a minimum wage obligation." *Id*. (relying on Cal. Labor Code §§ 221 [precluding employers from taking back wages already paid], 222 [precluding employers from withholding any part of an agreed upon wage] and 223 [precluding employers from secretly paying a wage lower than designated wage scale]). "California's labor statutes reflect a strong public policy in favor of full payment of wages for all hours worked." *Id*. at 324.

Delta's Work Rules do not implicate the wrongs identified in *Armenta*. Delta is not arguing, as the *Armenta* defendant did, that it can avoid paying Flight Attendants for certain hours on Duty because when considering all hours on Duty the average amount earned exceeds California's minimum wage floor. Delta is instead applying formulas that expressly consider all hours worked in the first instance. It is not engaging in a post-hoc attempt to rationalize a failure

to pay for all hours worked by pointing out that pay exceeds the minimum wage floor as in *Armenta*. Nor is this a case where Delta's Work Rules run afoul of Labor Code sections 221, 222, and 223. Delta is not attempting to avoid payment of all hourly work at the "agreed to" hourly wage scale. As noted above, there is no evidence that Delta has promised or the Flight Attendants expect to be compensated for each hour worked at the Flight Pay Rate. Indeed, Flight Attendants receive Bid Packets that state the minimum guaranteed pay for each Rotation, so they can easily calculate their rate of pay for the mix of responsibilities they would have during the Rotation. This is also no attempt by Delta to take back wages by "building in" pay for uncompensated tasks to the pay earned for compensated tasks.

Plaintiffs also rely on *Ontiveros v. Zamora*, No. CIV S-08-567LKK/DAD, 2009 WL 425962 (E.D. Cal. Feb. 20, 2009), where the Eastern District of California followed *Armenta*. In that case, automobile mechanics were paid on a piece-rate basis. Each type of repair was given a "flag rate" and compensated at a fixed amount based on the estimated time that repair should take. *Id*. at *2. The employees alleged the compensation system violated California law because they were not compensated for non-piece work, including attending meetings and setting up work stations. Defendants asserted their compensation scheme was legal as long as the amount of compensation paid for a particular pay period did not fall below the minimum wage considering all hours worked. *Id*. The court found the rationale of *Armenta* applicable – even though the employees were paid on a piece-rate basis – because under the scheme at issue "employees are not necessarily compensated for every hour worked and an employee is compensated for non-piece rate hours with wages accrued during piece hours," in violation of California law. *Id*. *3. As discussed above, this is not a case where the amount earned at an agreed-to rate for "paid hours" is used to compensate other unpaid work.

The Central District of California followed *Armenta* in *Cardenas v. McLane FoodServices, Inc.*, 796 F. Supp. 2d 1246 (C.D. Cal. 2011). There employee drivers of a motor carrier were paid a piece-rate formula based on the number of deliveries, number of miles driven, and number of delivery stops. That formula, the drivers alleged, failed to pay them for pre and post-shift duties such as safety checks and vehicle inspections. The employer contended that compensation for the

14

pre and post shift duties were "built into" the compensation provided in the piece-rate formula and that it need not compensate employees for time not included in the piece-rate formula if, at the end of the pay period, the average wage exceeded the minimum wage. *Id*. at 1250-51. The court concluded that the employer's argument about building in compensation was akin to the rejected "averaging" of productive and unproductive time in *Armenta*. Because the employer's formula did not actually directly compensate employees for pre and post shift duties, it was impermissible under California law. *Id*. at 1253. Delta's Work Rules do not suffer from the defect identified by the *Cardenas* court, where the applicable pay formula did not "calculate" for the pre and post shift duties required by the employer. *Id*. Instead, the Work Rules expressly consider all hours worked, and a Flight Attendant will always be paid the highest value for each Rotation worked under the applicable formulas.

In *Balasanyan v. Nordstrom, Inc.*, 913 F. Supp. 2d 1001 (S.D. Cal. 2012), the Southern District likewise rejected an argument that paid commissions and hourly pay for non-sell time could adequately compensate employees for un-paid non-commission producing activities employees were required to undertake (*e.g.*, marketing activities and contacting customers). While the employer argued its commission rates adequately compensated employees for non-sell time and that plaintiffs received an "effective" minimum hourly wage that exceeded the minimum wage, those arguments were foreclosed by *Armenta* and the cases following it. Employees "must be directly compensated at least minimum wage for all time spent on activities that do not allow them to directly warn wages," in that case extra commissions. *Id*. at 1007. And an employer cannot justify preventing employees from engaging in commission-generating activities (by requiring them to engage in unpaid tasks), even where post-hoc averaging hours and pay demonstrates a minimum wage rate was always paid. *Id*. Here the Delta Work Rules do not require Flight Attendants to perform uncompensated tasks at the expense of their ability to perform compensated tasks, and there is no post-hoc "averaging" rationalization in an attempt to justify treating specific tasks as uncompensated.

