UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEV ANAND OMAN, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>DELTA AIR LINES, INC.,<br><br>    Defendant. | Case No. 15-cv-00131-WHO<br><br>**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 58, 59 |

## INTRODUCTION

The parties cross-move for summary judgment on plaintiffs' claims that Delta violates California Labor Code section 226 by failing to provide Flight Attendants who work for any amount of time on the ground in California individualized wage statements disclosing the total hours worked at specific hourly rates.[1] Plaintiffs also separately move for summary judgment on their PAGA claim under Labor Code section 204, arguing that Delta fails to make timely wage payments for pay periods encompassing any work by Flight Attendants in California.[2]

The facts regarding how and when Flight Attendants are paid and what information they are given regarding their wages are not in dispute. Instead, the dispute is whether the protections of the California Labor Code provisions at issue apply to the four named plaintiffs when they only worked a *de minimis* amount of time in California during any of the relevant pay periods. I conclude that given the undisputed facts in this case, California law does not apply. Delta's

---

[1] Delta moves for summary judgment on plaintiffs' third claim for wage statement penalties under California Labor Code section 226, fourth claim for civil penalties under the Private Attorneys' General Act, (PAGA) and fifth claim for violation of California's unfair competition law.

[2] Delta argues that plaintiffs cannot move for summary judgment on their PAGA claim under Labor Code section 204, because the parties' stipulation allowing for summary judgment prior to class certification (Dkt. No. 57) did not encompass that claim.

motion for summary judgment is GRANTED and plaintiffs' motion is DENIED.

## BACKGROUND

**I.     DELTA'S PAY FORMULAS**

Delta pays its flight attendants on a bid packet and rotation system where each month Flight Attendants "bid" on Rotations that are scheduled to depart from the Flight Attendant's base the following month.[3] For each Rotation, the Bid Packets describe the number and length of the Duty Periods encompassed within the Rotation, the Report Times for each Duty Period, the scheduled total flight time for each Segment within the Rotation (which is measured from Block Out to Block In), and the amount of time that the Flight Attendant can expect to be away from base. The Bid Packets show which of Delta's four pay formulas will apply to the Rotation, what the credit value of the Rotation is, and calculates the minimum compensation for each Rotation. The credit valuation included in the Bid Packets for each Rotation serves as a minimum guarantee for Flight Attendants with respect to credits. The actual compensation may increase as a result of delays, changes, or other contingencies; it cannot decrease.

Delta's bidding and compensation policies are laid out in Delta's Work Rules. Delta uses four formulas to determine a Flight Attendant's actual pay. The "Flight Pay" formula is based on the actual flight time and/or scheduled flight time of the Segments, whichever is greater. Under the "Duty Period Credit," Delta "credits" flight attendants with "1 hour of flight pay for every 2 hours on duty for any given period." The "Minimum Duty Period Credit" (MDC) multiplies 4:45 hours by the Flight Pay Rate for each Duty Period within a Rotation that has at least one flight Segment. And under the "Trip Credit" formula, Flight Attendants receive credit for 1 hour of flight time for each 3.5 hours they are away from base.

Delta runs calculations for each Flight Attendant's Rotation and pays the Flight Attendant using the formula that results in the highest amount of pay. In no event is a Flight Attendant's pay less per hour worked in the Duty Period (all hours worked), than the California minimum wage rate. Each

---

[3] The facts regarding Delta's four pay formulas and how they operate are not disputed and taken from my prior Order granting Delta's motion for summary judgment on plaintiffs' minimum wage claims. Dkt. No. 45, December 29, 2015 Order.

United States District Court
Northern District of California

1  formula uses a "base" which Delta defines as "Flight Pay Rate." But the Flight Pay Rate is not an
2  agreed to "hourly rate of pay;" it is instead part of the mathematical equation Delta runs to
3  determine actual pay.

## II.  DELTA'S WAGE TRACKING AND PAYMENTS

Delta provides Flight Attendants information about their hours worked and income paid through its Monthly Time Display System (MOTS), which is available to all Flight Attendants. Declaration of Brian Moreau (Dkt. No. 59-2) ¶ 8. MOTS allows Flight Attendants "real-time" access to their compensation for each Rotation and non-flight activity as they progress through their monthly schedules. *Id*.

