UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DEV ANAND OMAN, et al.,

    Plaintiffs,

    v.

DELTA AIR LINES, INC.,

    Defendant.

Case No. 15-cv-00131-WHO

**ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 99, 100

## INTRODUCTION

Plaintiffs Todd Eichmann and Albert Flores are flight attendants who work for Defendant Delta Air Lines, Inc. ("Delta"). Plaintiffs[1] allege that Delta's wage statements lack certain information required under California law and seek to represent a class of similarly situated flight attendants. The parties cross-moved for summary judgment on plaintiffs' wage statement claims under California Labor Code sections 226 and 204 and their derivative California Private Attorneys General Act ("PAGA") claims.

The facts regarding how and when flight attendants are paid and what information they are given regarding their wages are not in dispute. The two issues I must decide are whether plaintiffs have shown that the protections of the California Labor Code provisions at issue apply to them under the *Ward* test, and, if so, whether Delta's wage statements comply with California law. I conclude that given the undisputed facts in this case, plaintiffs have shown that *Ward* applies.

---

[1] Along with Eichmann and Flores, Dev Oman and Michael Lehr were previously named plaintiffs. On February 2, 2021, the Ninth Circuit affirmed my decision to grant summary judgment to Delta on Oman's claims because Oman's principal place of work was not in California. *See Oman v. Delta Air Lines, Inc.*, 835 F. App'x 272, 273 (9th Cir. 2021). On June 25, 2020, Lehr accepted a retirement package from Delta and, as a condition of his retirement, released all claims against Delta. Declaration of Sharon Toles ("Toles Decl.") [Dkt. 102] ¶ 8. As a result, Oman and Lehr are DISMISSED from the case.

United States District Court
Northern District of California

As explained below, I **GRANT** summary judgment to plaintiffs for their derivative PAGA claims based on section 226 and section 204 for the pay periods at issue up until September 1, 2018. I **GRANT** summary judgment for Delta for the section 204 PAGA claims for pay periods after September 1, 2018. Finally, because I find that Delta is entitled to a good faith defense for its violations of section 226(a) that occurred on or before January 10, 2022, I **GRANT** summary judgment to Delta for plaintiffs' claims for statutory damages under section 226(e) for the wage statement violations prior to January 10, 2022. Because Delta is not entitled to a good faith defense for section 226(a) violations that occurred after January 10, 2022, I **GRANT** summary judgment to plaintiffs for their claims for statutory damages for wage statement violations that occurred after January 10, 2022, to present.

## BACKGROUND

### I.    DELTA'S PAY FORMULAS

Delta pays its flight attendants on a bid packet and rotation system where each month Flight Attendants "bid" on Rotations that are scheduled to depart from the Flight Attendant's base the following month.[2] For each Rotation, the Bid Packets describe the number and length of the Duty Periods encompassed within the Rotation, the Report Times for each Duty Period, the scheduled total flight time for each Segment within the Rotation (which is measured from Block Out to Block In), and the amount of time that the Flight Attendant can expect to be away from base. The Bid Packets show which of Delta's four pay formulas will apply to the Rotation, what the credit value of the Rotation is, and calculates the minimum compensation for each Rotation. The credit valuation included in the Bid Packets for each Rotation serves as a minimum guarantee for Flight Attendants with respect to credits. The actual compensation may increase as a result of delays, changes, or other contingencies; it cannot decrease.

Delta's bidding and compensation policies are laid out in Delta's Work Rules. Delta uses four formulas to determine a Flight Attendant's actual pay. The "Flight Pay" formula is based on

---

[2] The facts regarding Delta's four pay formulas and how they operate are not disputed and are taken from the prior Order granting Delta's motion for summary judgment on plaintiffs' minimum wage claims. *See* December 29, 2015 Order [Dkt. No. 45].

United States District Court
Northern District of California

the actual flight time and/or scheduled flight time of the Segments, whichever is greater.  Under the "Duty Period Credit," Delta "credits" flight attendants with "1 hour of flight pay for every 2 hours on duty for any given period."  The "Minimum Duty Period Credit" (MDC) multiplies 4:45 hours by the Flight Pay Rate for each Duty Period within a Rotation that has at least one flight Segment.  And under the "Trip Credit" formula, Flight Attendants receive credit for 1 hour of flight time for each 3.5 hours they are away from base.

Delta runs calculations for each Flight Attendant's Rotation and pays the Flight Attendant using the formula that results in the highest amount of pay.  In no event is a Flight Attendant's pay less per hour worked in the Duty Period (all hours worked), than the California minimum wage rate.  Each formula uses a "base" which Delta defines as "Flight Pay Rate."  But the Flight Pay Rate is not an agreed to "hourly rate of pay"; it is instead part of the mathematical equation Delta runs to determine actual pay.

## II.     DELTA'S WAGE STATEMENTS

Although the format of the wage statements that Delta has issued to plaintiffs have changed over the years, it is undisputed that the statements have never included the total hours worked or the rates of pay for all hours worked.  *See* Declaration of Matthew Helland ("Helland Decl.") [Dkt. 99-1] Exs. 6–14.  The first relevant format of wage statements was in effect until approximately July 2017.  *See* Helland Decl. Ex. 15.  These wage statements did not list the total hours worked in the pay period.  Helland Decl. Ex. 7 (April 2016 Eichmann Wage Statement).  There is a column for "hours," but the column is blank.  *Id.*  Next to the "Hours" column there is a "Rate" column, which is also blank.  *Id.*

In the summer of 2017, Delta changed the format of its wage statements in connection with its migration to a new H.R. platform.  Hellman Decl. Ex. 19 (Cox Depo. Tr.) at 30:5–9; Helland Decl. Ex. 15.  The new format of the wage statements listed *credited* hours and the flight pay rate for each *credited* hour.  Helland Decl. Ex. 11 (2018 Eichmann Wage Statements); Ex. 12 (2018 Flores Wage Statements); Cox Depo. Tr. at 56:2–58:4.  The wage statements still did not list the total hours worked, nor did they list the rates of pay for non-flight work hours.  *Id.*

With the change to bi-weekly pay in September of 2018, Delta's wage statements changed

United States District Court
Northern District of California

one last time.  Helland Decl. Exs. 9–10, 13–14.  The wage statements still did not list the total hours worked, nor did they list the rate of pay for non-flight work hours.  *Id.*  Delta has not made any substantive changes to its flight attendant wage statements since the fall of 2018.  *See* Cox Depo. Tr. at 59:13–60:14; *see also* Declaration of Todd Eichmann, Ex. A [Dkt. 104-1] (2022 Eichmann Wage Statements); Declaration of Albert Flores, Ex. A [Dkt. 104-2] (2021–2022 Flores Wage Statements).

