Matthew C. Helland, CA SBN 250451
helland@nka.com
Daniel S. Brome, CA SBN 278915
dbrome@nka.com
NICHOLS KASTER, LLP
235 Montgomery St., Suite 810
San Francisco, CA 94104
Telephone: (415) 277-7235
Facsimile:  (415) 277-7238

*Attorneys for Plaintiffs and Others Similarly Situated*

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEV ANAND OMAN, TODD EICHMANN, MICHAEL LEHR, and ALBERT FLORES, individually, on behalf of others similarly situated, and on behalf of the general public,<br><br>Plaintiff,<br><br>vs.<br><br>DELTA AIR LINES, INC.,<br><br>Defendant. | Case No.  3:15-cv-00131-WHO<br><br>**PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PRIVATE ATTORNEYS GENERAL ACT (PAGA) REPRESENTATIVE ACTION SETTLEMENT**<br><br>Date:          June 19, 2024<br>Time:          2:00 p.m.<br>Courtroom:  2, 17th Floor<br><br>Judge: Hon. William H. Orrick |

**NOTICE OF MOTION TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that at 2:00 p.m. on June 19, 2024, in the courtroom of the Honorable William H. Orrick, Courtroom 2, 17th Floor of the United States District Court for the Northern District of California, 450 Golden Gate Ave., San Francisco, California, Plaintiffs will and hereby do move this Court for conditional certification of a Rule 23 settlement class and preliminary approval of a Settlement reached in this Rule 23 Class Action and Private Attorneys General Act action against Defendant Delta Air Lines, Inc. Plaintiffs move the Court for an order conditionally certifying the settlement class, appointing Plaintiffs as the class representatives, appointing Plaintiffs' Counsel as class counsel, preliminarily finding that the proposed settlement is fair, reasonable, and adequate, determining that the Parties' notice plan and documents satisfy the requirements of Rule 23 and due process, and authorizing distribution of notice as outlined in the Parties' settlement agreement. This motion is based on this Notice of Motion and Motion for Preliminary Approval of Settlement, the Declaration of Matthew Helland and its attached exhibits, which Plaintiffs file concurrently with this Motion, all other pleadings and papers on file in this action, and such argument as the Court may hear.

DATED:  May 15, 2024                    NICHOLS KASTER, LLP

                                        By:  *Matthew Helland*
                                             Matthew Helland
                                             Attorney for Plaintiffs

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... iv

MEMORANDUM OF LAW ...................................................................................................1

RELEVANT BACKGROUND ...............................................................................................2

    I.   THE LITIGATION ......................................................................................................2

         A.  Factual and Procedural Background .......................................................................2

    II.  THE SETTLEMENT ...................................................................................................4

         A.  Settlement Class.......................................................................................................4

         B.  Settlement Amount and Allocations .......................................................................5

         C.  Notification Obligations..........................................................................................6

         D.  Notice of Rule 23 Settlement and Opportunity to Object.......................................6

         E.  Release of Claims ...................................................................................................6

             i.   Released Parties ...............................................................................................6

             ii.  Released Claims................................................................................................7

         F.  Settlement Administration .......................................................................................7

         G.  Settlement Allocations and Distribution of Funds..................................................8

LEGAL ANALYSIS.................................................................................................................9

    I.  THE SETTLEMENT SATISFIES THE RULE 23 REQUIREMENTS FOR PURPOSES

OF SETTLEMENT.................................................................................................................9

         A.  Numerosity is Satisfied ........................................................................................10

         B.  There are Questions of Law and Fact Common to the Class.................................11

         C.  The Named Plaintiffs' Claims are Typical of the Class........................................11

         D.  Adequacy is Satisfied............................................................................................12

         E.  A Class Action is Superior to Other Alternatives ................................................12

    II.  THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE............................13

         A.   The Strength of Plaintiffs' Case, Weighed Against the Risk, Expense,

             Complexity and Likely Duration of Further Litigation, and the Risk of

             Maintaining Class Action Status Through Trial, Supports Approval....................13

         B.  The Amount Offered in Settlement Weighs Strongly in Favor of Preliminary

             Approval ...............................................................................................................15

         C.  The Stage of the Proceedings Also Favors Preliminary Approval .......................17

         D.  The Considerable Experience and Strongly Supportive Views of Counsel Weigh

             in Favor of Preliminary Approval.........................................................................18

ii

E.   The Absence of a Government Participant Favors Approval ...............................18

F.   The Reaction of Class Members to the Proposed Settlement is Not Yet Suitable for Review ..........................................................................................................18

III. THE PAGA SETTLEMENT WARRANTS APPROVAL.................................................18

IV. PLAINTIFFS' REQUESTED ATTORNEYS FEES' AND COSTS ARE FAIR AND REASONABLE ............................................................................................................19

V.  THE COURT SHOULD AWARD AN ENHANCEMENT PAYMENT TO THE CLASS REPRESENTATIVE ...................................................................................................21

CONCLUSION............................................................................................................................22

# TABLE OF AUTHORITIES

<u>Cases</u>

*Alexander v. FedEx Ground*,
    2016 WL 1427358 (N.D. Cal. Apr. 12, 2016) ................................................................19

*Arias v. Sup. Ct.*,
    46 Cal.4th 969 (2009) ................................................................................................17

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980).....................................................................................................19

*Boyd v. Bank of Am.*,
    2014 WL 6473804 (C.D. Cal. Nov. 18, 2014)............................................................19

*Carrington v. Starbucks Corp.*,
    30 Cal. App. 5th 504 (2018) ......................................................................................15

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) .....................................................................................14

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) .....................................................................................9

*Cruz v. Sky Chefs*,
    2014 WL 7247065 (N.D. Cal. Dec. 19, 2014)...........................................................19

*Cuzick v. Zodiac U.S. Seat Shells, LLC*,
    2017 WL 4536255 (N.D. Cal. Oct. 11, 2017)............................................................17

*Deluca v. Farmers Ins. Exch.*,
    2020 WL 5071700 (N.D. Cal. Aug. 24, 2020) ..........................................................20

*Dunleavy v. Nadler*,
    213 F.3d 454 (9th Cir. 2000) .......................................................................................9

*Flores v. Starwood Hotels & Resorts Worldwide, Inc.*
    253 F.Supp.3d. 1074 (C.D. Cal. 2017) ......................................................................18

*Franklin v. Kaypro Corp.*, .............................................................................................9
    884 F.2d 1222 (9th Cir. 1989)

*Fronda v. Staffmark Holdings, Inc.*,
    2018 WL 2463101 (N.D. Cal. June 1, 2018)............................................................20

*Garner v. State Farm Mut. Auto. Ins. Co.*,
    No. 08-cv-1365-CW, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010)..............................14

*Gay v. Waiters' & Dairy Lunchmen's Union*,
    489 F. Supp. 282 (N.D. Cal. 1980), *aff'd*, 694 F.2d 531 (9th Cir. 1982) .........................10

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...................................................................................12