Two Northern District cases likewise rejected schemes which attempted to "build in" compensation for unpaid tasks into the compensation for paid tasks. In *Quezada v. Con-Way*

15

*Freight, Inc.*, No. C 09-03670 JW, 2012 WL 2847609 (N.D. Cal. July 11, 2012), the court considered a compensation scheme where line haul drivers were paid under a pre-set mileage rate multiplied by the number of miles in a trip. Drivers were not compensated for pre and post-trip vehicle inspections and wait time. Defendant's argument that it "built into" the per-mile rate compensation for those pre and post-trip tasks was rejected as impermissible under IWC Wage Order 9-2001, because under California law "all work time must be directly paid for." *Id*. at *4, 6. The *Quezada* court also concluded that the pay formula at issue violated California law, as expressed in a Division of Labor Standards Enforcement (DLSE) manual provision which explained that when employees are paid under a "piece-rate" formula, employees must be separately compensated for performing required tasks when – by virtue of performing those tasks – they are unable to earn additional piece-rate compensation during that time. *Id*. at *4-5.

The deficiencies found in *Quezada* are not found here. This is not a case where Delta "builds in" payment for pre and post flight duties into Flight Time, nor is it a situation where Delta is preventing Flight Attendants from performing compensable tasks by requiring them to perform expressly non-compensable tasks. Instead, Delta's Work Rules ensure that Flight Attendants are paid for all hours worked, based on the minimum guarantee in the Bid Packet and considering all hours worked during a Rotation.

In *Ridgeway v. Wal-Mart Stores, Inc*., No. 08-CV-05221-SI, 2015 WL 3451966 (N.D. Cal. May 28, 2015) motion to certify appeal denied, No. 08-CV-05221-SI, 2015 WL 4463923 (N.D. Cal. July 21, 2015), the court granted partial summary judgment to plaintiff drivers on their claim that defendant's piece-rate compensation system – where drivers were paid based on mileage, as well as hourly rates for certain required activities – did not compensate them for other pre, post and during-trip duties. The court followed *Armenta* and its progeny and concluded that under Wage Order 9-2001, the employer could not "subsume" non-paid activities into the wages paid for other activities because "California minimum wage standards apply to each hour worked by an employee." *Id*. at *6. Again, this is not a "built into" pay scheme; Flight Attendants are paid for all hours worked at an effective rate that is fully disclosed and bid upon by the attendants.

Finally, in *Gonzalez v. Downtown LA Motors, LP*, 215 Cal. App. 4th 36 (2013), a more

16

decision from the California Court of Appeal, the court considered a scheme where car repair technicians were paid on a "piece-rate" basis at a flat rate for different repairs they were required to perform during their eight hour shifts. During their shifts, the technicians were required to stay on the premises even when there were no cars for them to repair, and they were expected to perform other tasks during that time, including obtaining parts, cleaning up, and reviewing service bulletins. They were not paid by the hour for those tasks and they were not paid for other time spent waiting for the next vehicle to repair. *Id*. at 42. At the end of each 80 hour pay period, the employer would multiply the "flag hours" the technicians spent repairing vehicles at the technician's "flat rate," in order to determine how much the technician earned. At the same time, the employer also calculated how much the technician would earn if paid an amount equal to his total recorded hours (hours spent on shift) by the applicable minimum wage. *Id*. at 41. If a technician's flag hours pay fell short of the "minimum wage floor" the employer would supplement the pay in the amount of the shortfall. *Id*. at 41-42. The California Court of Appeal concluded that pay scheme violated California law because the employees were not being paid when they were required to be on duty, but did not have a car to repair. The court also rejected, as in *Armenta*, the employer's reliance on its post-hoc calculation to ensure it paid its workers at least the minimum wage per hour worked during each pay period, because that undermined the otherwise agreed-to piece rate wage promised to the employees.

The facts of *Gonzalez*, like each of the other cases relied upon by plaintiffs, are significantly different from the facts before me. Delta is not attempting to avoid paying an agreed-to hourly rate for specific tasks and is not using a post-hoc averaging to ensure the state's minimum wage floor is met (as allowed by FLSA). Delta's Work Rules function in a different, fully-disclosed way to ensure that Flight Attendants are paid for each hour worked on their Rotations. Delta's Work Rules do not violate California's minimum wage requirements and, therefore, summary judgment must be granted to defendant.[11]

---

[11] Because I agree with Delta that its Work Rules do not violate California law, I need not reach the question of whether California's wage and hour laws can apply to the Flight Attendants' work in California consistent with Due Process and Commerce Clause principles. Nor do I need to address whether Delta is liable to plaintiffs under the materially similar Northwest compensation

**CONCLUSION**

Delta's motion for summary judgment on plaintiffs' First, Second, and Third claims is GRANTED. Plaintiffs' cross-motion for summary judgment is DENIED. I have set a Case Management Conference on January 26, 2016. The parties shall file a Joint Case Management Conference Statement by January 19, 2016 that describes the remaining issues in this case and proposes a schedule to adjudicate them.

**IT IS SO ORDERED**.

Dated: December 29, 2015



WILLIAM H. ORRICK
United States District Judge