Delta provides wage statements to Flight Attendants at the time of each payment of wages. Moreau Decl., ¶ 10. Those wage statements show each "category" of payments made to Flight Attendants as a separate line-items, but do not show the hours worked or hourly rates paid for those categories. *Id*.; *see also*, Frederick Decl., Ex. J (Eichmann wage statements). Flight Attendants also receive a Monthly Activity Pay Statement ("MAPS") for each bid period, which contains detailed pay information about their flying and non-flying activities for each bid period. Moreau Decl., ¶¶11- 13; Frederick Decl. Ex. K (Eichmann 2014 MAPS). For each flight within a Rotation, the MAPS shows: (1) the flight number; (2) the departure day; (3) the departure and arrival airports; (4) the report time for the first flight of the Duty Period; (5) the Block Out and Block In times; and (6) the actual flight time. Moreau Decl. ¶ 12. It also shows the total hours credited and provides a pay summary breaking down the current monthly pay based on flight credits and amounts paid for holding pay, flight leader pay, and TAFB. Frederick Decl., Ex. K.

Delta pays Flight Attendants on the 15th and last day of each month (*i.e*., semi-monthly). Moreau Decl., ¶ 9. As Delta does not know Flight Attendants' final schedules for a bid period until they are complete, it provides them with a base allotment of 45 credits at their Flight Pay Rate per bid period, where Attendants receive 22.5 credits in each paycheck. *Id*. Following the close of the bid period, Delta calculates the total credits for that bid period, determines what

premium pay rates should be applied[4] and what additional payments should be made,[5] and calculates the TAFB pay. *Id*.[6] The resulting amount is then split evenly between the two pay periods for the *following* bid period. *Id*. For example, on October 15th, Flight Attendants receive 22.5 credits for October 1st through 15th, plus fifty percent of their credits, premiums, and TAFB pay for September. *Id*. Then, on October 31st, the Flight Attendants receive the remaining 22.5 credits for October plus the remaining credits, premiums, and TAFB pay for September. *Id*.

### III. PLAINTIFFS' WORK HISTORY

During the relevant time period, plaintiff Oman was based out of New York/JFK airport. Plaintiff Eichmann was based out of Los Angeles/LAX and a California resident since February 2014, and before that was based out of Detroit (DTW) or Seattle (SEA). Plaintiff Lehr has been based out of San Francisco/SFO, but has been a resident of Las Vegas, Nevada throughout his employment with Delta. Plaintiff Flores is a resident of California based out of Los Angeles/LAX.

Plaintiffs do not dispute that the named plaintiffs spent between 86 percent and 97.1 percent of their "flight-related working hours" outside of California, and that they continuously worked in multiple jurisdictions on a pay period, weekly, and daily basis.[7]

---

[4] For example, for being a Flight Leader or for international flights. Moreau Decl. ¶ 12.

[5] For example, for holding pay or training pay. Moreau Decl. ¶¶ 7, 12.

[6] Time Away from Base Pay (TAFB) is a meal expense reimbursement payment, paid at an hourly rate for every hour spent away from base for any Rotation, including non-compensable time (*e.g.*, layovers after release from duty). Moreau Decl. ¶ 7. TAFB pay is paid at a different rate for domestic and international travel.

[7] Specifically, Delta contends that the percentage of time each named plaintiffs worked outside of California in the relevant time periods is as follows: Eichmann 91.4%; Flores 89.1%; Lehr 86%; and Oman 97.1%. Declaration of Valentin Estevez (Dkt. No. 59-3) at 5-6. Delta calculated those figures by using two measures to determine time spent on the ground in California; MAPS reports showing reporting time and Block In and Block Out, and on-time performance reports showing taxi times. Estevez Decl. at 2-5. Delta's expert used those measures for flights flown by the named plaintiffs into and out of California and compared report times and departure times, turn time at California airports, deplaning times at California airports, and taxi-times. Estevez Decl. at 4. In their declarations, the named plaintiffs assert only that they "regularly" fly into and out of California airports, but provide no estimate as to how much time they worked in California in any given pay period or during the class period. *See* Dkt. No. 58-19, Flores Decl. ¶ 2 ("regularly fly into and out of California airports"); Dkt. No. 58-20, Lehr Decl. ¶ 2 (same); Dkt. No. 58-21, Eichmann Decl. ¶ 2 (same).