### III.    DELTA'S WAGE TRACKING AND PAYMENTS

From January 2014 to September 1, 2018, Delta paid flight attendant wages on a delayed payment schedule.  Helland Decl. Ex. 4 at DELTA 00808; Helland Decl. Ex. 5 at DELTA 011689; Declaration of Brian Moreau ("Moreau Decl.") [Dkt. 59-2] ¶ 9.  Because Delta did not know a flight attendant's final schedule for a bid period until it was complete, this payment schedule assumed a base allotment of 45 credit hours a month.  Moreau Decl. ¶ 9.  Delta paid half of the minimum credit hours each pay period of the month they were worked.  Helland Decl. Ex. 4 at DELTA 00808.  For example, for the month of September, the September 15th paycheck included 22.5 September hours and the September 30 paycheck included 22.5 September hours.  *Id.*  Any hours over 45 were paid in the *following* month, half on the 15th and half on the last day of the following month.  *Id.*

Following the close of the pay period, Delta calculated the total credits for that bid period, determined what premium pay rates should be applied, and what additional payments should be made.  Moreau Decl. ¶ 9.  Under this system, some September work hours were not paid until October 31st, over 30 days later.  Helland Decl. Ex. 4 at DELTA 00808.

Delta's work rules included the following example to illustrate the delayed payment

4

scheme.  *Id.*; *see also* Plaintiffs' Cross-Motion for Summary Judgment ("Pl. MSJ") [Dkt. 99] at 3.

**EXAMPLE:**  Your pay is comprised of:

| Pay Period Ending October 15 | Pay Period Ending October 31 |
|---|---|
| 22:30 (half of the minimum average of 45 hours for the current month), plus.... | 22:30 (half of the minimum average of 45 hours for the current month), plus.... |
| 50% of all flight/credit, premium pay, and TAFB earned in September | 50% of all flight/credit, premium pay, and TAFB earned in September. |

Plaintiffs contend—and Delta does not dispute—that they regularly worked over 45 hours in a month.  Helland Decl. Exs. 2–3.

On September 1, 2018, Delta changed its payment schedule for flight attendants in two ways.  First, Delta transitioned from a semi-monthly to a bi-weekly pay period.  Helland Decl. Ex. 5 at DELTA 011689.  Under this new system, Delta issued paychecks to its flight attendants every other Friday.  *Id.*  Second, Delta paid all wages earned during each pay period on the following payday, which was seven days after the close of the pay period.  *Id.*  These changes meant that the September 28, 2018 wage statement, for example, included all pay earned for the September 8-21, 2018 pay period.  Declaration of Andrew Frederick ("Frederick Decl.") [Dkt. 103-2] Ex. L.

## IV.   PLAINTIFFS' WORK HISTORY

Plaintiff Eichmann has been based out of Los Angeles International Airport (LAX) since February 2014.  Eichmann Depo Tr. [Dkt. 103-2] at 35:16-22; 95:14-16.  From January 1, 2014, through June 30, 2016, when engaged in flight-related activities, Eichmann was on duty for 3,723.7 hours, of which he spent approximately 319.6 hours (or 8.6%) working in California. Expert Report of Valentin Estevez ("Estevez Rep.") [Dkt. 99-24] at 2, 5.

Plaintiff Flores has been based out of LAX since November 2010.  Flores Depo Tr. [Dkt. 103-2] at 82:7-12.  From January 1, 2014, through June 30, 2016, when engaged in flight-related activities, Flores was on duty for 3,200.7 hours, of which he spent approximately 347.7 hours (or 10.9%) working in California.  Estevez Decl. at 5.  On November 7, 2019, Flores attended recurrent continuing qualification training in Salt Lake City, Utah.  Declaration of Timithia Cofer ("Cofer Decl.") [Dkt. 101] ¶ 3.  During the days immediately preceding and following that

United States District Court
Northern District of California

training, from November 2–6 and November 8–15, 2019, Flores was on vacation.  Frederick Decl. Ex. N.

Plaintiff Lehr was based out of San Francisco and lived in Las Vegas, Nevada, throughout his employment with Delta.  Lehr Depo. Tr. [Dkt. 103-1] at 92:10-17.  On June 25, 2020, Lehr elected to participate in Delta's Enhanced Retirement Program.  *See* Toles Decl. ¶ 8.  As a condition of the Enhanced Retirement Program, employees had to release any and all claims against Delta by signing a Separation Agreement and General Release.  *Id.* ¶ 3.  On June 25, 2020, Lehr electronically signed the Separation and General Release.  *Id.* ¶ 8.

## PROCEDURAL HISTORY

Plaintiff Dev Oman filed this putative class action on January 9, 2015.  Complaint [Dkt. 1]. He amended his complaint on May 22, 2015, adding Todd Eichmann and Michael Lehr as additional plaintiffs.  First Amended Complaint [Dkt. 24].  The parties subsequently filed cross-motions for summary judgment regarding plaintiffs' California minimum wage claims.  [Dkts. 32, 36].  On December 29, 2015, I granted summary judgment to Delta on plaintiffs' California minimum wage claims.  *See* December 29, 2015 Order [Dkt. 45].  On February 10, 2016, plaintiffs amended their complaint and added Albert Flores as an additional plaintiff.  Second Amended Complaint [Dkt. 52].  The parties subsequently filed cross-motions for summary judgment on plaintiffs' remaining claims.  [Dkts. 58, 59].  Delta argued that summary judgment was warranted for the wage statement claims because plaintiffs did not spend enough time in California to warrant wage statements that complied with California law, and the application of California law to employees who work in multiple jurisdictions would violate the dormant Commerce Clause. [Dkt. 59] at 1.  On January 6, 2017, I granted summary judgment to Delta after finding that California Labor Code sections 204 and 226 did not apply to plaintiffs because of the minimal time that they spent working in California.  *See Oman v. Delta Air Lines, Inc.*, 230 F. Supp. 3d 986, 992 (N.D. Cal. 2017) (*Oman I*).  Because I concluded that sections 226 and 204 did not apply to the plaintiffs, I did not reach the question of whether application of these provisions to Delta would violate the dormant Commerce Clause.  *Id.* at 994 n.12.

On January 18, 2017, plaintiffs appealed.  Notice of Appeal [Dkt. 70].  In response to the

United States District Court
Northern District of California

appeal, the Ninth Circuit certified three questions to the California Supreme Court: (1) whether sections 204 and 226 apply to plaintiffs; (2) whether California's minimum wage law applies to plaintiffs; and (3) whether Delta's credit-based flight attendant pay structure violates California's minimum wage law. *See Oman v. Delta Air Lines, Inc.*, 9 Cal. 5th 762, 772 (2020) (*Oman II*). On June 29, 2020, the California Supreme Court held that flight attendants such as plaintiffs are protected by Labor Code sections 226 and 204 if they are based for work purposes in California and do not spend the majority of their time working in one state. *Id.* at 773. *Oman II* also found that Delta's credit-based flight attendant pay structure does not violate California's minimum wage law. *Id.* at 788–89 (noting that "Delta's arrangement may be relatively unusual, but it is not unlawful" and "Delta satisfies state minimum wage law").

On February 2, 2021, after reviewing the certified answers from the California Supreme Court, the Ninth Circuit affirmed my dismissal of plaintiffs' minimum wage claims and plaintiff Oman's section 226 and 204 claims because Oman was not based in California. *See Oman v. Delta Air Lines, Inc.*, 835 F. App'x 272, 272–73 (9th Cir. 2021) (*Oman III*). The Ninth Circuit reversed my decision to grant judgment in Delta's favor on the section 226 and 204 claims, concluding that application of the test as outlined by the California Supreme Court would not violate the dormant Commerce Clause. *Id.* at 273. The Ninth Circuit remanded with instructions for me to determine whether plaintiffs met the test for coverage and, if so, whether Delta complied with sections 226 and 204. *Id.*

On April 13, 2021, the Ninth Circuit denied Delta's petition for rehearing and request for rehearing *en banc*. [Dkt. 82]. On September 9, 2021, Delta filed a petition for writ of certiorari regarding whether the application of California's wage-and-hour laws to flight attendants such as plaintiffs violated the dormant Commerce Clause. [Dkt. 91]. On January 10, 2022, the United States Supreme Court denied Delta's petition. [Dkt. 98].