*Haworth v. State of Nevada*,
    56 F.3d 1048 (9th Cir. 1995) .....................................................................................19

*Hernandez v. Dutton Ranch Corporation*,
    2021 WL 5053476 (N.D. Cal. Sept. 10, 2021) ........................................................17

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ..............................................................................14, 19

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) .....................................................................................10

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) .......................................................................................9

*In re Mercury Interactive Corp. Securities Litigation*,
    618 F.3d 988 (9th Cir. 2010) .....................................................................................19

*In re Rubber Chems. Antitrust Litig.*,
    232 F.R.D. 346 (N.D. Cal. 2005).............................................................................11

*In re TracFone Unlimited Serv. Plan Litig.*,
    112 F. Supp. 3d 993 (N.D. Cal. 2015) .....................................................................14

*Jennings v. Open Door Mktg., LLC*,
    No. 15-cv-04080-KAW, 2018 WL 4773057  (N.D. Cal. Oct. 3, 2018) ...........................17

*Jordan v. NCI Grp., Inc.*,
    2018 WL 1409590 (C.D. Cal. Jan. 5, 2018) .............................................................13

*Lusby v. GameStop, Inc.*,
    2015 WL 1501095 (N.D. Cal. Mar. 31, 2015).........................................................20

*McLeod v. Bank of Am., N.A.*,
    No. 16-CV-03294-EMC, 2018 WL 5982863 (N.D. Cal. Nov. 14, 2018) ........................17

*Merante v. American Institute for Foreign Study, Inc.*,
    Case No. 3:21-cv-03234-EMC (N.D.Cal.) .................................................................17

*McKnight v. Uber Techs., Inc.*,
    No. 14-cv-05615-JST, 2017 WL 3427985 (N.D. Cal. Aug. 7, 2017)................................9

*Naranjo v. Spectrum Sec. Servs., Inc.* ("*Naranjo II*")
    2024 WL 1979980 (Cal. May 6, 2024)................................................................2, 15, 16

*Nwabueze v. AT & T Inc.*,
    2013 WL 6199596 (N.D. Cal. Nov. 27, 2013) ..................................................20

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) .............................................................13, 14, 15

*Oman v. Delta Air Lines, Inc.*,
    9 Cal. 5th 762 (2020) ...........................................................................2, 3

*Oman v. Delta Air Lines, Inc.*,
    835 F. App'x 272 (9th Cir. 2021), *cert. denied,* 142 S. Ct. 755 (2022)..............................3

*Oman v. Delta Airlines, Inc.*,
    610 F. Supp. 3d 1257 ...........................................................................3

*Parra v. Bashas', Inc.*,
    536 F.3d 975 (9th Cir. 2008) .................................................................11

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) .................................................................12

*Pitarro v. DSV Air & Sea, Inc.*,
    No. 19-CV-00849-SK, 2021 WL 6499973 (N.D. Cal. Jan. 28, 2021) ...........................14

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000) ...............................................................20

*Ramirez v. Benito Valley Farms, LLC*,
    2017 WL 3670794 (N.D. Cal. Aug. 25, 2017) ................................................13

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .................................................................18

*Selk v. Pioneers Mem'l Healthcare Dist.*,
    159 F. Supp. 3d 1164 (S.D. Cal. 2016)........................................................21

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ...............................................................20

*Slezak v. City of Palo Alto*,
    Case No. 16-cv-3224-LHK, 2017 WL 2688224 (N.D. Cal. June 22, 2017) ....................18

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .................................................................10

*Telecommunications Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ........................................................15

*Terry v. Hoovestol, Inc.*,
    No. 16-cv-05183-JST, 2018 WL 4283420 (N.D. Cal. Sept. 7, 2018) .................................9

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016)..........................................................................11

*Valentino v. Carter–Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) ...............................................................13

*Vazquez v. USM Inc.*,
    2016 WL 612906 1 (N.D. Cal. Feb. 16, 2016) ...................................................19

*Viceral v. Mistras Grp., Inc.*,
    2016 WL 5907869 (N.D. Cal. Oct. 11, 2016).....................................................17

*Viceral v. Mistras Grp. Inc.*,
    2017 WL 661352 (N.D. Cal. Feb. 17, 2017) ....................................................19

*Villegas v. J.P. Morgan Chase & Co.*,
    No. CV 09-00261 SBA, 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012)...........................10

*Ward v. United Airlines, Inc.*,
    9 Cal. 5th 732 (2020) ........................................................................3

*Ward v. United Airlines, Inc.*,
    986 F.3d 1234 (9th Cir. 2021)  ...............................................................3

*Willner v. Manpower Inc.*,
    2015 WL 3863625, (N.D. Cal. June 22, 2015).................................................20


Federal Rules

Fed. R. Civ. P. 23(a)(1)............................................................................9
Fed. R. Civ. P. 23(a)(4)...........................................................................12
Fed. R. Civ. P. 23(b) ...........................................................................9,13
Fed. R. Civ. P. 23(b)(3)...........................................................................12
Fed. R. Civ. P. 23(e)(1)(C) .......................................................................13

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

### **MEMORANDUM OF LAW**

This case was filed more than nine years ago challenging Delta Air Lines, Inc.'s ("Delta" or "Defendant") pay practices for its Flight Attendants. The two remaining Named Plaintiffs have been involved throughout this journey, pursuing claims on behalf of the class through multiple summary judgment motions and appellate proceedings before the Ninth Circuit and the California Supreme Court. Plaintiffs helped to secure binding authority explaining how state law protects interstate transportation workers, and a decision from this Court that Delta's previous wage statements did not comply with the law.

The Court had recently certified a class, and the parties were preparing for a trial on Plaintiffs' claims for wage statement penalties and California Labor Code Private Attorneys General Act ("PAGA") penalties. Now, after years of vigorous litigation, the parties have reached a settlement that is extremely favorable: after fees and costs, class members are expected to receive 100% of their potential wage statement penalties prior to Defendant's October 2022 revisions, including penalties for the time period where the Court granted summary judgment to Delta; 25% of their potential wage statement penalties after the 2022 revisions; and additional amounts for PAGA penalties.

Plaintiffs Todd Eichmann and Albert Flores ("Named Plaintiffs") on behalf of themselves and the putative class,[1] now move for preliminary approval of a settlement reached in this PAGA and Rule 23 class action against Delta. Defendant does not oppose the motion. The settlement is an excellent result for the Class and the Labor Workforce Development Agency ("LWDA") after years of litigation.

This $15,900,000 settlement will provide a meaningful payment to the LWDA and significant individual settlement payments to approximately 4,185 members of the settlement classes. Indeed, Class Members will receive full relief (or close to it) for their wage statement claims, despite this Court's ruling that Delta was entitled to a good faith defense to liability for much of the covered time period. At the time the parties accepted the mediator's proposal, the

---

[1] The Court recently certified a class. As part of the settlement, Plaintiffs seek certification of a slightly broader Settlement Class.