4

## IV. PRIOR ORDER

In my prior Order granting Delta's motion for summary judgment on plaintiffs' minimum wage claims, I concluded that Delta's payment practice did not violate California's minimum wage requirements because Delta's Work Rules compensated Flight Attendants for all of their hours worked, in a fully disclosed manner based upon the floor guaranteed by the Bid Packet process. I recognized that under Delta's system, workers were not provided a guaranteed minimum rate for each hour on Duty, but that the Flight Pay Rate was used as part of the mathematical equation Delta runs to determine actual pay. December 2015 Order at 5.

The parties now cross-move for summary judgment on plaintiffs' remaining claims under California Labor Code sections 226 and 204.

## LEGAL STANDARD

## I. SUMMARY JUDGMENT

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id*. The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

On summary judgment, the Court draws all reasonable factual inferences in favor of the non-movant. *Id*. at 255. In deciding a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id*. However, conclusory and speculative testimony does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.1979).

## II. CALIFORNIA LABOR CODE

Section 226 requires employers to "semimonthly or at the time of each payment of wages" provide employees "either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee . . ., (4) all deductions . . ., (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer . . ., and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. . . .  For purposes of this subdivision, 'copy' includes a duplicate of the itemized statement provided to an employee or a computer-generated record that accurately shows all of the information required by this subdivision." Cal. Lab. Code § 226.

Section 204 requires that all wages "are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays. Labor performed between the 1st and 15th days, inclusive, of any calendar month shall be paid for between the 16th and the 26th day of the month during which the labor was performed, and labor performed between the 16th and the last day, inclusive, of any calendar month, shall be paid for between the 1st and 10th day of the following month." Cal. Lab. Code § 204.

## DISCUSSION

Delta's main argument is that the four named plaintiffs cannot be covered by Sections 226 and 204 of the California Labor Code – which provide procedural protections for wages earned under California law – when the vast majority of their work occurred in federal airspace governed by federal regulations and any work on the ground in California was *de minimis* and incidental to their work as Flight Attendants in the air.  Plaintiffs contend that whenever a Flight Attendant flies into or out of California, their work in that pay period becomes covered by the Labor Code sections (and therefore California-compliant wage statements and payments are required), regardless of where the Flight Attendant resides or is based out of, and regardless of how much

6

time that Flight Attendant works on the ground in California during that pay period.

## I.    SECTION 226

### A. Delta's Wage Statements and Wage Information

Delta does not dispute that it does not provide Flight Attendants an itemized wage statement showing all of the information required under Section 226 for each bi-monthly pay period, particularly the exact hours worked by each Flight Attendant and the rate or rates the Flight Attendant was paid for those hours. Delta argues that it cannot provide that information because, as discussed extensively on the prior motion for summary judgment, Delta uses an atypical method of payment which is not based on a set hourly wage rate for each of the tasks it requires of Flight Attendants.

Delta contends, however, that the essential information required by Section 226 is provided through the monthly MAPS and the accessible-anytime MOTS. The MAPS statements are apparently generated on a monthly basis, not bi-monthly as required under Section 226. Moreover, MAPS does not disclose an hourly wage rate for each hour worked, but instead show the *formula* of how the final payments for each Rotation were determined. MOTS is not a "statement" provided to the Flight Attendants at the time they are paid, but instead a system that they can access. As with the MAPS, it does not disclose an hourly rate for each category of work performed by plaintiffs.

Delta cannot rely on the MAPS and MOTS to argue that Delta satisfies the requirements of Section 226. However, as discussed below, I reject plaintiffs' theory of liability under Section 226. Because the undisputed facts show that the named plaintiffs only worked a *de minimis* amount of time on the ground in California, the "situs" of their work is not California. For the reasons that follow, California Labor Code provisions do not apply to their wage statements.