Both parties have again filed cross-motions for summary judgment over plaintiffs' claims under California Labor Code sections 204 and 226. [Dkts. 99, 100]. On May 4, 2022, I heard oral argument, and on May 18, 2022, the parties submitted supplemental briefing regarding the availability of a good faith defense to violations of section 226. [Dkts. 107, 111, 112].

United States District Court
Northern District of California

**LEGAL STANDARD**

## I.    SUMMARY JUDGMENT

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial."  *Id.* at 324.  The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

On cross motions for summary judgment, each motion "must be considered on its own merits."  *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal quotation omitted).  The Court must determine, "for each side, whether judgment may be entered in accordance with the Rule 56 standard."  *Id.* (internal quotation omitted).  The Court draws all reasonable factual inferences in favor of the non-movant.  *Anderson*, 477 U.S. at 255.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" ruling on a summary judgment motion.  *Id.*  Conclusory and speculative testimony, however, does not raise genuine issues of fact and is insufficient to defeat summary judgment.  *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## II.    CALIFORNIA LABOR CODE

Section 204(a) requires that all wages "are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays.  Labor performed between the 1st and 15th days, inclusive, of any calendar month shall be paid for between the 16th and the 26th day of the month during which the labor was performed, and labor performed

between the 16th and the last day, inclusive, of any calendar month, shall be paid for between the 1st and 10th day of the following month."  Cal. Lab. Code § 204(a).

Section 226(a) requires employers to "semimonthly or at the time of each payment of wages" provide employees with "an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee . . . , (4) all deductions . . . , (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid . . . , and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. . .  For purposes of this subdivision, 'copy' includes a duplicate of the itemized statement provided to an employee or a computer-generated record that accurately shows all of the information required by this subdivision."  Cal. Lab. Code § 226(a).

## DISCUSSION

The first question that I must answer is whether plaintiffs are entitled to wage statements that comply with California law.  Because, as discussed below, I conclude that plaintiffs have satisfied the *Ward* test, I then address whether Delta has complied with California Labor Code sections 204 and 226.

## I.   SECTIONS 204 AND 226 APPLY TO PLAINTIFFS

In *Ward v. United Airlines*, the California Supreme Court held that flight attendants "are entitled to California-compliant wage statements" when "their principal place of work is in California."  9 Cal. 5th 732, 740 (2020).  *Ward* established that flight attendants who either perform a majority of their work in California or who do not perform a majority of their work in any single state and are based for work purposes in California are entitled to wage statements that comply with California law.  *Id.* at 760–61; *see also Oman III*, 835 F. App'x at 272–73 ("In its decision in *Oman*, the California Supreme Court held that California Labor Code §§ 204 and 226 apply to flight attendants who either perform a majority of their work in California or who do not perform a majority of their work in any one State and are based for work purposes in California.").  *Ward* did not address whether a flight attendant must prove her entitlement to California-compliant wage statements for every pay period at issue in a litigation.

United States District Court
Northern District of California

### A.   *Ward* Does Not Require Applicability on a Pay-Period by Pay-Period Basis.

The parties disagree about whether plaintiffs must show that they qualify under *Ward* for every pay period at issue in the case.  From Delta's perspective, "Plaintiffs must demonstrate for every pay period for which they ask this Court to apply Sections 204 and 226 . . . that they were based in California and did not principally work in another state during that pay period."  Def. MSJ [Dkt. 100] at 22; *see also* Def. Reply [Dkt. 105] at 10 (quoting language from *Ward*). Plaintiffs, on the other hand, respond that the California Supreme Court characterized the *Ward* test as providing "clarity and certainty for employers and employees . . ."  *Ward*, 9 Cal. 5th at 756. Plaintiffs reason that such a test would hardly provide "clarity and certainty" if an employee was required to calculate her hours spent working in each state for every pay period.  Pl. Reply [Dkt. 104] at 9.

While *Ward* did not address this precise issue, *Oman II* provided illustrative examples of when a flight attendant's entitlement to California-compliant wage statements might change over the course of employment.  *See Oman II*, 9 Cal. 5th at 775 (explaining that shifts in employment such as "tak[ing] on a new job as a gate agent" or being "assigned to a different home airport" will give the employer "ample opportunity" to adjust and determine whether section 226 applies). These examples support plaintiffs' theory that *Ward* was intended to capture significant changes in employment—such as being assigned a different home base airport, or taking on a new position— and not minute changes based on the number of intrastate flights scheduled per each pay period.

Additionally, a California appeals court recently held that *Ward* does not require a pay-period by pay-period analysis.  In *Gunther v. Alaska Airlines*, a class of California-based flight attendants sued Alaska Airlines over its failure to provide them with section 226-compliant wage statements.  *See* 72 Cal. App. 5th 334, 341 (2021).  On appeal, Alaska Airlines asserted the same argument that Delta raises here; namely, that *Ward* requires the plaintiff to "analyze each pay period for each flight attendant to determine if the flight attendant . . . worked the majority of the time in another state."  *Id.* at 343.  *Gunther* flatly rejected this theory: *Ward* "did not mean that aggrieved employees are obligated to perform a pay period-by-pay period analysis to eliminate the hypothetical possibility that in one aberrant pay period some flight attendant might spend the

majority of his or her time in a state other than California." *Id.* at 346. *Gunther* reasoned that "such an inquiry" would "deprive . . . employees of any wage statement protections by constructing an unrealistic burden." *Id.*

*Gunther*'s reasoning and analysis are sound. As flight attendants, the states in which plaintiffs work may vary greatly from one pay period to the next. It would hardly provide "clarity and certainty for employers and employees" if plaintiffs were required to calculate the amount of time spent working in-state and out-of-state for every single pay period at issue in order to obtain California-compliant wage statements. *Ward*, 9 Cal. 5th at 756. *Ward* cannot and does not stand for such a proposition.

Having concluded that *Ward* does not require such a showing, I turn to whether plaintiffs have provided sufficient evidence to show that they either: (1) perform a majority of their work in California, or (2) do not perform a majority of their work in any one state and are based for work purposes in California. *Id.* at 755–56.

## B. Plaintiffs Satisfy the *Ward* Test.

Based on the evidence before me, plaintiffs have shown that they do not perform a majority of their work in any one state and are based for work purposes in California.

Because Eichmann and Flores are both based out of LAX, the only question is whether they perform a majority of their work in any one state. *See* Eichmann Depo Tr. at 35:16-22, 95:14-16; Flores Depo Tr. at 82:7-12. Plaintiffs rely upon two pieces of evidence to show that they do not. Pl. MSJ at 8–9. First, they cite Dr. Estevez's expert report, which analyzed plaintiffs' flight data for the period from January 1, 2014 through June 30, 2016. Estevez Rep. at 2. Based on this analysis, Dr. Estevez calculated that plaintiffs spent a significant majority of their flight-related duty hours working outside of California: Eichmann and Flores worked only 8.6% and 10.9% of their time in California, respectively. *Id.* at 5.