1   California Supreme Court had heard argument in *Naranjo v. Spectrum Sec. Servs., Inc.*

2   ("*Naranjo II*") but had not yet decided it. 2024 WL 1979980 (Cal. May 6, 2024). *Naranjo II*

3   directly impacted an appellate issue which carried significant upside for Plaintiffs, and the parties

4   were expecting a decision around the time of trial. As it turns out the decision came out early –

5   and it was not favorable to plaintiffs. *See id.* The settlement is therefore even better for the class

6   now than it was at the time of agreement. Plaintiffs request that the Court certify the settlement

7   class, make a preliminary finding that the settlement is fair, reasonable, and adequate, and order

8   the Parties to effectuate the proposed notice plan.

9   <center>**RELEVANT BACKGROUND**</center>

10  **I.   THE LITIGATION**

11  **A.   Factual and Procedural Background**

12   Plaintiff Dev Oman filed this putative class action on January 9, 2015. (ECF No. 1.) He

13  amended his complaint on May 22, 2015, adding Todd Eichmann and Michael Lehr as additional

14  Plaintiffs. (ECF No. 24.) The parties filed cross motions for summary judgment on Plaintiffs'

15  California minimum wage claims, and on December 29, 2015, this Court granted Delta's motion

16  for partial summary judgment and denied Plaintiffs' cross-motion. (ECF No. 45.)

17   Plaintiffs amended their complaint again on February 10, 2016, adding Albert Flores as

18  an additional Plaintiff. (ECF No. 52.) The parties then filed cross motions for summary judgment

19  on Plaintiffs' remaining claims, and on January 6, 2017, this Court granted Delta's motion and

20  denied Plaintiffs' cross-motion. (ECF No. 68.) The Court entered judgment the same day. (ECF

21  No. 69.) Plaintiffs appealed. (ECF No. 70.)

22   The Ninth Circuit certified three questions to the California Supreme Court, which

23  accepted review. (ECF No. 79.) Those questions addressed whether California Labor Code

24  Sections 226 and 204 applies to Plaintiffs, whether California's minimum wage law applies to

25  Plaintiffs, and whether Delta's flight attendant pay structure violates California's minimum wage

26  law. *See Oman v. Delta Air Lines, Inc.*, 9 Cal. 5th 762, 772 (2020). The California Supreme

27  Court held that flight attendants like Plaintiffs <u>are</u> protected by Labor Code Sections 226 and 204

28  even if they do not spend the majority of their time working in California, if they are based for

<center>2</center>

work purposes in California and do not spend the majority of their time working in another state. *See id.* at 773; *see also Ward v. United Airlines, Inc.*, 9 Cal. 5th 732, 755–56 (2020) (heard in conjunction with this case on certified questions from the same Ninth Circuit panel). The Supreme Court also held that Delta's flight attendant pay structure does not violate California's minimum wage law. *Oman*, 9 Cal. 5th at 789.

After review of the California Supreme Court's answers to the three certified questions, the Ninth Circuit affirmed this Court's judgment in Delta's favor on Plaintiff's minimum wage claims, but reversed this Court's decision granting judgment in Delta's favor on the Section 226 and 204 claims held by Plaintiffs Lehr, Eichmann, and Flores, concluding that application of Sections 226 and 204 as outlined by the California Supreme Court would not violate the dormant Commerce Clause. *Oman v. Delta Air Lines, Inc.*, 835 F. App'x 272-73 (9th Cir. 2021), *cert. denied,* 142 S. Ct. 755 (2022); *see also Ward v. United Airlines, Inc.*, 986 F.3d 1234 (9th Cir. 2021) (outlining the panel's dormant Commerce Clause analysis).[2]

The Ninth Circuit remanded for this Court to determine whether Delta complied with Sections 226 and 204 and whether Plaintiffs meet the Supreme Court's test for coverage under these Labor Code provisions. *Id.* The Ninth Circuit issued its mandate on April 21, 2021. (ECF No. 83.)

On July 8, 2022, this Court granted summary judgment to Plaintiffs on their Section 226 wage statement claims for the time period starting January 10, 2022. *Oman v. Delta Airlines, Inc.*, 610 F. Supp. 3d 1257. In reaching that conclusion, the Court held that the California Supreme Court's ruling in *Ward v. United Airlines*, 9 Cal. 5th 732 (2020) did not require that employees "calculate the amount of time spent working in-state and out-of-state for every single pay period at issue in order to obtain California-compliant wage statements." *Id.* at 1269. The Court then reviewed Plaintiffs' showing that fewer than 1% of their total flights were intrastate flights in states other than California. *Id.* The Court held:

> Because Duty Periods start and end in California for all California-based flight attendants, flight attendants must fly from California to another state at the

---

[2] The Ninth Circuit affirmed this Court's judgment as to Plaintiff Oman, who was not based in California.

> beginning of the Rotation, and to California from another state at the end of the Rotation. Pl. Reply at 10. Unless plaintiffs were to staff a significant number of intrastate flights outside of California, I cannot conceive how they could work more than fifty percent of their time in any state. Wise's calculations show that plaintiffs worked a miniscule number of intrastate flights outside of California, thus eliminating that possibility.

*Id.* The Court went on to hold that even one pay period where Plaintiff Flores worked exclusively in Utah (to undergo training) did not eliminate Plaintiff Flores' right to California-compliant paystubs. *Id.* at 1270.

On September 22, 2023, this Court granted Plaintiffs' Motion for Class Certification requiring Plaintiffs to file a Third Amended Complaint and denied Defendant's motion for leave to file a second motion for summary judgment. (ECF No. 128).

On March 13, 2024, the Parties participated in a settlement conference with Magistrate Judge Lisa J. Cisneros. (Declaration of Matthew C. Helland ("Helland Decl.") Decl. ¶ 3.) The parties did not reach a settlement that day. Another Settlement Conference was held via telephone on March 20, 2024. (*Id.*) The parties continued negotiating with Judge Cisnero's assistance on March 21, 2024. (*Id.*) After this three-day, extended settlement conference, the parties agreed to a mediator's proposal on March 22, 2024, which was later memorialized in the long form settlement agreement Plaintiffs now present to the Court for approval.

## II.    THE SETTLEMENT

The complete details of the Parties' agreement are contained in the Settlement Agreement ("the Settlement" or "Agreement") executed by the Parties and attached as Exhibit 1 to the Declaration of Matthew C. Helland.  The following summarizes the Agreement's key terms.

### A.    Settlement Class

While the Court recently granted class certification, the settlement encompasses a broader group than was certified. The parties agree to certification, for settlement purposes only, of the following Settlement Class:

> All current and former flight attendants who worked for Delta while based in California ("California-based flight attendants") at any time from January 9, 2014 through March

31, 2024, and who did not participate in Delta's Enhanced Retirement or Voluntary Opt-Out Programs.

(Agreement ¶ 5.) PAGA penalty amounts will be allocated to Class Members who worked after November 9, 2014, even if those Class Members exclude themselves from the Class. (Agreement ¶ 43.) Additionally, PAGA penalties will also be allocated to individuals who participated in Delta's Enhanced Retirement or Voluntary Opt-Out Programs.