### B. Applicability of Section 226

Plaintiffs argue that under the California Supreme Court's decision in *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191 (2011) (*Sullivan I*), when any work is performed within California, the employee should receive a Section 226-compliant wage statement regardless of where the bulk of her or his work in the relevant pay period is performed. However, neither *Sullivan I* nor the

7

subsequent decision from the Ninth Circuit in *Sullivan v. Oracle Corp.*, 662 F.3d 1265, 1267 (9th Cir. 2011 (*Sullivan II*) addressed the question presented here. In the *Sullivan* cases, the non-resident plaintiffs sought overtime pay for full days and weeks worked "entirely in California." *Sullivan I*, 51 Cal. 4th at 1196; *id.* at 1199-00 ("plaintiffs here claim overtime only for *entire days and weeks* worked in California, in accordance with the statutory definition of overtime." (emphasis in original)).[8] The California Supreme Court focused narrowly on the nature, scope, and purpose of the Labor Code provision at issue there – requiring overtime for any entire day or week worked in California – and concluded that in light of the purpose and language of Section 510, it could be applied against the California-based employer for the full days and entire weeks worked by the non-resident employees in California. The court was careful to limit its holding to overtime under Section 510, and repeatedly noted that its conclusion under Section 510 did not automatically apply to other provisions of the Labor Code, for example, those regulating "pay stubs." *Sullivan v. Oracle Corp.*, 51 Cal. 4th at 1201.

Here, plaintiffs ignore the purpose and scope of Section 226. They argue, regardless even of whether the Flight Attendant's or the employer's residence is in California or whether they worked a full pay period in California, that the trigger for liability is simply performing *any* work in California during a pay period. Given the nature of the claim under Section 226 and the nature of the plaintiffs' jobs as Flight Attendants, it is wrong to ignore whether California can be considered the situs of the Flight Attendants' work sufficient to invoke Section 226's wage statement requirements.

The analysis Judge Alsup recently undertook in a factually analogous case, *Ward v. United Airlines, Inc.*, No. C 15-02309 WHA, 2016 WL 3906077 (N.D. Cal. July 19, 2016), is instructive. There, Judge Alsup determined that Section 226 did not apply to wage statements issued to pilots who were California residents but who worked "principally out of state." *Id*. at *3-5; *see also Aguilar v. Zep Inc.*, No. 13-CV-00563-WHO, 2014 WL 4245988, at *12 (N.D. Cal. Aug. 27,

---

[8] The statute at issue provided that "[a]ny work in excess of eight hours in one workday and . . . 40 hours in any one workweek . . . shall be compensated at the rate of no less than one and one-half times the regular rate of pay. . . ." Cal. Lab. Code, § 510(a).

2014) ("'the critical factor is where the work at issue is performed' by the plaintiff.").

Plaintiffs argue that the "situs" analysis in *Ward* ignored the *Sullivan* precedent and should not be followed. However, plaintiffs read *Sullivan* far too broadly. To determine whether a particular California Labor Code provision should apply in a situation where work was performed in California *and* in other jurisdictions, the appropriate analysis must focus on the particular Labor Code provision invoked, the nature of the work being performed, the amount of work being performed in California, and the residence of the plaintiff and the employer.

This multi-factor approach is consistent with the recent ruling in *Bernstein v. Virgin Am., Inc.*, No. 15-CV-02277-JST (N.D. Cal. Jan. 5, 2017), where Judge Tigar concluded that California wage and hour protections, including Section 226, applied to a class of California flight attendants. Judge Tigar reached that conclusion because: (i) the attendants were California residents; (ii) attendants sometimes worked entire days on consecutive flights between California airports; (iii) the defendant was headquartered in California; (iv) the wrongful conduct (issuance and application of compensation policies) emanated from California; and (v) the defendant had other "deep ties" to California, including that almost 90% of its daily flights departed from a California airport and it received millions of dollars in state subsidies to train all of its flight attendants in California. That plaintiffs only spent around 25% of their total work time in California *was* a factor, but not a determinative one in light of the others. *Bernstein* January 5, 2017 Order at 6-14.