Second, plaintiffs provide a declaration by Alexander Wise, who is a data analytics manager. Declaration of Alexander Wise ("Wise Decl.") [Dkt. 99-25] ¶ 2. Wise reviewed flight log records to calculate the number of non-California intrastate flights that each plaintiff worked. Wise Decl. ¶¶ 4, 9. Based on Wise's calculations, Eichmann worked 1,607 flights, of which only

United States District Court
Northern District of California

1    6 were non-California intrastate flights.  *Id.* ¶ 9(a).  And of the 1,984 flights worked by Flores,

2    only 16 were intrastate flights in states other than California.  *Id.* ¶ 9(b).  In both cases, the number

3    of non-California intrastate flights amounted to fewer than 1 percent.  *Id.* ¶¶ 9(a)(ii) and (b)(ii).

4         These two pieces of evidence establish that plaintiffs do not spend a majority of their time

5    working in any one state.  Because Duty Periods start and end in California for all California-

6    based flight attendants, flight attendants must fly *from* California to another state at the beginning

7    of the Rotation, and *to* California from another state at the end of the Rotation.  Pl. Reply at 10.

8    Unless plaintiffs were to staff a significant number of intrastate flights outside of California, I

9    cannot conceive how they could work more than fifty percent of their time in any state.  Wise's

10   calculations show that plaintiffs worked a miniscule number of intrastate flights outside of

11   California, thus eliminating that possibility.

12        Delta points to evidence showing that for one pay period in November 2019, Flores

13   attended continuing qualification training in Utah and did not staff any flights.  Def. MSJ at 23;

14   Cofer Decl. ¶ 3.  For that single pay period, it appears that Flores spent a majority of time working

15   in Utah and would thus not qualify under *Ward*.  But I have already found that *Ward* does not

16   require that plaintiffs "perform a pay period-by-pay period analysis to eliminate the hypothetical

17   possibility that in one aberrant pay period some flight attendant might spend the majority of his or

18   her time in a state other than California."  *Gunther*, 72 Cal. App. 5th at 346.  Flores' training

19   sessions in Utah during the November 2019 pay period are precisely the kind of "aberrant pay

20   period" that *Gunther* rejected as unsound.

21        In sum, because plaintiffs have provided evidence to show that they are based in California

22   and have not worked a majority of their time in any one state, they are entitled to California-

23   compliant wage statements.  *Ward*, 9 Cal. 5th at 740.  As a result, I next consider whether Delta's

24   wage statements comply with California Labor Code sections 204 and 226.

25   **II.      PLAINTIFFS' SECTION 204 CLAIMS**

26        Both parties have moved for summary judgment on plaintiffs' section 204 claims.

27   Because there are no material facts in dispute, summary judgment is appropriate.

28        Section 204(a) requires that all wages must be paid twice a month during specific periods.

United States District Court
Northern District of California

12

1    *See* Cal. Lab. Code § 204(a) ("Labor performed between the 1st and 15th days, inclusive, of any

2    calendar month shall be paid for between the 16th and the 26th day of the month during which the

3    labor was performed, and labor performed between the 16th and the last day, inclusive, of any

4    calendar month, shall be paid for between the 1st and 10th day of the following month.").

5        The undisputed evidence shows that from January 2014 to September 1, 2018, Delta paid

6    flight attendants semi-monthly, on the 15th and last day of each month, on a delayed payment

7    schedule.  Helland Decl. Ex. 4 at DELTA 00808; Helland Decl. Ex. 5 at DELTA 011689; Moreau

8    Decl. ¶ 9.  Under this system, any hours worked over the base allotment of 45 credited hours per

9    month were not paid until the *following* month.  Helland Decl. Ex. 4 at DELTA 00808.  Delta does

10    not dispute that the pre-September 1, 2018 payment schedule failed to comply with California's

11    pay timing requirements.  *See* Def. MSJ at 21–22 (arguing that the *post*-September 2018 payment

12    system complied with section 204); *see also Oman I*, 230 F. Supp. 3d 994 ("Delta does not dispute

13    that it does not comply with Section 204.").

14        Starting on September 1, 2018, however, Delta implemented a new system that paid

15    employees on a bi-weekly basis.  Helland Decl. Ex. 5 at DELTA 011689.  The undisputed

16    evidence shows that since September 2018, plaintiffs have been paid all wages for each bi-weekly

17    pay period within seven calendar days following the close of the payroll period.  *See* Frederick

18    Decl. Exs. L, O.

19        Because there is no dispute that the wage payments issued by Delta *before* September 1,

20    2018, violated section 204, I **GRANT** summary judgment regarding the issue of liability to

21    plaintiffs on their section 204 claim for this time period.[3]  Likewise, because there is no dispute

22    that the wage payments issued by Delta *after* September 1, 2018, comply with section 204, I

23    **GRANT** summary judgment to Delta on plaintiffs' section 204 claim for the period from

24    September 1, 2018 to present.

25        I turn now to plaintiffs' claims arising under California Labor Code section 226(a)(2) and

26

27    [3] Because section 204 does not provide for a private right of action, plaintiffs seek penalties for these violations under PAGA.  *See* Pl. MSJ at 10 n.5; Second Amended Complaint [Dkt. 52] ¶ 66(D).  Plaintiffs request judgment as to

28    liability only, not to a specific amount of penalties.  *See* Pl. MSJ at 10 n.5.

United States District Court
Northern District of California

(a)(9), for which both parties seek summary judgment.

## III.   PLAINTIFFS' SECTION 226(a) CLAIMS

### A.   Section 226(a)(2) Requires Wage Statements Include the Total Hours Worked.

To defeat summary judgment as to plaintiffs' section 226(a)(2) claim, Delta must provide evidence that its wage statements show the total hours that plaintiffs worked.  *See* Cal. Lab. Code § 226(a)(2) (requiring that wage statements shall contain the "total hours worked by the employee, except as provided in subdivision (j)").  Delta has not done so.  Delta, in fact, concedes that its wage statements do not include the total hours worked by the employee.  Def. MSJ at 1 ("Plaintiffs' wage statements do not report their total hours worked, but rather accurately report that Plaintiffs are paid in accordance with Delta's credit-based system . . .").  It is undisputed that Delta's wage statements do not show the "total hours worked," even though this information is required pursuant to section 226(a)(2).

### B.   Section 226(a)(9) Requires Wage Statements Include all Hours Worked at Each Hourly Rate.

To defeat summary judgment as to plaintiffs' section 226(a)(9) claim, Delta must provide evidence that its wage statements include all hours worked at each hourly rate.  *See* Cal. Lab. Code § 226(a)(9) (requiring that wage statements include "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee").  Again, Delta has not done so.  Delta's wage statements show the number of hours *credited* at the flight pay rate, for instance, but not the hours *worked* at the flight pay rate.  *See* Helland Decl. Exs. 6–14; *see also* Def. MSJ at 1 ("Delta's wage statements accurately reflect . . . the rates of pay and hours *credited* at each rate of pay.") (emphasis added).  Delta also concedes that its wage statements do not list the rate of pay for non-flight work hours.  Def. MSJ at 1.  It is undisputed that Delta's wage statements do not show all "hours worked at each hourly rate" of pay, even though this information is required pursuant to section 226(a)(9).