### B. Settlement Amount and Allocations

Under the proposed settlement, Defendant will pay $15,900,000 for the claims of approximately 4,185 Class Members, with the following allocation:

- **Wage Statements:** $10,570,212.50 allocated to the Wage Statement Class. This amount will be distributed on a pro rata basis by pay periods based in California, with a 75% reduction for pay periods after October 7, 2022 and a maximum allocation of $4,000 per Wage Statement Class Member (Agreement ¶ 43);

- **PAGA:** $1,164,787.50 allocated to PAGA penalties, of which 75% ($873,585.00) shall be paid to the LWDA and 25% will be distributed to Class Members (including Non-Participating Class Members who exclude themselves and individuals who were part of Delta's Enhanced Retirement or Voluntary Opt-Out Programs) who worked since November 9, 2014. The penalties will be allocated pr rata, with a 75% reduction for pay periods after October 7, 2022.  (Agreement ¶¶ 17, 43);

- **Attorneys' Fees:** Up to $3,975,000 for Plaintiffs' Counsel's attorneys' fees, subject to Court approval (Agreement ¶ 14);

- **Attorneys' Costs:** Up to $65,000 for Plaintiffs' Counsel's costs, subject to Court approval (Agreement ¶ 14);

- **Enhancement Payments:** Payments of $20,000 each for the two Named Plaintiffs, subject to Court approval (Agreement ¶ 15);

- **Contingency Fund:** A contingency fund of $50,000 to be used to effectuate the purposes of the settlement (Agreement ¶ 14);

- **Settlement Administration Costs:** Costs of administering the settlement, not expected

to exceed $35,000 (Agreement ¶ 14).

Settlement payments will be treated as non-wage payments, reported on IRS Forms 1099.

**C.     Notification Obligations**

Delta will provide notice pursuant to the Class Action Fairness Act of 2005 ("CAFA"). Plaintiff's Counsel will notify the LWDA of this settlement. (Helland Decl. ¶ 20.)

**D.     Notice of Rule 23 Settlement and Opportunity to Object**

If the Court approves the proposed settlement, Defendant must provide class information to the Administrator within twenty-one (21) days of preliminary approval. (Agreement ¶ 46.) The Administrator will mail and email the notice within seven (7) calendar days after receiving the class list. (*Id.* at ¶ 47.)  The proposed forms of notice to be distributed are attached to the Settlement Agreement as Exhibit A.

Class Members may submit objections as to any term of the Settlement, dispute the number of pay periods allocated to them, and request exclusion. Class Members who wish to object to the Settlement must submit a written objection to the Court no later than sixty (60) days after the Administrator distributes notice. (Agreement ¶ 56.) Class Members who wish to exclude themselves from the Settlement must postmark, email, or fax to the Administrator a written Request for Exclusion no later than sixty (60) days after distribution of notice. (Agreement ¶ 51.) If more than five percent (5%) of the Class Members return valid and timely requests for exclusion, Delta will have the right, but not the obligation, to withdraw from, revoke, or terminate the Settlement Agreement. (Agreement ¶ 54.)

**E.     Release of Claims**

i.     Released Parties

The Released Parties ("Releasees") are the Defendant Delta Air Lines, Inc. and each of its past or present direct and/or indirect, officers, directors, managers, employees, agents, representatives, attorneys, insurers, partners, investors, shareholders, members, administrators, parent companies, subsidiaries, affiliates, divisions, predecessors, successors, benefits plans, beneficiaries, trustees, and/or assigns. (Agreement ¶ 29.)

ii.     Released Claims

"Released Claims" means all claims, rights, demands, liabilities and causes of action that were litigated in the Action against Releasees, as well as claims that could have been pled in this Action based on the factual allegations contained in the Fourth Amended Complaint or any amendments thereto continuing through March 31, 2024, including all claims for failure to provide accurate wage statements, as well as derivative penalties under PAGA relating to wage statements.  The release of claims against Delta will only be valid and enforceable if the settlement Effective Date occurs. (Agreement ¶ 28.)

Class Members who exclude themselves from the Settlement will not release their claims, except that Class Members who submit valid and timely Requests for Exclusion will be deemed Non-Participating Class Members, will still receive a PAGA allocation, and will release all claims for PAGA penalties included in the Released Claims. (Agreement ¶¶ 22, 30.)

**F.     Settlement Administration**

The Parties have agreed to use Rust Consulting ("Rust") as the Settlement Administrator. (Agreement ¶ 32.) Plaintiffs' Counsel requested four bids from settlement administration providers prior to selecting Rust. (Helland Decl. ¶ 4.) Rust's projected itemized costs were expected to be the lowest, and while another firm offered a discount below their itemized costs that would have made them slightly cheaper than Rust, Plaintiffs' Counsel is already working with that firm on two other current settlements. (*Id.*) Plaintiffs' Counsel is not currently working with Rust and believes there is a value in working with multiple administrators. (*Id.*)

The Administrator's duties will include printing, distributing, and tracking documents for this Settlement; calculating estimated Individual Settlement Payments to Class Members and PAGA allocation payments to Non-Participating Class Members; tax reporting; distributing the Individual Settlement Payments, the LWDA Payment, PAGA allocation payments to Non-Participating Class Members, Enhancement Payments, and Attorneys' Fees and Costs; and providing necessary reports and declarations, and other duties and responsibilities set forth herein to process this Settlement, and as requested by the Settling Parties. (Agreement ¶ 33.) Rust's costs are not expected to exceed $35,000 and will be paid from the Gross Settlement

Amount. (*Id.*)

## G.   Settlement Allocations and Distribution of Funds

The Net Settlement Amount will be allocated based on Plaintiffs' Counsel's damages analysis, as calculated from Delta's compensation and employment history records. The allocation and formulas are as follows:

> **PAGA:**  $1,164,787.50 will be allocated to PAGA claims, with $873,585.00 to be paid to the LWDA and $291,202.50 to be allocated to Class Members who were based in California and worked between November 9, 2014 and March 31, 2024. The allocation to Class Members shall be pro rata based on months worked while based in California between November 9, 2014 to March 31, 2024, with a 75% reduced weighting for pay periods after October 7, 2022. Non-Participating Class Members who exclude themselves will still receive a PAGA allocation.

> **Wage Statements:**  Approximately $10,570,212.50 will be allocated to the Class Members on a pro rata basis by pay periods based in California, with a 75% reduced weighting for pay periods after October 7, 2022. There shall be a $4,000 maximum allocation to Class Members.  If the payments to any Class Members exceed $4,000 based on this pro rata allocation, the excess shall be allocated to PAGA claims and distributed as described immediately above.

(Agreement ¶ 43.) The Settlement Administrator shall issue Settlement Payments to Class Members in the form of a check within fourteen (14) calendar days after Delta deposits the Gross Settlement Amount. (Agreement ¶ 44.)