The facts in *Bernstein* are starkly different than the undisputed facts here. Here, the question is whether Section 226 should apply based *solely* on a Flight Attendant's performance of a *de minimi*s amount of work in California during any pay period, *not* on the Flight Attendants' residence, an employer's California residence or other "deep ties" to California, or the performance of a significant amount of work in a particular pay period in California. Plaintiffs assert that the amount of time worked in California – either during the class period or during a particular pay period – is irrelevant to the applicability of Section 226, but that ignores important California and federal precedent to the contrary. *See, e.g., Tidewater Marine W., Inc. v. Bradshaw*, 14 Cal. 4th 557, 578 (1996) ("[I]f an employee resides in California, receives pay in California, and works exclusively, or principally, in California, then that employee is a 'wage

9

earner of California' and presumptively enjoys the protection of IWC regulations."); *see also Oil, Chem. & Atomic Workers Int'l Union, AFL-CIO v. Mobil Oil Corp.*, 426 U.S. 407, 420 (1976) (concluding that the "predominant job situs is the controlling factor" in determining whether the National Labor Relations Act "right to work" savings clause applies).

  Focusing on the purpose of Section 226 (to give employees clarity as to how their wages are calculated, so they can verify that their wages are calculated appropriately *under* California law)[9], because the undisputed facts show that the named plaintiffs only worked a *de minimis* amount of time in California (ranging from 2.6% to a high of 14%), and in light of the nature of their work (necessarily working in federal airspace as well as in multiple other jurisdictions but during each pay period *and day* at issue), I conclude that Section 226 does not apply to the claims of the four named plaintiffs. That Delta is not a California-based employer and that plaintiffs explicitly disclaim any reliance on the residence of the Flight Attendants further strengthen this conclusion.

  Plaintiffs also make a totally unfounded legislative history argument that recent amendments to Section 226 evince the legislature's intent to apply Section 226 to all other workers who sometimes work outside of the state. Plaintiffs' MSJ at 12-13; Plaintiffs' Reply at 16-17.[10] They rely on the legislature's clarification that the total hours worked for certain categories of employees who had *already* been determined to be exempt from overtime by an existing statute or Industrial Welfare Commission order need not be reported on their wage statements.[11] That has nothing to do with whether employees who work a *de minimis* amount in California are covered by Section 226. There is no logic or support to plaintiffs' argument.

---

[9] *Soto v. Motel 6 Operating, L.P.*, 4 Cal. App. 5th 385, 392 (Ct. App. 2016) ("section 226(a)'s statutory purpose . . . is to *document* the *paid wages* to ensure the employee is fully informed regarding the calculation of *those wages*." (emphasis in original)).

[10] Plaintiffs' reliance on the legislative history of *other* provisions of the Labor Code, *e.g.,* Cal. Lab. Code § 245.5(a)(4) is similarly misplaced. Plaintiffs' MSJ at 13. As the *Sullivan I* court recognized, the determination of whether a Labor Code provision extends to work performed in part in California depends on an analysis of the particular Labor Code provision at issue. *Sullivan v. Oracle Corp.*, 51 Cal. 4th at 1201.

[11] http://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201520160AB2535.

10

1    In sum, there is no basis to apply Section 226's procedural protections to the named plaintiffs.[12]

## II.  APPLICABILITY OF SECTION 204

Like Section 226, Section 204 provides California workers a procedural protection; requiring wages earned in California to be paid to them on a specific timeframe.[13]  Delta does not dispute that it does not comply with Section 204.  However, plaintiffs at oral argument admitted that if I conclude Section 226 does not apply to the four named plaintiffs, then the result for their Section 204 claim is the same.  There are no additional arguments – based on the nature, scope, and purpose of Section 204 – for reaching a different conclusion under that section.

### CONCLUSION

For the foregoing reasons, defendant's motion for partial summary judgment is GRANTED and plaintiffs' motion is DENIED.  Because no issues remain in this case, judgment will be entered in Delta's favor in full.

**IT IS SO ORDERED**.

Dated: January 6, 2017



WILLIAM H. ORRICK
United States District Judge

---

[12] Having concluded that Section 226 (and as discussed below, Section 204) cannot apply to the claims of the named plaintiffs, I need not reach whether application of those provisions to Delta would violate the dormant commerce clause.

[13] *See's Candy Shops, Inc. v. Superior Court*, 210 Cal. App. 4th 889, 904–05 (2012) ("As observed by the California Supreme Court more than 70 years ago, 'the sole purpose of [section 204] is to require an employer of labor who comes within its terms to maintain two regular pay days each month, within the dates required in that section.'" (*quoting In re Moffett*, 19 Cal.App.2d 7, 14 (1937)).