### C.   Delta's Credit-Based Compensation System Is Not Exempt from Section 226.

Despite the plain language of section 226(a), Delta advances four arguments that its wage statements nonetheless comply.  None has merit.

United States District Court
Northern District of California

First, Delta argues that its wage statements "comply with section 226 because they accurately reflect Delta's California-compliant credit-based compensation system." Def. MSJ at 14 (capitalization altered for clarity). According to Delta, because its credit-based compensation system does not violate California's minimum wage laws, Delta cannot be liable for failing to provide the information required under section 226(a)(2) and (9). *Id.* at 14–15. This argument is both logically and legally untenable. It is true that Delta's credit-based compensation system "complies with state minimum wage law." *See Oman II*, 9 Cal. 5th at 778. But that is beside the point: the question is whether Delta's wage statements include certain information, not whether Delta's compensation system complies with California law. Delta provides no authority to support its novel theory that a compensation system found not to violate minimum wage laws is immune from attack on other grounds.

Additionally, while the Legislature has codified certain exceptions to the wage statement requirements in section 226(a)(2), none of these exceptions are for credit-based compensation systems. *See* Cal. Lab. Code § 226(j) (providing that a wage statement "shall not be required to show total hours worked by the employee if any of the following apply . . . "); *see also* Cal. Lab. Code § 226(a)(2) (mandating that an employer provide a wage statement showing "total hours worked by the employee, except as provided in subdivision (j)"). "Traditional statutory interpretation principles hold that where a definitional list designates certain things, all omissions should be understood as exclusions." *United States v. Herrera*, 974 F.3d 1040, 1048 (9th Cir. 2020) (internal quotation marks and citation omitted). The omission of credit-based compensation systems from the list of exceptions contained within subdivision (j) renders it even more unlikely that wage statements issued in accordance with credit-based compensation systems should somehow be considered exempt. In light of 226(a)'s mandatory language and the exceptions found in subdivision (j), I reject Delta's invitation to add a judicially-created exception for credit-based compensation systems.

Second, Delta cites California's Wage Order 9[4] to argue that wage statements paid

---

[4] In California, wage-and-hour claims are governed by "two complementary and occasionally overlapping sources of

pursuant to Delta's credit-based compensation system comply with California's wage laws.  Def. MSJ at 15.  The problem for Delta is that Wage Order 9 merely requires that employees must be paid at least minimum wage; it does not exempt Delta from providing the categories of information on wage statements pursuant to section 226(a).  *See* Wage Order 9–90 § 4(B) (requiring that "[e]very employer shall pay to each employee . . . not less than the applicable minimum wage for all hours worked in the payroll period, whether the renumeration is measured by time, piece, commission, or otherwise").  Wage Order 9 does not justify failing to comply with section 226(a).

Third, Delta insists that "Section 226 was never meant to dictate *how* employers pay employees; it was meant to ensure employees receive wage statements that accurately reflect their pay in a way that employees can understand and audit."  Def. MSJ at 16 (emphasis in original).  But none of Delta's cases establishes that comprehensible wage statements issued pursuant to a particularized wage system do not need to comply with section 226(a).  In fact, *Soto* recognized that a "wage statement *must* contain the information specified in" section 226.  *See Soto v. Motel 6 Operating, L.P.*, 4 Cal. App. 5th 385, 390 (2016) (emphasis in original).[5]

Finally, Delta contends that its credit-based compensation system cannot be intelligibly or accurately conveyed via the "hourly rates" required under section 226(a)(9).  *See* Def. MSJ at 16 (arguing that the "hourly rate" requirement "would have absolutely no meaning to Plaintiffs or any other Delta flight attendant"); *id.* at 17 ("[T]he reporting on wage statements of rates and hours that do not correspond to how Plaintiffs are actually paid . . . would *inaccurately* reflect Plaintiffs' pay, thereby exposing Delta to liability under Section 226.") (emphasis in original).  "But it is not

---

authority": (1) provisions in the Labor Code that are enacted by the state legislature, and (2) a series of wage orders enacted by the Industrial Welfare Commission ("IWC").  *Angeles v. US Airways, Inc.*, No. 12-cv-05860-CRB, 2017 WL 565006, at *1 (N.D. Cal. Feb. 13, 2017) (internal quotation marks and citation omitted).  Wage Order 9 falls under the second category.

[5] *Wilson* and *Savea*, the other cases relied upon by Delta, are equally unhelpful.  *Wilson* addressed the level of intent needed to secure statutory damages under section 226, and *Savea* considered whether a company could provide its fictitious business name as the employer name on its wage statements under section 226(a)(8).  *See Wilson v. SkyWest Airlines, Inc.*, No. 19-cv-01491-VC, 2021 WL 2913656, at *2 (N.D. Cal. July 12, 2021); *Savea v. YRC Inc.*, 34 Cal. App. 5th 173, 176 (2019).  Neither *Wilson* nor *Savea* support Delta's theory that section 226's requirements are optional for credit-based compensation systems.

1    for the Court to overrule Section 226's clear requirements for wage statements because an

2    otherwise Section 226-non-compliant wage statement may more closely hew to the spirit and

3    purpose of Section 226." *Booher v. JetBlue Airways*, No. 15-cv-01203-JSW, slip op. at 6 (N.D.

4    Cal. Nov. 10, 2021) (internal quotation omitted).

5         I have already concluded that Delta's wage statements do not include information required

6    under section 226(a)(2) and (9).  Because none of Delta's arguments create a dispute of fact

7    whether the wage statements list "the total hours worked" and the "number of hours worked at

8    each hourly rate," I find that Delta's wage statements violate section 226(a)(2) and (9).

9         As a result, I must address Delta's liability for its violations of section 226(a).  Plaintiffs

10   seek statutory damages pursuant to section 226(e) and civil penalties under PAGA.  Pl. MSJ at 11.

11   To secure damages under section 226(e), plaintiffs must establish "(1) a violation of section

12   226(a); (2) that is 'knowing and intentional,' and (3) a resulting injury."  *Willner v. Manpower*

13   *Inc.*, 35 F. Supp. 3d 1116, 1128 (N.D. Cal. 2014).  I begin with the question whether plaintiffs

14   have shown that the section 226(a) violations are "knowing and intentional," which, in turn,

15   requires considering the availability of the good faith defense.

16

17        **1.    A Good Faith Defense May Preclude Liability for Section 226(e)
                  Penalties.**

18        Section 226(e) provides that an employee is entitled to receive statutory damages if they

19   receive an inaccurate or incomplete wage statement "as a result of a *knowing and intentional*

20   failure by an employer to comply with subdivision (a)."  *See* Cal. Lab. Code § 226(e)(1) (emphasis

21   added).  Delta argues that its violations of section 226(a) were not "knowing and intentional"

22   because Delta had a good faith belief that section 226 did not apply to plaintiffs and that its wage

23   statements were compliant.  Def. MSJ at 18.  Plaintiffs counter that there is no good faith defense

24   to liability under section 226(e), and that Delta's violations of section 226 were "knowing and

25   intentional" within the meaning of the statute.  Pl. MSJ at 11–12.