There will be a 120-day check cashing period, after which checks will become void. (Agreement ¶ 58.) The Settlement Administrator will send a reminder seventy-five (75) calendar days after check issuance to all class members who have not negotiated their checks. (*Id.*) There will be a second distribution if the funds represented by uncashed checks are sufficient to allow average payments of at least $50 to each Class Member who negotiated checks. (*Id.*) Otherwise, or after the second distribution, funds represented by uncashed checks will be donated to Legal Aid at Work as *cy pres* recipient. (*Id.*) Legal Aid at Work is a nonprofit legal services

organization, based in San Francisco, that has been assisting low-income, working families for more than 100 years. (*See* https://legalaidatwork.org/our-mission-and-how-we-work/.) Legal Aid at Work helps workers, like class members here, by, among other things, offering free clinics and helplines and free legal information. (*Id.*)

## LEGAL ANALYSIS

"The Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class actions." *McKnight v. Uber Techs., Inc.*, No. 14-cv-05615-JST, 2017 WL 3427985, at *2 (N.D. Cal. Aug. 7, 2017) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)); *see also Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("[O]verriding public interest in settling and quieting litigation" is "particularly true in class action suits.") (quotations omitted). The "decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants, and their strategies, positions, and proof." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000), *as amended* (June 19, 2000) (citation omitted). At the preliminary approval stage, the court's role is to assess whether the settlement "falls within the range of possible approval." *Terry v. Hoovestol, Inc.*, No. 16-cv-05183-JST, 2018 WL 4283420, at *1 (N.D. Cal. Sept. 7, 2018).

Here, the Court should preliminarily approve the settlement because it satisfies the Rule 23 requirements and is fair, adequate, and reasonable.

## I.     THE SETTLEMENT SATISFIES THE RULE 23 REQUIREMENTS FOR PURPOSES OF SETTLEMENT.

The Court recently certified this case as a class action for litigation (ECF No. 128), and the same arguments support certification of the broader settlement class. Plaintiffs submit that preliminary approval is appropriate because the settlement class meets the requirements of a class action pursuant to Rule 23 and Ninth Circuit case law. A trial court has wide discretion in certifying a class for settlement purposes and will be reversed only upon a strong showing that its decision was a clear abuse of discretion. *See Dunleavy v. Nadler*, 213 F.3d 454, 458 (9th Cir. 2000). Rule 23(a) provides that a class action is proper if four requirements are met: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ.

P. 23(a)(1). In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Federal Rule of Civil Procedure 23(b). Where, as here, the parties reach a class settlement for a class that has not yet been certified, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). If the court preliminarily certifies the class and finds the settlement appropriate after "a preliminary fairness evaluation," then the class will be notified, and a final fairness hearing scheduled to determine if the settlement is fair, adequate, and reasonable pursuant to Rule 23. *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA, 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012).

The criteria for class certification are applied differently for a settlement class than a litigation class. "[T]he aspects of Rule 23(a) and (b) that are important to certifying a settlement class are those designed to protect absentees by blocking unwarranted or overbroad class definitions. The focus is on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 558 (9th Cir. 2019).

Here, Plaintiff seeks to certify a class of all current and former California-based flight attendants who worked for Delta at any time from January 9, 2014 through March 31, 2024. (Agreement ¶ 5.) This Class aligns with the classes pled in Plaintiffs' Fourth Amended Complaint, as tailored to the claims at issue and the developments of this litigation. (*See* ECF No. 149.) The class is tailored to the statute of limitations applicable to the claim addressed by that class, to ensure that settlement funds are allocated to Class Members with timely claims. The classes are limited to California-based flight attendants in recognition of the California Supreme Court's rulings in *Oman* and *Ward*. Conditional certification of the settlement classes is appropriate here as all the Rule 23 requirements are met.

## A.  Numerosity is Satisfied

The class contains approximately 4,185 class members. (Helland Decl. ¶ 5.) The numerosity requirement is met where the class is so large that joinder of all members would be

impracticable. *Gay v. Waiters' & Dairy Lunchmen's Union*, 489 F. Supp. 282 (N.D. Cal. 1980), *aff'd*, 694 F.2d 531 (9th Cir. 1982). In order to satisfy this requirement, plaintiffs need not state the "exact" number of potential class members, nor is there a specific number that is required. *See In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 350–51 (N.D. Cal. 2005). It would be impracticable and inequitable to require 4,185 class members to pursue their claims individually. Thus, the class satisfies the numerosity requirement.

### B.     There are Questions of Law and Fact Common to the Class

This case presents common issues of law and fact regarding Delta's wage statements and class members' entitlement to the protection of California law. Delta did not contest commonality during litigation (*see* ECF No. 128 at 2), acknowledging that Delta issued the same form of wage statements to all California-based flight attendants, and this Court has determined that the form of wage statements issued prior to October 7, 2022 failed to comply with California law. These facts support commonality, since "the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 463 (2016). The existence of "shared legal issues with divergent factual predicates is sufficient" to meet the commonality requirement. *Parra v. Bashas', Inc*., 536 F.3d 975, 978 (9th Cir. 2008) (citation and internal quotations omitted).

In granting class certification, the Court's review was limited to the period before Delta's wage statements were revised. The Fourth Amended Complaint expands the class period, but the broader claims still turn on common questions of law and fact, including whether the revised format is compliant with California law, and Delta's entitlement to a good faith defense to wage statements prior to 2022 (an issue Plaintiffs reserved for appeal), and after Delta's latest modifications. As with the class previously certified, the evidence and arguments upon which the settlement class's claims rest are common.

### C.     The Named Plaintiffs' Claim Are Typical of the Class

The Named Plaintiffs' wage statement claims—both for the period covered by the certified class and the period covered by the settlement class—are typical of the class because the Named Plaintiffs received the same form of wage statement that other class members

received. *See* ECF No. 128 at 3. "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (citation and internal quotations omitted); *see also Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1020 (9th Cir. 1998). Additionally, the Named Plaintiffs have no conflicts of interests with the Class, sharing in a desire to recover for Delta's alleged wrongs.

### D.   Adequacy is Satisfied

The Class Members have been adequately represented in this case. *See* ECF No. 128 at 3. Under the adequacy of representation requirement in Rule 23(a)(4), the Court asks: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 130 F.3d at 1020. Named Plaintiffs Eichmann and Flores have been dedicated representatives throughout the case, sitting for their first deposition years ago, and then appearing for subsequent depositions after class certification in the lead up to trial. The Named Plaintiffs have continued to diligently serve as class representatives through the long appeals process. They have participated in multiple mediations, and in the settlement conference that ultimately led to the resolution here, both attending until 7:30 pm on the initial conference day and then staying involved through multiple subsequent sessions. (Helland Decl. ¶ 6.) Further, as the Court previously found, Plaintiffs' Counsel are adequate. Nichols Kaster, LLP ("NKA") is a qualified firm with extensive experience in class action litigation. (Helland Decl. Ex. 2, Nichols Kaster Firm Resume.)  The majority of NKA's practice is concentrated on representing employees in class action suits, and the firm is currently lead or co-counsel in many class or collective actions in state and federal courts across the country. (Helland Decl. ¶ 8.) Plaintiffs' Counsel have been actively prosecuting this action for years, securing successful decisions from this Court and on appeal, and ultimately obtaining a substantial monetary settlement for Class Members.