26        District courts in California are divided on the level of intent that "knowing and

27   intentional" requires for establishing a section 226 violation.  *See Arroyo v. International Paper*

28   *Company* No. 17-cv-06211-BLF, 2020 WL 887771, at *11–12 (N.D. Cal. Feb. 24, 2020) (noting

United States District Court
Northern District of California

case law disagreement).  The majority rule is that the "knowing and intentional" requirement of

California Labor Code section 226 is akin to the "willfulness" requirement of California Labor

Code section 203.  *Id.*; *see also Utne v. Home Depot U.S.A., Inc.*, No. 16-cv-01854-RS, 2019 WL

3037514, at *6 (N.D. Cal. July 11, 2019) ("[T]he 'knowing and intentional' standard applicable

to Section 226 is closely related to the 'willfulness' standard which governs Section 203."); *Woods*

*v. Vector Mktg. Corp.*, No. 14-cv-0264-EMC, 2015 WL 2453202, at *4 (N.D. Cal. May 22, 2015)

("The similarity between 'knowingly and intentionally' under Section 226 and 'willfully'

under Section 203 with respect to their incorporation of a good faith dispute defense is consistent

with the Labor Code generally for several reasons.").  "In contrast, for the minority view,

'knowing and intentional' simply requires that the defendant knew . . . facts existed that brought

its actions or omissions within the provisions of section 226(a)."  *Greenlight Sys., LLC v.*

*Breckenfelder*, No. 19-cv-06658-EMC, 2021 WL 2651377, at *13 (N.D. Cal. June 28, 2021)

(internal quotation marks and citation omitted).  In other words, under the minority view, "an

employer is liable so long as the wage statement was not the result of a clerical error or mistake."

*Wilson*, 2021 WL 2913656, at *2.

Both plaintiffs and Delta make strong arguments in support of their respective positions.

As plaintiffs note, section 203, unlike section 226, explicitly allows for a good faith defense to

liability.  *See* Cal. Code Regs., tit. 8, § 13520 (providing that "a good faith dispute that any wages

are due will preclude imposition of waiting time penalties under Section 203").  And section 203,

unlike section 226, includes willfulness as part of the statutory language.  *See* Cal. Lab. Code

§ 203(a) ("If an employer *willfully* fails to pay . . . wages of an employee who is discharged or

who quits, the wages of the employee shall continue as a penalty . . . ") (emphasis added).

Plaintiffs argue that this difference in statutory language shows that the legislature did not intend

for the "knowing and intentional" standard from section 226 to include a good faith defense.  Pl.

MSJ at 13.  They further point out that section 226(e)(3) makes clear that a "knowing and

intentional failure" "does not include an isolated and unintentional payroll error due to a clerical or

inadvertent mistake" and that "the factfinder may consider as a relevant factor whether the

employer . . . has adopted . . . a set of policies, procedures, and practices that fully comply with

18

[section 226]." Cal. Lab. Code § 226(e)(3).  From plaintiffs' perspective, such language would be redundant if the employer could escape section 226 liability by simply pleading a belief that its wage statements were adequate.  Pl. MSJ at 13–14.

While plaintiffs' arguments have force, I agree with the majority approach that claims for statutory damages based on violations of section 226(a) require a showing of willfulness.  First, section 226(e)(1) specifies that an employee is only entitled to recover damages when she receives a non-compliant wage statement as a result of a "knowing and intentional failure by an employer *to comply with*" the statute.  Cal. Lab. Code § 226(e)(1) (emphasis added).  "The best reading of this statutory language is that a good faith belief in compliance precludes liability."  *Wilson*, 2021 WL 2913656, at *2.

Second, the California Supreme Court has linked the "knowing and intentional" and "willfulness" standards.  *See Ex parte Trombley*, 31 Cal.2d 801, 807–08 (1948) (finding that an employer's willful failure to pay wages under sections 203 and 216 means that an employer has 'knowingly and intentionally' refused to pay wages and that a good faith defense is available).  "In so finding, the California Supreme Court equated 'willfulness' under Section 203 to a 'knowingly and intentionally' standard."  *Woods*, 2015 WL 2453202, at *4; *see also Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp. 3d 1058, 1081 (N.D. Cal. 2019), *rev'd in part, vacated in part,* 999 F.3d 668 (9th Cir. 2021) ("As the California Supreme Court has linked the knowing and intentional standard to a willfulness standard, this Court must follow the California Supreme Court's decision.").  Other courts in California have defined willful as intentional.  "As used in section 203, 'willful' . . . means that the employer *intentionally* failed or refused to perform an act which was required to be done."  *Barnhill v. Robert Saunders & Co.,* 125 Cal. App. 3d 1, 7 (1981) (emphasis added); *see also Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1201 (2008) ("The settled meaning of 'willful,' as used in section 203, is that an employer has intentionally failed or refused to perform an act which was required to be done.").

Finally, this approach reconciles sections 203 and 226.  Section 203 imposes waiting time penalties when an employer "willfully fails to pay" wages upon termination of employment.  Cal. Lab. Code § 203(a).  Violations of sections 203 and 226 both lead to civil penalties.  *Compare*

Cal. Lab. Code. § 226(e)(1) *with* Cal. Lab. Code § 203.  Under the Labor Code, a "knowing and intentional" violation of section 226 as well as a "willful" violation of section 203 each constitutes a misdemeanor.  Cal. Lab. Code §§ 226.6, 216.  As *Woods* noted, "[i]t would seem ironic if the good faith dispute defense applied to Section 203, which involves failure to timely pay wages, but not to Section 226, which involves inaccurate wage statements."  *Woods*, 2015 WL 2453202, at *4 n.3.  "If anything, failure to pay wages would seem to warrant lesser tolerance of defenses than failing to provide accurate wage statements."  *Id.*

For the foregoing reasons, I conclude that statutory damages for wage statement claims under section 226(e) require a showing of willfulness and that a good faith defense could preclude liability.  The next question is whether, based on undisputed material facts, Delta has shown that the good faith defense applies.

> ### 2. Delta Is Entitled to A Good Faith Defense for Wage Statement Violations Prior to January 10, 2022.

Courts that have applied a good faith defense to section 226 have been governed by the body of case law regarding the scope of section 203's good faith defense.  *See Magadia*, 384 F. Supp. 3d at 1084 (collecting authorities showing that "many courts rely on § 203's good faith dispute for guidance on how to interpret § 226's good faith dispute").  As the Ninth Circuit recently explained in the context of section 203, the operative question for a good faith defense is whether, "based on the state of the law" when the wage statements were issued, Delta presented an "objectively reasonable defense that is not marred by bad-faith conduct."  *Hill v. Walmart Inc.*, 32 F. 4th 811, 817 (9th Cir. 2022).  Neither party suggests that there is any evidence of bad faith, so the remaining question is whether a reasonable jury could find that Delta's defenses were "unreasonable or unsupported by evidence."  *Hill*, 2022 WL 1218776, at *5.

Delta argues that it is entitled to a good faith defense because it believed that: "(1) section 226 did not apply to plaintiffs because they did not principally work in California; (2) the dormant Commerce Clause preempted section 226's application to plaintiffs; and (3) Delta's wage statements comply with section 226."  Delta Reply at 6 (capitalization altered for consistency).  In Delta's view, because "no court has found that Plaintiffs satisfy the *Ward* test or . . . held that

United States District Court
Northern District of California

Delta's wage statements do not comply with Section 226," Delta "had and continues to have a good faith belief" that Delta has complied with the law.  Delta Reply at 9.  Under the guise of its professed good faith belief in compliance, Delta continues to issue wage statements that do not comply with section 226.  *See* Eichmann Decl. Ex. A (including wage statement from March 2022 that fails to include the total hours worked or all hours worked at each hourly rate); Flores Decl. Ex. A (same).