### E.   A Class Action is Superior to Other Alternatives

As the Court previously held, this case is maintainable under Rule 23(b)(3) because

12

questions of law or fact common to class members predominate over any question affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. ECF No. 128 at 4; Fed. R. Civ. P. 23(b). The questions of law and fact regarding Delta's alleged failure to provide accurate wage statements, and whether Delta may assert a good faith defense to wage statement liability, are common to the class and predominate over any individual issues. Moreover, settlement on a class-wide basis will promote greater efficiency. *See Valentino v. Carter–Wallace, Inc*., 97 F.3d 1227, 1235 (9th Cir. 1996) ("Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation."). Thus, Delta's liability can and should be settled on a class-wide basis only once rather than many separate times as to each Class Member.

The criteria for class certification are met and this Court should preliminarily certify the proposed class for settlement purposes. Plaintiffs further request that the Court appoint them as Class Representatives for the purposes of settlement and that the Court appoint Plaintiffs' Counsel as Class Counsel.

## II.      THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE.

In deciding whether to approve a proposed class action settlement, the Court must determine whether a proposed settlement is "fair, adequate and reasonable." O*fficers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *see also* Fed. R. Civ. P. 23(e)(1)(C). Although there is no "specific benchmark for PAGA settlements, either on their own terms or in relation to the recovery on other claims in the action," district courts in the Ninth Circuit have evaluated PAGA settlements using the Rule 23 standard for evaluating settlements. *See Ramirez v. Benito Valley Farms, LLC*, 2017 WL 3670794, at *3 (N.D. Cal. Aug. 25, 2017) (citation omitted); *see also Jordan v. NCI Grp., Inc*., 2018 WL 1409590, at *2 (C.D. Cal. Jan. 5, 2018) ("[T]he Court will approve the PAGA settlement upon a showing that the settlement terms are fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes."). The factors trial courts must balance in evaluating a proposed settlement include:

(1) the strength of the plaintiffs' case;

(2) the risk, expense, complexity, and likely duration of further litigation;

(3) the risk of maintaining class action status throughout the trial;

(4) the amount offered in settlement;

(5) the extent of discovery completed and the stage of the proceedings;

(6) the experience and views of counsel;

(7) the presence of a governmental participant; and

(8) the reaction of the class members to the proposed settlement.

*Pitarro v. DSV Air & Sea, Inc.,* No. 19-CV-00849-SK, 2021 WL 6499973, at *1 (N.D. Cal. Jan. 28, 2021) (citing *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). In addition to considering the above factors, a court also must ensure that "the settlement is not the product of collusion among the negotiating parties.*" In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011). As detailed below, these factors weigh heavily in favor of granting preliminary approval.

### A. The Strength of Plaintiffs' Case, Weighed Against the Risk, Expense, Complexity and Likely Duration of Further Litigation, and the Risk of Maintaining Class Action Status Through Trial, Supports Approval.

The first three factors collectively require the Court to assess the "likelihood of success on the merits and the range of possible recovery" versus the risks of continued litigation and maintaining class action status through the duration of the trial. *See Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010). While the court must assess the likelihood of success on the merits, "the court need not reach any ultimate conclusions on the contested issues" because it is often "the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice*, 688 F.2d at 625. These three factors weigh in favor of approving settlement when the defendant has "plausible defenses that could have ultimately left class members with a reduced or non-existent recovery." *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 999 (N.D. Cal. 2015). These factors support approval here.

In this case, even though many of the merits issues have been litigated to decision, future

litigation presented substantial uncertainty. For example, while Plaintiffs prevailed on the merits of their PAGA claims, the amount of PAGA penalties are within the Court's discretion. *See Carrington v. Starbucks Corp*., 30 Cal. App. 5th 504 (2018) (rejecting plaintiff's request for nearly $70 million in PAGA penalties and affirming the superior court's imposition of .2% of the total penalties). Accordingly, Plaintiffs could litigate this case through trial only to receive a very small PAGA award.

Similarly, while the Court had ruled on the wage statement claims, if the case proceeded through trial, a judgment would only have opened the door for the Parties to appeal. Delta would likely have appealed the Court's finding that the former wage statement format did not comply with the Labor Code, and that it was not entitled to a good faith defense for the entire time period. On the other side, Plaintiffs held out hope of overturning this Court's decision that Delta was entitled to a good faith defense prior to 2022. At the time of settlement, this was a live issue before the California Supreme Court in *Naranjo II*, which led to considerable uncertainty and risk for both parties. The uncertainty and duration of future litigation supports approval of the settlement.

**B.    The Amount Offered in Settlement Weighs Strongly in Favor of Preliminary Approval.**

In the face of the above risks, Plaintiff negotiated an excellent result for the class and the LWDA. In evaluating the amount of recovery the court must examine the settlement as a whole for overall fairness. *See Officers for Justice*, 688 F.2d at 628. In addition, "it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 527 (C.D. Cal. 2004).

This settlement provides an exemplary result for the class on their Section 226 claims. At the time of the settlement conference Plaintiffs valued the wage statement claims at $2,884,200 for the time period covered by the Court's summary judgment ruling. (Helland Decl. ¶ 9.) If Plaintiffs were able to secure a reversal of the Court's decision on good faith, the value of these claims would have increased to $10,325,650 from the start of the class period through October

15

2022.[3] (Helland Decl. ¶ 9.) The ~$7.5 million difference between these two numbers represents the *Naranjo II* appellate risk. Although Plaintiffs have not reviewed *Naranjo II* in detail with respect to potential appellate arguments here, it is safe to say that the Supreme Court's acceptance of the good faith defense significantly reduces Plaintiffs' chances of obtaining the $10.3 million number on appeal.

The settlement adds the time period from October 2022 through March 2024. Counsel calculates the value of the full value of those Section 226 wage statement penalties to be $953,700. (Helland Decl. ¶ 9.) Recognizing the difficulty of recovering penalties for the period after October 2022—which includes both the difficulty in succeeding on a substantive challenge and the difficulty of overcoming the good faith defense articulated in *Naranjo II* after Delta changed its wage statements in response to court order—those claims are discounted by 75% in the allocation. As a result, the wage statement class will receive approximately $10,570,212.50 through the settlement. In other words, the class members will receive the full value of their wage statement claims from January 2014 through October 2022, and 25% of the possible penalties from October 2022 through the release date (i.e., March 31, 2024). Bearing in mind that the time period from January 2014 through January 2022 could only be recovered if Plaintiffs found a post-*Naranjo II* avenue for reversing this Court's summary judgment order on good faith, and that the post-October 2022 class faces a double-layer good faith challenge, the result here is excellent.