Delta is correct that the case law regarding the applicability of section 226 to flight attendants such as plaintiffs has been in flux.  Def. MSJ at 18–21.  In January 2017, for instance, I ruled that California's wage statement laws did not apply to plaintiffs based on the minimal amount of time that they spent working in California.  *Oman I*, 230 F. Supp. 3d at 988 (holding that section 226 did not apply "because the undisputed facts show that the named plaintiffs only worked a *de minimus* amount of time in California").  And I was not alone: several other district courts also concluded that flight attendants or pilots were not covered by section 226.  *See, e.g.*, *Ward v. United Airlines, Inc.*, No. 15-cv-02309-WHA, 2016 WL 3906077, at *3–5 (N.D. Cal. July 19, 2016) (holding that section 226 does not apply to wage statements issued to United pilots for work primarily performed out of state); *Booher v. JetBlue Airways Corp.*, 2017 WL 6343470, at *7 (N.D. Cal. Dec. 12, 2017) ("[T]his Court finds that Section 226 does not apply"); *Vidrio v. United Airlines, Inc.*, No. 15-cv-7985, 2017 WL 1034200, at *6 (C.D. Cal. Mar. 15, 2017) ("In light of the California state law precedent and the decisions in *Ward, Bernstein*, and *Oman*, this Court concludes that Plaintiffs cannot assert their claim for improper wage statements under Section 226.").

Likewise, some courts had previously found that the dormant Commerce Clause precluded applying California labor laws (including section 226) to interstate airline workers.  *See Ward*, 2016 WL 3906077, at *6 (holding that the application of section 226 would trigger "dormant commerce clause preemption"); *Fitz-Gerald v. SkyWest, Inc.*, 155 Cal. App. 4th 411, 422 (2007) (holding that application of wage order regarding minimum wage and meal/rest breaks to flight attendants would substantially burden interstate commerce).

In keeping with other decisions that have recently examined this issue, I agree with Delta

21

that for at least *some* of the wage statements at issue in this case, Delta had a good faith belief that it was not violating California law because of the unsettled case law. *See Wilson*, 2021 WL 2913656, at *3 ("At the time SkyWest issued the wage statements at issue in this case, it had a good faith belief that it was not violating California law based on numerous decisions that the dormant Commerce Clause precluded applying California labor laws (including section 226) to interstate airline workers."); *Booher*, No. 15-cv-01203-JSW, slip op. at 7 ("[W]hen JetBlue issued the wage statements at issue in this case, it had a good belief based on ample caselaw that was only very recently overturned, that California law did not apply to Plaintiffs because they did not principally work in California.") (internal quotation marks and citation omitted).

But a good faith defense must have its limits. As the Ninth Circuit recently reiterated, Delta's defense must be "objectively reasonable" "based on the state of the law" at the time that Delta issued the wage statements in question. *Hill*, 32 F. 4th at 817. Plaintiffs persuasively contend that after a certain point, Delta's purported good faith belief in compliance becomes "objectively unreasonable." Pl. Reply at 7. While Delta is correct that no court had expressly found that its wage statements violated section 226 before, I agree with plaintiffs that—based on the *current* state of the law—it is not objectively reasonable for Delta to continue to issue facially deficient wage statements today. In light of the adverse rulings from the Ninth Circuit, California Supreme Court, and United States Supreme Court, the line of reasonableness has clearly been crossed.

The question is when, precisely, Delta's good faith belief in compliance became objectively unreasonable. Plaintiffs argue that there is "no factual basis for a good faith defense after July 2020, or February 2021 at the latest." MSJ at 16. By February 2021, binding decisions had established that plaintiffs could be entitled to California-compliant wage statements under *Ward* and that the application of section 226 to interstate workers did not violate the dormant Commerce Clause. *See Oman II*, 9 Cal. 5th at 773 (holding that section 226 applies to interstate workers who are based for work purposes in California and do not spend the majority of their time working in one state); *Oman III*, 835 F. App'x at 273 (holding that application of the *Ward* test does not violate the dormant Commerce Clause). Despite the increasing likelihood that Delta

United States District Court
Northern District of California

United States District Court
Northern District of California

1    would incur liability, Delta did not change its wage statements to include the information required

2    under section 226(a).  Over the next six months, Delta filed a petition for rehearing, a request for

3    rehearing *en banc*, and a petition for a writ of certiorari.  Delta is, of course, well within its rights

4    to articulate creative arguments regarding the scope of section 226, and to seek appellate review of

5    decisions not to its liking.  But the results were predictable.

6         On January 10, 2022, the Supreme Court denied Delta's petition for a writ of certiorari,

7    thus eliminating the possibility that the Ninth Circuit's decision would be overruled.  Dkt. 98.  In

8    the eleven months that it took to exhaust its appeals, Delta had ample opportunity to prepare to

9    adjust its wage statements in the likely event that it would not prevail.  It did not do so.  As a

10   result, it crossed the line where the good faith defense no longer could apply to its insistence that it

11   was in compliance with section 226.  It bears the consequences of that decision.  I find that

12   January 10, 2022, is the latest date by which Delta could reasonably have believed that it was in

13   compliance with section 226.

14        In light of the legal landscape after January 10, 2022, Delta could not have reasonably

15   believed that its wage statements complied with the California Labor Code.  Because Delta is

16   entitled to a good faith defense for the wage statement violations which occurred on or before

17   January 10, 2022, it is not liable for any statutory damages for those violations.  Delta is not

18   entitled to a good faith defense for the wage statements violations that occurred after January 10,

19   2022.  As a result, I find that Delta knowingly and intentionally violated section 226(a) for the

20   wage statements at issue for the period after January 10, 2022, to present.

21        To recap: in their quest for statutory damages under section 226(e), plaintiffs have

22   successfully established the first two elements—a "knowing and intentional" violation of section

23   226(a).  *Willner*, 35 F. Supp. 3d at 1128 ("[A] claim for damages under Section 226(e) requires a

24   showing of three elements: (1) a violation of Section 226(a); (2) that is 'knowing and intentional';

25   and (3) a resulting injury.").  I turn now to the third and final element of plaintiffs' claim for

26   statutory damages.