Plaintiffs also recovered $1,164,787.50 in PAGA penalties, with $873,585.00 to be paid to the LWDA and $291,202.50 to be allocated to PAGA Members per statute. Plaintiffs valued their PAGA penalty claims at approximately $52,776,800. (Helland Decl. ¶ 9.) However, as the Court is well aware, the theoretical maximum PAGA penalties often greatly exceeds the likely recovery at trial. Moreover, "where a settlement for a Rule 23 class is robust, the statutory purposes of PAGA may be fulfilled even with a relatively small award on the PAGA claim itself, because such a settlement not only vindicates the rights of the class members as employees, but

---

[3] The settlement also covers the time period after the October 2022 wage statement revisions and will allocate payment to Class Members for this period. At the time of the settlement conference, Plaintiffs had not precisely valued those claims because they had been excluded from the case.

may have a deterrent effect upon the defendant employer and other employers, an objective of PAGA." *Viceral v. Mistras Grp., Inc.*, 2016 WL 5907869, at *9 (N.D. Cal. Oct. 11, 2016) (internal quotation omitted). Given the substantial class award here, which covers an almost identical class as the PAGA claims, the amount allocated to PAGA is more than sufficient.[4]  For example, a recent hybrid PAGA/FLSA case involving unpaid wages to farm workers approved a PAGA settlement of just under $200,000 (after fees and expenses) in the face of almost $20 million in potential PAGA exposure. *Hernandez v. Dutton Ranch Corporation*, 2021 WL 5053476 (N.D. Cal. Sept. 10, 2021) (granting final approval to settlement in which PAGA allocation represented "approximately 2%-4% of the PAGA exposure,"); *see also Cuzick v. Zodiac U.S. Seat Shells, LLC*, 2017 WL 4536255, at *1-2 (N.D. Cal. Oct. 11, 2017) (granting preliminary approval for $952,000 gross settlement of off-the-clock, and meal and rest break claims, for 1,168 individuals for a gross average recovery of approximately $800 per person); *Jennings v. Open Door Mktg., LLC*, No. 15-cv-04080-KAW, 2018 WL 4773057, at *9 (N.D. Cal. Oct. 3, 2018) (approving a PAGA settlement of 0.6% of its total value because of the "risks of no recovery"); *McLeod v. Bank of Am., N.A.*, No. 16-CV-03294-EMC, 2018 WL 5982863, at *4 (N.D. Cal. Nov. 14, 2018) (finding settlement for $50,000 in PAGA penalties adequate where the total possible recovery for penalties was estimated at $4.7 million).

### C.    The Stage of the Proceedings Also Favors Preliminary Approval.

The extent of discovery is relevant in determining the parties' knowledge of the case. As described above, the parties have engaged in substantial litigation prior to this settlement. Over the course of litigation some of Plaintiffs' claims were eliminated and some were confirmed on the merits, and as a result the range of likely outcomes came into focus. At the same time, the parties reached a settlement prior to engaging in the next steps of litigation—a class and PAGA trial—which would have been time consuming and expensive and would have resulted in a judgement that surely would have been tested on appeal. After nine years of litigation, the Parties found an opportune time to settle this case.

---

[4] Pursuant to Northern District of California guidelines, Plaintiffs' Counsel provides a comparison to *Merante v. American Institute for Foreign Study, Inc.*, Case No. 3:21-cv-03234-EMC (N.D.Cal.) in the Declaration of Matthew C. Helland. (*See* Helland Decl. ¶ 10.)

**D.      The Considerable Experience and Strongly Supportive Views of Counsel Weigh in Favor of Preliminary Approval.**

"In determining whether a settlement is fair and reasonable, the opinions of counsel should be given considerable weight both because of counsel's familiarity with the litigation and previous experience with cases." *Slezak v. City of Palo Alto*, Case No. 16-cv-3224-LHK, 2017 WL 2688224, at *5 (N.D. Cal. June 22, 2017). Plaintiffs' and Defendant's Counsel are experienced attorneys who are familiar with PAGA, wage and hour class actions. (Helland Decl. ¶¶ 8, 14, 15.) Counsel is especially well-versed in the factual and legal issues of this case, having litigated to the California Supreme Court and Ninth Circuit. Plaintiffs' Counsel fully supports the resulting settlement as fair, reasonable, and adequate given the risks of litigation. (Helland Decl. ¶ 14.) This factor weighs in favor of approval.

**E.      The Absence of a Government Participant Favors Approval.**

At the outset of the case, Plaintiffs exhausted with the LWDA with no response. Plaintiffs will file the settlement agreement with the LWDA in conjunction with filing this motion. (Helland Decl. ¶ 20.) At the moment, there is no governmental entity involved other than the LWDA which so far has chosen not to intervene. This factor also favors approval.

**F.      The Reaction of Class Members to The Proposed Settlement is Not Yet Suitable for Review.**

The reaction of the class members will be best assessed at the final approval hearing when the court can evaluate how many class members submitted objections. *See Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 967 (9th Cir. 2009). Thus, this factor neither favors nor disfavors preliminary approval, as the Court will be able to better consider the reaction of class members upon motion for final approval.

### III. THE PAGA SETTLEMENT WARRANTS APPROVAL

The PAGA portion of a settlement must be reviewed and approved by the Court. Cal. Lab. C. § 2699(l)(2). Neither the Act nor state law squarely address the standard of review for PAGA claims. *See, e.g. Flores v. Starwood Hotels & Resorts Worldwide, Inc.* 253 F.Supp.3d. 1074, 1075 (C.D. Cal. 2017) ("[N]either the California legislature, nor the California Supreme Court, nor the California Courts of Appeal, nor the California Labor & Workforce Development Agency (LWDA)" has definitively addressed the standard of review for PAGA). "[C]lass action

18

requirements . . . need not be met when an employee's representative action against an employer is seeking civil penalties under [PAGA]." *Arias v. Sup. Ct.*, 46 Cal.4th 969, 975 (2009). PAGA settlements must be considered in the context of "the overall settlement of the case" and need not allocate any portion of the recovery to PAGA penalties to warrant court approval. *Nordstrom Com'n Cases,* 186 Cal.App.4th 576, 589 (2010).

Here, the $1,164,787.50 PAGA allocation represents 2.2% of the estimated value of the PAGA claims. (Helland Decl. ¶ 9). The PAGA allocation amounts to 7.3% of the gross settlement, which is considerably more than the portions that are routinely approved in other hybrid class and PAGA actions. *See, e.g.*, *Boyd v. Bank of Am.*, 2014 WL 6473804, at *8 (C.D. Cal. Nov. 18, 2014) (approving PAGA penalties worth 0.32% of gross settlement); *Viceral v. Mistras Grp. Inc.*, 2017 WL 661352, at ** 1, 3 (N.D. Cal. Feb. 17, 2017) (approving PAGA penalties worth 0.33% of gross settlement and worth 0.15% of total estimated value of PAGA claims); *Alexander v. FedEx Ground*, 2016 WL 1427358, at *2 (N.D. Cal. Apr. 12, 2016) (0.7% PAGA allocation); *Vazquez v. USM Inc.*, 2016 WL 612906, at *1 (N.D. Cal. Feb. 16, 2016) (0.67%); *Cruz v. Sky Chefs*, 2014 WL 7247065, at *3 (N.D. Cal. Dec. 19, 2014) (0.57%).