27

28

United States District Court
Northern District of California

### D.    Plaintiffs Have Established Injury from the Wage Statement Violations.

An employee is deemed to suffer injury if the employer fails to provide accurate and complete information as required by section 226(a) and "the employee cannot promptly and easily determine" the required information from the wage statement alone.  Cal. Lab. Code § 226(e)(2)(B).  The statute defines "promptly and easily determine" to mean "a reasonable person would be able to readily ascertain the information without reference to other documents or information."  Cal. Lab. Code § 226(e)(2)(C).  "For purposes of section 226(e), a plaintiff is 'injured' if the accuracy of any of the items enumerated in § 226(a) [including the hourly rate] cannot be ascertained from the four corners of the wage statement."  *Raines v. Coastal Pac. Food Distributors, Inc.*, 23 Cal. App. 5th 667, 676 (2018) (internal quotation marks and citation omitted).  "An actual injury is shown where there is a need for both additional documentation and additional mathematical calculations in order to determine whether Plaintiffs were correctly paid and what they may be owed."  *Id.* (internal quotation marks and citation omitted).  "In contrast, where the deficiency in the wage statement could be corrected by 'simple math,' there is no actual injury."  *Id.*

Plaintiffs argue that they suffered injury because "one cannot promptly and easily determine hours worked, rates of pay, or hours worked at each rate of pay from the paystub."  Pl. MSJ at 16.  Plaintiffs point to deposition testimony from Kathleen Dixon, Delta's corporate designee and payroll specialist, in which she testified that she could not determine how many hours each plaintiff worked or the relevant rates of pay from the wage statements.  *See* Hellman Decl. Ex. 21 (Deposition of Kathleen Dixon, or "Dixon Depo. Tr.") at 31:14–17; 82:3–20; 86:3–23.  As plaintiffs note, if Delta's payroll specialist is unable to determine the relevant information from the wage statements, then a reasonable person would certainly not be able to readily do so.  MSJ at 17 n.6.  Delta does not respond to or otherwise rebut plaintiffs' evidence of injury.

Based on the undisputed evidence, plaintiffs have shown injury under section 226(e).  I conclude that they are entitled to statutory damages for the section 226(a) violations pursuant to section 226(e) for the time period after January 10, 2022, to present.  As plaintiffs request, I will

1   **GRANT** summary judgment in plaintiffs' favor, with the amount of damages to be awarded at

2   trial.

3   **IV.    SECTION 226(a) PAGA CLAIMS**

4          Plaintiffs seek summary judgment on their PAGA claims arising out of Delta's violations

5   of section 226(a).  Pl. MSJ at 11, 17.  Although directed at the same underlying conduct, a claim

6   for civil penalties under PAGA based on a violation of section 226(a) is analytically different from

7   a claim for statutory damages under section 226(e).  As a matter of law, violations of section

8   226(a) give rise to PAGA liability, regardless of any good faith defense.  *See* Cal. Lab.

9   Code § 2699.5; *McKenzie v. Fed. Ex. Corp.*, 765 F. Supp. 2d 1222, 1232 (C.D. Cal. 2011)

10  ("[P]roving a violation of subsection (a) of Section 226 is sufficient by itself to warrant civil

11  penalties under PAGA.").  Unlike a claim for statutory damages, "'a representative PAGA claim

12  for civil penalties for a violation of section 226(a) does not require proof of injury or a knowing

13  and intentional violation.'"  *Arroyo*, 2020 WL 887771, at *17 (quoting *Raines v. Coastal Pac.*

14  *Food Distributors, Inc.*, 23 Cal. App. 5th 667, 670 (2018)).

15         In other words, so long as plaintiffs can establish a violation of section 226(a), they are

16  entitled to judgment on their PAGA claims seeking civil penalties for those violations.  Because I

17  have found that Delta's wage statements do not comply with section 226(a)(2) and (9), I **GRANT**

18  summary judgment to plaintiffs as to the question of Delta's liability for their section 226(a)

19  PAGA claims, with the amount of penalties to be determined at trial.

20  **V.    PLAINTIFFS' UNFAIR COMPETITION LAW CLAIM**

21         Delta also seeks summary judgment on plaintiffs' fifth claim for relief, which is based on

22  the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*  Def.

23  MSJ at 2, 23.  It contends that summary judgment is appropriate because plaintiffs' UCL claim is

24  "wholly derivative" of the underlying section 204 and 226 claims, and the section 204 and 226

25  claims fail as a matter of law.  *Id.* at 23.  But because I have found that the section 204 and 226

26  claims survive summary judgment, Delta's argument is unfounded.   As a result, I **DENY** Delta's

27  motion for summary judgment on this basis.

28

United States District Court
Northern District of California

## VI.     PLAINTIFFS ARE NOT ENTITLED TO AN INJUNCTION.

Lastly, plaintiffs seek an order requiring Delta to comply with section 226(a).  Pl. MSJ at 17.  They contend that "Delta's willful disregard for a clear order from the Ninth Circuit" demonstrates that "Delta will not follow the law unless specifically ordered to do so."  Pl. Reply at 11.  According to plaintiffs, because Delta is continuing to issue non-compliant wage statements, there is an "imminent threat . . . of an irreparable injury."  *Id.*  Finally, plaintiffs note that section 226(h) authorizes injunctive relief, and section 226(e)(2)(B) defines injury that results from a statutory violation.  *See* Cal. Lab. Code §§ 226(e)(2)(B) and (h).

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).

Plaintiffs have not shown that they are entitled to injunctive relief.  Plaintiffs' allegations of injury related to the statutory violation alone are not sufficient: the Ninth Circuit has explained that "[u]nder our case-specific approach, 'we do not presume irreparable harm' simply because a defendant violates a statute that authorizes injunctive relief."  *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1162 (9th Cir. 2011) (internal quotation omitted); *cf. Carrillo v. Schneider Logistics, Inc.*, 823 F. Supp. 2d 1040, 1043 (C.D. Cal. 2011) (analyzing *Winter* factors to determine whether plaintiff was entitled to a preliminary injunction for a section 226 claim).  And while plaintiffs cite *Bowles* for the principle that "Plaintiffs need not show the lack of an adequate remedy at law," *Bowles v. Huff*, 146 F.2d 428, 430 (9th Cir. 1944), the Ninth Circuit has subsequently made clear that a party seeking a preliminary injunction must satisfy the *Winter* factors.  *See Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) ("To the extent that our [pre-*Winter*] cases have suggested a lesser standard, they are no longer controlling, or even viable.").

Finally, as Delta notes, plaintiffs mischaracterize the record: Delta did not "willful[ly]

1   disregard" any order from the Ninth Circuit. Def. Reply at 12. The Ninth Circuit explicitly

2   directed me to determine whether or not *Ward* applied, and if so, whether Delta's wage statements

3   complied with sections 204 and 226. *See Oman III,* 835 F. App'x at 272–73. The Ninth Circuit

4   did not make any findings with regard to whether Delta's wage statements complied with sections

5   204 and 226. *Id.*

6          For these reasons, I conclude that under these facts, plaintiffs have not shown that they are

7   entitled to injunctive relief at this time.

8                                    **CONCLUSION**

9          For the foregoing reasons, I **GRANT** summary judgment to plaintiffs for their PAGA

10   claims for civil penalties arising from section 226(a)(2) and (9). Plaintiffs are also entitled to

11   summary judgment on their section 204 PAGA claims for the pay periods at issue up until

12   September 1, 2018. I **GRANT** summary judgment for Delta for the section 204 PAGA claims for

13   pay periods after September 1, 2018.

14          I **GRANT** summary judgment to Delta for the section 226(a) violations which occurred

15   prior to January 10, 2022, because Delta is entitled to a good faith defense based on the unsettled

16   case law. I **GRANT** summary judgment to plaintiffs for their claims for statutory damages under

17   section 226(e) for the wage statement violations which occurred after January 10, 2022, to present.

18          **IT IS SO ORDERED.**

19   Dated: July 8, 2022

20

21   

22   WILLIAM H. ORRICK
     United States District Judge

23

24

25

26

27

28

*United States District Court*
*Northern District of California*