## IV. PLAINTIFFS' REQUESTED ATTORNEYS' FEES AND COSTS ARE FAIR AND REASONABLE

Class Counsel seeks attorneys' fees of $3,975,000, representing twenty-five percent of the $15,900,000 Settlement. (Agreement § 14.) Plaintiffs will file a motion for approval of their attorneys' fees, costs, and named Plaintiff enhancements during the notice period, in accordance with Ninth Circuit procedure. *See In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010). Nevertheless, Plaintiffs address these issues preliminarily here.

The United States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund … is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "The case law construing what is a reasonable fee applies uniformly to all federal fee-shifting statutes." *Haworth v. State of Nevada*, 56 F.3d 1048, 1051 (9th Cir. 1995). The Ninth Circuit's benchmark for presumptively reasonable fees in the common fund context is twenty-five (25) percent of the gross settlement

1    amount. *See In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 942 (9th Cir.

2    2011); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

3    In assessing whether the percentage requested is fair and reasonable, courts generally consider

4    "the result achieved, the risk involved in the litigation, the skill required and quality of work by

5    counsel, the contingent nature of the fee, awards made in similar cases, and the lodestar

6    crosscheck." *Nwabueze v. AT & T Inc.*, 2013 WL 6199596, at *10 (N.D. Cal. Nov. 27, 2013).

7            Plaintiffs' requested fees of 25% of the gross settlement amount is presumptively

8    reasonable  since the Ninth Circuit's typical range of common fund attorneys' fee awards is 20%

9    to 33 1/3% of the total settlement value, with 25% "considered the benchmark." *Powers v.*

10   *Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). "Although 25% is the benchmark for a reasonable

11   fee award, in most common fund cases, the award exceeds that benchmark." *Deluca v. Farmers*

12   *Ins. Exch.*, 2020 WL 5071700, at *7 (N.D. Cal. Aug. 24, 2020) (quotation and citation omitted);

13   s*ee also Fronda v. Staffmark Holdings, Inc.*, 2018 WL 2463101, at *9 (N.D. Cal. June 1, 2018)

14   (approving 1/3 of the settlement fund, or $1,866,666.67 in fees); *Willner v. Manpower Inc.*, 2015

15   WL 3863625, *7 (N.D. Cal. June 22, 2015) (awarding 30 percent of the common fund wage and

16   hour settlement); *Lusby v. GameStop, Inc.*, 2015 WL 1501095, at *4 (N.D. Cal. Mar. 31, 2015)

17   (awarding 33 percent of a common fund wage and hour settlement).

18           Plaintiffs' Counsel has spent considerable time litigating this case, including but not

19   limited to, investigating the case, drafting and amending the complaints, drafting and responding

20   to discovery, taking and defending depositions, briefing cross motions for summary judgment

21   and for reconsideration, briefing and arguing the case on appeal to the Ninth Circuit and the

22   California Supreme Court, briefing class certification, performing damage calculations and

23   preparing a demand, participating in two mediations and one settlement conference, drafting the

24   settlement agreement, and drafting this motion. (Helland Decl. ¶ 11.) Plaintiffs' Counsel's

25   lodestar is approximately $1,701,198.00. (*Id.* ¶ 17.) Accordingly, a 25% fee award would

26   represent a lodestar multiplier of approximately 2.34.  An award above Plaintiffs' Counsel's

27   lodestar is reasonable given the excellent result for the Class. Moreover, Plaintiffs' Counsel took

28   this case on a contingency fee basis and assumed a significant risk that there would be no

recovery. (Helland Decl. ¶ 12.)

To date, Plaintiffs' Counsel has incurred approximately $58,292.38 in costs (Helland Decl. ¶ 18.) These costs include mediation fees, deposition transcript costs, travel costs, electronic research charges, case advertising costs, document retention database charges, process server charges, and filing fees. (*Id.*) These costs are reasonable, were necessary for successful prosecution of the case. Plaintiffs' Counsel will provide a final accounting of costs in conjunction with their fee petition.

## V.  THE COURT SHOULD AWARD AN ENHANCEMENT PAYMENT TO THE CLASS REPRESENTATIVES

Plaintiffs request the Court's approval of a Class Representative an Enhancement Payment ("Enhancement Payment") in the amount of $20,000 to each Named Plaintiff to be paid to them in addition to their settlement payment. In determining whether an enhancement award is warranted, "the court should consider . . . the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1181 (S.D. Cal. 2016) (internal quotation omitted).

The requested awards here are justified by the unique facts of this case. Throughout the uncommonly long duration, the Named Plaintiffs have been actively involved, and instrumental in the results obtained. The Named Plaintiffs performed substantial work in support of the case, including responding to discovery and sitting for two depositions each, years apart. (Helland Decl. ¶ 6.) They participated in two formal mediations, and in a lengthy settlement conference and follow up sessions that resulted in this settlement. Named Plaintiffs were ready to participate in trial. (*Id.*) Through it all, both Named Plaintiffs were (and remain) current employees. (*Id.*) This proved invaluable because Named Plaintiffs were able to provide information on Delta's policy changes and because they remained representative of the class throughout. (*Id.*)

 In addition to this formal work, Named Plaintiffs were invaluable in assisting counsel to learn about the history and customs of a unique and insular industry, frequently providing

explanations of airline practices to assist the case. (Helland Decl. ¶ 7.) Named Plaintiffs have remained committed to the case, including through the lengthy appeal periods. (*Id.*) Without Named Plaintiffs, the aggrieved employees and members of the class would likely have received no recovery. Moreover, in Plaintiffs' Counsel's experience many flight attendants are wary of suing their employer. (Helland Decl. ¶ 7.) The industry is small, and with so much of flight attendants' compensation dependent on years of service, many flight attendants are concerned that participating in litigation will be harmful to their careers and earning potential. (*Id.*) Thus, the Enhancement Payments of $20,000 each, which represent approximately 0.25% of the Total Settlement Amount, are reasonable and should be approved. Named Plaintiffs will provide further briefing on this issue at or prior to final approval.

## CONCLUSION

For these reasons Plaintiffs ask that the Court grant preliminary approval to this settlement, certify the settlement class, appoint Plaintiffs' Counsel as Class Counsel and Plaintiffs as the Class Representatives, make a preliminary finding that the settlement is fair, reasonable, and adequate, approve Legal Aid at Work as the *cy pres* recipient, approve Rust as the notice administrator and approve the Parties' proposed notice plan.

DATED: May 15, 2024     NICHOLS KASTER, LLP

          By:  *s/Matthew Helland*
            Matthew Helland

          Attorneys for Plaintiffs