Matthew C. Helland (CA State Bar No. 250451)
helland@nka.com
Daniel S. Brome (CA State Bar No. 278915)
dbrome@nka.com
NICHOLS KASTER, LLP
235 Montgomery St., Suite 810
San Francisco, CA 94104
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

*Attorneys for Plaintiffs and the putative class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEV ANAND OMAN, TODD EICHMANN, MICHAEL LEHR, and ALBERT FLORES, individually, on behalf of others similarly situated, and on behalf of the general public,<br><br>Plaintiff,<br><br>vs.<br><br>DELTA AIR LINES, INC.,<br><br>Defendant. | Case No. 3:15-cv-00131-WHO<br><br>**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**<br><br>Judge:  Honorable William H. Orrick |

Plaintiffs Todd Eichmann and Albert Flores ("Plaintiffs") and Defendant Delta Air Lines, Inc. ("Delta") (collectively, "the Parties") make this joint submission responding to the issues raised by the Court at the hearing on Plaintiffs' Motion for Preliminary Approval of Class/PAGA Settlement and in the Court's Minute Order issued on June 20, 2024 ("June 20 Minute Order"). ECF No. 156.

## I.        The Scope of the Settlement Release Is Appropriate.

Pursuant to the Parties' proposed Stipulation of Class and PAGA Action Settlement and Release, in exchange for receiving significant settlement payments, the Class Members who do not request to be excluded and preserve their claims would release a narrow subset of wage and hour claims based on the factual allegations pled in Plaintiffs' complaints, including causes of actions adjudicated in this case.  Specifically:

> all claims…and causes of action that were litigated in the Action…as well as claims
> that could have been pled in this Action based on the factual allegations contained
> in the operative Fourth Amended Complaint, any preceding complaints, and/or any
> further amended complaints…including, without limitation, all claims for alleged
> violation of the California Labor Code and IWC Wage Order No. 9 for failure to
> pay minimum wage, failure to provide accurate wage statements, failure to timely
> pay wages, and failure to pay earned wages at the end of employment stemming
> from unpaid wages, as well as penalties under PAGA relating to such unpaid
> minimum wages, wage statements, and timely payment of wages.

In the July 20 Order, the Court asks what the legal justification is for releasing "all wage and hour claims raised at any time in the plaintiffs' complaints" focusing on the inclusion of the minimum wage and derivative waiting time claims that were previously dismissed as to Plaintiffs only.

As outlined below, the release of those claims is wholly appropriate under the Ninth Circuit's identical factual predicate test, because it only releases claims that have been pled in this action. Further, Plaintiffs respectfully submit that the settlement delivers excellent value to the class even with the release of those claims, because the decisions from this Court and the

California Supreme Court effectively adjudicated the minimum wage claims for all class members under Plaintiffs' theory (i.e., the facts alleged in the complaint). Moreover, given the result in *Naranjo II*—handed down after the parties settled the case—it would be impossible for Plaintiffs to secure the same deal in a renegotiated agreement. Forcing Plaintiffs to renegotiate the release post-*Naranjo II* will almost certainly result in less money to the class, in the name of preserving an empty right to bring claims that, for all practical purposes, were fully adjudicated in Delta's favor.

## A.  The Release is Justified Because it is Based on the Identical Factual Predicate as the Complaint

The Ninth Circuit utilizes the "identical factual predicate" test to determine the proper scope of a release in a class action.  *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (2010). Under this test, a class settlement "may preclude a party from bringing a related claim in the future 'even though the claim was not presented and might not have been presentable in the class action,' but only where the released claim is 'based on the identical factual predicate as that underlying the claims in the settled class action.'" *Id.* (quoting *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008).) Here, the settlement agreement comports with the "identical factual predicate test" because it only releases claims that have been and "could have been pled in this Action based on the factual allegations contained in the operative Fourth Amended Complaint, any preceding complaints, and/or any further amended complaints, continuing through March 31, 2024 . . . ." (ECF No. 150-2, ¶ 28.) The release, thus, includes the minimum wage claims based on the facts alleged in the complaint and claims for the failure to pay earned wages at the end of employment stemming from those unpaid minimum wages. (*Id.*) This release is proper, and commonly accepted under the identical factual predicate test. *See, e.g.*, *Rangel v. PLS Check Cashers of California, Inc.*, 899 F.3d 1106, 1111 (9th Cir. 2018) (discussing as "common and unobjectionable" a settlement release provision that referred to claims "based on the factual allegations in the Complaint.").

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
CASE NO. 3:15-CV-00131-WHO

A review of the complaint, this Court's summary judgment order, and the Supreme Court's decision reveals that the Supreme Court's decision eliminated all California minimum wage claims that would be covered by the release, regardless of the procedural posture of the underlying summary judgment decision. Because no minimum wage claims based on the facts alleged in the complaint survived the Supreme Court's decision, the release is not overbroad. And to the extent a putative class member disagrees, they have ample opportunity to exclude themselves from the class and settlement and preserve their rights to pursue the claims covered by the release.

To recap the litigation history: Plaintiffs' minimum wage claims focused on Delta's Work Rules. Plaintiffs pled that "Defendant's pay structures are set out in Defendant's 'Work Rules,' and Defendant admits that it applied these rules when paying its flight attendants, including Plaintiff." (Compl., ECF No. 1, ¶ 13; First Amended Complaint ("FAC"), ECF No. 24, ¶ 17; Second Amended Complaint ("SAC"), ECF No. 52, ¶ 13.) The complaints alleged that, under Delta's Flight Pay Formula, "Plaintiffs and Class Members are not paid for, among other things, work performed at the airport before or after their flight, for time spent onboard the aircraft before the doors are closed, or for time spent at the airport between flights. Additionally, if a flight is delayed prior to boarding, flight attendants paid under the Flight Pay formula are not paid for time spent waiting." (Compl. ¶ 17; FAC ¶ 21; SAC ¶ 23.) Plaintiffs further alleged that "[b]ecause Delta pays its flight attendants primarily under the Flight Pay formula, Delta regularly fails to pay its flight attendants for all hours worked." (Compl. ¶ 18; FAC ¶ 22; SAC ¶ 24.) Plaintiffs alleged that Delta's "Duty Period Credit Pay formula only pays flight attendants for half their hours worked." (Compl. ¶ 19; FAC ¶ 23; SAC ¶ 25.) Plaintiffs alleged that the Duty Period Average and Trip Credit formulas also failed to pay for all hours worked. (Compl. ¶ 21; FAC ¶ 25; SAC ¶ 27.)

In their minimum wage cause of action, Plaintiffs pled: "California law does not allow an employer to establish compliance with minimum wage requirements by averaging rates earned by an employee over an entire shift. **Each of Defendant's compensation schemes** violate

1   California's minimum wage requirements because they fail to pay Plaintiff and Class Members

2   for all hours worked." (Compl. ¶ 39; FAC ¶ 43; SAC ¶ 46 (emphasis added).) The Amended

3   Complaint and Second Amended Complaints attached relevant sections of the Work Rules. (ECF

4   No. 24-1; ECF No. 52-1.)

5          The complaints also alleged derivative waiting time claims based on the same facts:

6   "[b]ecause Defendant did not pay Plaintiff[s] for all hours worked, Defendant did not provide

7   Plaintiff and other flight attendants all wages owed at the time they were no longer employed by

8   Defendant." (Compl. ¶ 23; FAC ¶ 22; SAC ¶ 24.) The waiting time cause of action pleads:

9   "Plaintiff and Class Members are entitled to unpaid minimum wages, but to date have not

10  received all such compensation. Defendant has committed and continues to commit the acts

11  alleged herein knowingly and willfully, with the wrongful and deliberate intention of injuring

12  Plaintiff and Class Members, in conscious disregard of Plaintiff's and Class Members' rights."

13  (Compl ¶ 64; FAC ¶ 68; SAC ¶ 53.)

14         In granting Delta's motion for summary judgment, this Court focused on the operation of

15  the work rules. It held: "**Delta's Work Rules** do not implicate the wrongs identified in *Armenta*.

16  Delta is not arguing, as the *Armenta* defendant did, that it can avoid paying Flight Attendants for

17  certain hours on Duty because when considering all hours on Duty the average amount earned

18  exceeds California's minimum wage floor. Delta is instead applying formulas that expressly

19  consider all hours worked in the first instance." *Oman v. Delta Air Lines, Inc.*, 153 F. Supp. 3d

20  1094, 1104 (N.D. Cal. 2015) (emphasis added). The Court further held: "**Delta's Work Rules** do

21  not suffer from the defect identified by the *Cardenas* court, where the applicable pay formula did

22  not 'calculate' for the pre and post shift duties required by the employer. Instead, t**he Work**

23  **Rules expressly consider all hours worked**, and a Flight Attendant will always be paid the

24  highest value for each Rotation worked under the applicable formulas." *Id.* at 1105 (emphasis

25  added). And the Court held: "**Delta's Work Rules ensure that Flight Attendants are paid for**

26  **all hours worked**, based on the minimum guarantee in the Bid Packet and considering all hours

27

28

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
CASE NO. 3:15-CV-00131-WHO

worked during a Rotation." *Id.* at 1105–06 (emphasis added). The Court concluded its decision by holding:

> The facts of *Gonzalez*, like each of the other cases relied upon by plaintiffs, are significantly different from the facts before me. Delta is not attempting to avoid paying an agreed-to hourly rate for specific tasks and is not using a post-hoc averaging to ensure the state's minimum wage floor is met (as allowed by FLSA). Delta's Work Rules function in a different, fully-disclosed way to ensure that Flight Attendants are paid for each hour worked on their Rotations. **Delta's Work Rules do not violate California's minimum wage requirements** and, therefore, summary judgment must be granted to defendant.

*Id.* at 1106 (N.D. Cal. 2015) (emphasis added). In sum, while this Court's decision on the minimum wage claims was reached before class certification, it was grounded in an analysis of the way Delta's compensation rules operate broadly and was not driven by facts specific to the Named Plaintiffs.

This case arrived at the California Supreme Court on certified questions. Regarding the minimum wage claim, the question was "Does the *Armenta/Gonzalez* bar on averaging wages . . . apply **to a pay formula** that generally awards credit for all hours on duty, but which, in certain situations resulting in higher pay, does not award credit for all hours on duty?" *Oman v. Delta Air Lines, Inc.*, 9 Cal. 5th 762, 772 (2020) (citations omitted) (emphasis added). Like this Court, the Supreme Court reviewed the operation of Delta's work rules, as opposed to Plaintiffs' individualized work experiences, to adjudicate the minimum wage claim. And like this Court, the Supreme Court found that the **Work Rules comply with the law**. The Court first found that "Delta's Work Rules, which are disclosed to all its flight attendants, promise to compensate attendants by the rotation rather than by particular hours worked." *Id.* at 783. The Court then held that "**Delta's four-formula method for calculating compensation guarantees that flight attendants are always paid above the minimum wage** for the hours worked during each rotation without borrowing from compensation promised for other rotations." *Id.* at 784 (emphasis added). The Court rejected Plaintiffs' arguments that the work rules engaged in impermissible borrowing, finding that Plaintiffs' "reading [of the work rules] is unsound." *Id.* at 785. In affirming this Court, the Supreme Court held definitively that Delta's pay structure does

1   not violate California's minimum wage laws: "**Delta's Work Rules** reflect a promise to pay by

2   the rotation, and for each rotation, the compensation Delta promises will, no matter which of the

3   four formulas applies, always exceed the state minimum wage per hour worked. Thus, **Delta**

4   **satisfies state minimum wage law** without ever needing to compromise its contractual

5   commitments." *Id.* at 788 (emphasis added).

6       In short, the parties' cross motions for summary judgment were designed to test the

7   legality of Delta's Work Rules, and that is what they did. The California Supreme Court spoke in

8   no uncertain terms when it held that the Work Rules do not violate the law. By ruling in this way,

9   the California Supreme Court eliminated **all potential minimum wage claims** (and derivative

10  waiting time claims) based on the facts alleged in the complaint; namely, that Delta's Work

11  Rules, by their operation, fail to compensate flight attendants for all hours worked by treating

12  certain work periods as unpaid. Those are the only minimum wage claims that are eliminated as

13  part of the release. The nature of the Supreme Court's decision means it is irrelevant that the

14  appeal technically involved only the named Plaintiffs' minimum wage claims.[1] The release is

15  proper under Ninth Circuit case law because it is tied to the facts alleged in the complaint,

16  including claims that were resolved during the course of litigation.

17          **B.      The Settlement Appropriately Values the Claims Being Released.**

18      A related question is whether the settlement properly values released claims. *See In re*

19  *Uber FCRA Litig.*, No. 14-CV-05200-EMC, 2018 WL 2047362, at *4 (N.D. Cal. May 2, 2018)

20  (class settlements may release claims not asserted in the case, but "the adequacy of a settlement

21  must take into account not only the potential verdict value of the claims brought in the suit, but

22  the potential value of claims released"). Here, the value of class members' California minimum

23  wage claims is zero, based on the Supreme Court's decision. Accordingly, it is completely

24  appropriate that the settlement assigns no value to the eliminated claims. For example, in *Uber*

25  *FCRA Litigation*, Judge Chen considered an objection asserting that the class release included

26  individual state law claims for statutory penalties that were not pled in the case. *See id.*

27  
28  
[1] The current version of Delta's work rules applies essentially the same structure that Plaintiffs' challenged in this case. *See* Frederick Decl. Exs. 1-2.

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFFS'
                                        UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
                                        CASE NO. 3:15-CV-00131-WHO

1   Judge Chen held the settlement was reasonable and appropriate even though it delivered less than

2   1% of potential verdict value even *without* considering these statutory claims, and that "[t]he

3   added value of ICRAA and other claims released does not materially change the calculus." *Id.*

4   The same is true here; because the likelihood of recovering anything for the minimum wage and

5   derivative waiting time claims released in the settlement is zero, the inclusion of these claims

6   "does not materially change the analysis." *Id.* And if any individual class member wants to pursue

7   those released claims they "may opt out and pursue that claim on an individual basis." *Id.*

8         Similarly, Judge Carter in the Central District considered a settlement that did not allocate

9   any funds to a claim with little chance of success. *See Vinh Nguyen v. Radient Pharms. Corp.*,

10   2014 WL 1802293 (C.D. Cal. May 6, 2014). The court deferred to the reasoned judgment of

11   counsel (and their experts) that the claims had no settlement value:

12       The Court sees no reason to disagree with [counsel's] judgment of their own case
    on this record, and finds it is highly unlikely the in-and-out traders could prove any

13       damages caused by Radient's alleged misrepresentation. The Objector is correct that
    proving in-and-out claims is not impossible, but there is no evidence that the in-and-

14       out traders *in this case* could have done so. On this basis, the plan of allocation
    reasonably does not include values for in-and-out shares. The plan of allocation

15       reasonably and fairly represents injuries and claims on the merits.

16   *Id.* at *8. The same is true here. Because this Court and the California Supreme Court effectively

17   eliminated California minimum wage claims (and derivative waiting time claims) based on the

18   operation of the work rules, it is reasonable and appropriate that the settlement does not allocate

19   funds to those non-existent claims. *See*, *e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 461

20   (9th Cir. 2000), *as amended* (June 19, 2000) (affirming denial of an objection to a settlement that

21   did not allocate any funds to a large portion of the class because those class members did not have

22   cognizable damages).

23         Further, the monetary value of the settlement is more than adequate, even without

24   allocating money to the now non-existent minimum wage claims, particularly in light of the post-

25   settlement developments that make the claims that *are* valued in the settlement considerably more

26   challenging. As outlined in the Motion for Preliminary Approval, the Section 226 wage statement

27   claims are worth approximately $2,884,200 as the case is currently situated, because the claims

28

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
CASE NO. 3:15-CV-00131-WHO

1    only include the period between January and October 2022. If Plaintiffs were able to obtain a

2    reversal on appeal of this Court's decision regarding Delta's good faith defense prior to January

3    2022, the value of those claims would have increased by over $7.5 million.[2]

4         Success on that appeal would have depended on the legal standard applied to such claims

5    of good faith— the *Naranjo II* issue. (*See* Plaintiffs' Motion for Preliminary Approval, ECF No.

6    150 at 15-16.) When the parties inked the settlement agreement, *Naranjo II* had not been decided

7    and the vast majority of the settlement value for the class was driven by the risk that the *Naranjo

8    II* decision could provide Plaintiffs sufficient grounds to overturn the Court's decision here.  But

9    *Naranjo II* did not go the employees' way. As such, the appellate risk Delta potentially faced

10   changed dramatically, and it is highly unlikely that a settlement now would produce the same

11   value. Under the settlement, class members will receive their *full allotment of pre-January 2022

12   Section 226 wage statement penalties* despite intervening authority likely eliminating their right

13   to those penalties. Said another way, **the settlement allocates $10,570,212.50 to claims that

14   could be worth $2,884,200 today.** The Court must consider this $7.7 million in excess value

15   when evaluating whether the settlement as a whole provides good value to class members.

16   Indeed, even though the allocation does not assign weight to the minimum wage claims, the

17   settlement will pay class members more than the present-day, realistic value of their wage

18   statement claims. Because the likelihood of success on the minimum wage claims is close to zero,

19   the Court need not calculate the theoretical value of these claims prior to approving the

20   settlement. *See In re Uber FCRA Litig.*, 2018 WL 2047362, at *4.

21        Plaintiffs appreciate the Court's care in scrutinizing the settlement for the benefit of the

22   class. But if the goal is to do what is best for the class, the Court should also consider what will

23   happen if the parties renegotiate the settlement. If the Court declines preliminary approval or

24   alters the scope of the release, Plaintiffs will be forced to renegotiate the settlement. (ECF No.

25   150-2, ¶ 65 (settlement null and void if not approved), ¶ 75 (settlement agreement may only be

26   modified by written instrument signed by the parties); *Evans v. Jeff D.*, 475 U.S. 717, 726 (1986)

27

28   [2] Plaintiffs also would have sought PAGA penalties at trial, but those penalties are extremely
     uncertain and there is great risk that the Court could have awarded a small amount.

1   ("the power to approve or reject a settlement negotiated by the parties before trial does not

2   authorize the court to require the parties to accept a settlement to which they have not agreed").)

3   Plaintiffs believe it is all but certain that any renegotiated settlement will deliver less money to

4   the class. How much less depends on the parties' best guess as to how much this Court would

5   award in PAGA penalties and each side's risk tolerance on that issue. Plaintiffs respectfully

6   submit, therefore, that denying approval of the settlement will ultimately result in class members

7   receiving less money but will not preserve any additional, viable, legal claims. Plaintiffs

8   respectfully request that the Court approve the settlement as presented.

9   **II.     The Court May Properly Consider and Approve the Proposed Consent Decree.[3]**

10          In its June 20 Minute Order, the Court raised the following question with respect to the

11   proposed Consent Decree: "For what reasons should I adopt an uncontested Consent Decree that I

12   previously refused to adopt on summary judgment?"

13          As explained below, standing exists for the Court to entertain Delta's request for a

14   proposed consent decree regarding its modified flight attendant wage statement, whereas standing

15   was previously lacking.  The procedural posture of this case has changed since Plaintiffs moved

16   for class certification because the operative complaint expressly covers the period when the

17   modified wage statement has been used, thereby placing the updated statement at issue in this

18   case.  Further, federal courts have the power to approve consent decrees presented through a

19   proposed class settlement and have done so in similar circumstances.  Under the settlement

20   agreement, Delta requests that the Court allow it the opportunity to seek approval of the proposed

21   consent decree, as obtaining clarity on Delta's wage statement's compliance with Labor Code

22   Section 226(a) was and is a fundamental issue in this case.

23          **A.     Standing Exists for the Court to Rule Upon the Proposed Consent Decree.**

24          When seeking certification of the wage statement class, Plaintiffs sought to limit the class

25   to the period January 10, 2022 (the date by which Delta's good faith defense had concluded)

26

27   [3] This section presented by Delta is unopposed by Plaintiffs.  For ease of reading, Plaintiffs
    elected not to include "Defendant contends" or similar language throughout. Plaintiffs provide an
28   additional statement regarding the consent decree in Section II.C., *infra*.

1    through October 7, 2022 (the date before Delta modified its wage statements to address the

2    deficiencies the Court previously identified in its July 2022 summary judgment order).  ECF No.

3    128 at p. 1.  The Court agreed that Plaintiffs could limit the class in this way and ordered

4    Plaintiffs to file a Third Amended Complaint that conformed to this revised class.  ECF No. 128

5    at pp. 1, 6.  Given that amendment, the Court determined that Delta's modified wage statement

6    was no longer at issue in the case, as such "there [was] no case or controversy remaining" as to

7    that statement that would provide Article III standing to adjudicate the issue.  ECF No. 128 at p. 6

8    (citing *Asetek Danmark A/S v. Shenzhen Apaltek Co.*, No. 22-cv-06179-WHO, 2023 WL

9    3852698, at *3 (N.D. Cal. June 6, 2023)).

10         While that was true at the time, the case's procedural posture has changed, such that the

11   modified wage statement is currently at issue in the case.  Through their Fourth Amended

12   Complaint, Plaintiffs have pled a settlement class that runs through March 31, 2024, thereby

13   encompassing a time period during which Delta has issued the modified wage statement to

14   settlement class members.  *See Rockwell International Corp. v. United States*, 549 U.S. 457, 473–

15   74 (2007) ("When a plaintiff files a complaint in federal court and then voluntarily amends the

16   complaint, courts look to the amended complaint to determine jurisdiction."); *Northstar Financial

17   Advisors Inc. v. Schwab Investments*, 779 F.3d 1036, 1044 (9th Cir. 2015).  As such, unlike when

18   Delta previously sought a ruling regarding the modified wage statement, standing now exists for

19   the Court to decide this issue.

20        **B.    Other District Courts Have Entertained Consent Decree Requests in Wage &**
21        **Hour Class Settlements, Including in Similar Airline Litigation.**

22         Federal courts have the power to approve consent decrees presented through a proposed

23   class settlement.  "A consent decree is essentially a settlement agreement subject to continued

24   judicial policing."  *United States v. State of Oregon*, 913 F.2d 576, 580 (9th Cir. 1990) (citation

25   and internal quotation marks omitted).  Approval of a proposed consent decree is within the district

26   court's discretion.  *United States v. Pac. Gas & Elec.*, 776 F. Supp. 2d 1007, 1024 (N.D. Cal.

27   2011).  "Before approving a consent decree, a district court must be satisfied that it is at least

28

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
CASE NO. 3:15-CV-00131-WHO

1  fundamentally fair, adequate and reasonable." *State of Oregon*, 913 F.2d at 580.  "This requires

2  the court to evaluate both the procedural and substantive fairness of the consent decree." *McLeod*

3  *v. Bank of Am., N.A.*, No. 16-cv-03294-EMC, 2019 WL 1170487, at *3 (N.D. Cal. Mar. 13, 2019);

4  *see also City of Colton v. Am. Promotional Events, Inc.*, 281 F. Supp. 3d 1009, 1012 (C.D. Cal.

5  2017).  The consent decree must also "conform to applicable laws," although it "need not impose

6  all the obligations authorized by law."  *State of Oregon*, 913 F.2d at 580 81.

7        In *Vidrio v. United Airlines, Inc.*, the district court—as part of a class/PAGA settlement—

8  approved a consent decree regarding United Airlines' revised flight attendant wage statements

9  similar to that which Delta seeks here.[4]  Case No. 2:15-cv-07985-PSG-MRW, ECF No. 114,

10  Order Granting Motion for Approval of Consent Decree (June 29, 2023).  Like Delta, United

11  updated its flight attendant wage statements after the court found United did not comply with

12  Labor Code Section 226(a)'s requirements.  As part of a class/PAGA settlement, United sought a

13  consent decree "that approves of the revised form of flight attendant wage statements and

14

15

16  [4] Like United, Delta seeks confirmation from the Court that its modified flight attendant wage
   statements address the deficiencies the Court previously identified.  However, the consent decree
17  approved in *Vidrio* went considerably further than what Delta seeks here.  For example, the
   *Vidrio* consent decree provides United with a "complete defense" for five years against
18  "California Labor Code § 226 claims by California-based United flight attendants, to the extent
   those claims involve allegations that United's wage statements fail to show total hours worked
19  (pursuant to Labor Code § 226(a)(2)) or fail to show applicable hourly rates in effect during the
   pay period and the corresponding number of hours worked at each hourly rate by the employee
20  (pursuant to Labor Code § 226(a)(9)) (the 'Decree')."  Case No. 2:15-cv-07985-PSG-MRW, ECF
   No. 104-3, [Proposed] Order Granting Motion to Approve Consent Decree, ¶ 2 (filed May 17,
21  2023).  United similarly sought approval of the same consent decree in *Ward v. United Airlines,
   Inc.*, but with respect to pilot wage statements.  There, Judge Alsup ultimately concluded that the
22  proposed consent decree was substantively unfair because it sought a "complete defense" against
   Section 226(a)(2) and (a)(9) wage statement claims for a period of five years.  *Ward v. United
23  Airlines, Inc.*, No. 15-cv-02309-WHA, 2024 WL 269149, at *9 (N.D. Cal. Jan. 24, 2024) ("[T]he
   consent decree itself is fatally overbroad, purporting to constitute a complete defense against too
24  broad a group of potential litigants, for too long a period of time.  On those grounds, the decree is
   found to be substantively deficient, and is DENIED.").  However, in considering United's
25  request, Judge Alsup also opined that "the pilot wage statements submitted by United via
   declaration appear to conform with the plain language of Sections 226(a)(2) and 226(a)(9)"
26  because they "provided the single applicable effective hourly rate, alongside total hours, in the
   pay register."  *Id.*

27

28

11

1  confirms they comply with California Labor Code Section 226(a)(2) and Section 226(a)(9)."

2  *Vidrio*, ECF No. 114 at pp. 20-21.

3        In evaluating United's request, the *Vidrio* court found that "the proposed consent decree

4  [was] both procedurally and substantively fair." *Id.* at p. 21.  First, the court found the consent

5  decree procedurally fair because it was the "product of extensive settlement negotiations, which

6  were conducted, in part, through arms-length discussions with [a mediator], after several years of

7  hard-fought litigation between the parties." *Id.*; *see also State of Oregon*, 913 F.2d at 581 (noting

8  that a consent decree is "presumptively valid" if it is "the product of good faith, arms length

9  negotiations").  Second, the court found the consent decree substantively fair because "it compels

10  Defendant to revise its flight-attendant wage statements so that they more effectively state the

11  total hours worked, the applicable effective hourly rates, and the number of hours worked at each

12  rate, all of which are requirements of California Labor Code Sections 226(a)(2) and (a)(9)."

13  *Vidrio*, ECF No. 114 at p. 21.  The court further explained that "[t]his case has also broken new

14  legal ground in this area, and there remains uncertainty about what is required for wage

15  statements in cases like this one.  The Court thus finds that the proposed consent decree and wage

16  statement revisions reasonably conform to the applicable law." *Id.*; *see also State of Oregon*, 913

17  F.2d at 581 ("The court need only be satisfied that the decree represents a reasonable factual and

18  legal determination." (citation omitted)); *McLeod*, 2019 WL 1170487, at *4 (explaining that with

19  substantive fairness, the court's task is not to decide whether "the settlement is one which the

20  court itself might have fashioned, or considers ideal").

21        Judge Chen has also considered an employer's request for a consent decree in the class

22  settlement context.  In *McLeod v. Bank of America, N.A.*, the employer bank sought approval of

23  the mileage expense reimbursement program it had implemented in response to the assertion that

24  the bank had violated its expense reimbursement obligations under Labor Code Section 2802.

25  2019 WL 1170487, at *3-5 (N.D. Cal. Mar. 13, 2019).  In exchange for taking steps to enhance its

26  mileage expense reimbursement compliance, the bank sought a "complete defense" against

27  Section 2802 claims premised on this type of reimbursement.  *Id.* at *4.  Judge Chen found the

28

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
CASE NO. 3:15-CV-00131-WHO

1    proposed consent decree procedurally and substantively fair and approved the consent decree.  *Id.*

2    at *5.  Specifically, he found that the decree "addresses Plaintiff's concern that the Bank's efforts

3    to encourage reimbursement prior to this litigation were not sufficient, and addresses the Bank's

4    concern that, absent certainty of its legal obligations, it will face repeated litigation on mileage

5    reimbursement for Loan Officers."  *Id.*

6          Here, whether the Court will ultimately approve the proposed consent decree will be a

7    matter within the Court's discretion at final approval and will not impact the settlement itself.

8    But, as a threshold issue, the Court undoubtedly has the legal authority and power to consider the

9    proposed consent decree that Delta will present, as evidenced by *McLeod*, *Vidrio*, and *Ward*.[5]

10         **C.      Plaintiffs' Supplemental Statement Regarding Consent Decree**

11         Plaintiffs write separately to note that any concerns the Court may have about the

12   propriety of a consent decree should be reserved for final approval. The settlement agreement is

13   not contingent on the Court *granting* a consent decree, it only requires that Defendant be

14   permitted to seek one at final approval and that Plaintiffs not oppose it. (ECF No. 150-2, ¶ 28.) If

15   the Court decides, at final approval, that the proposed consent decree is not appropriate on the

16   merits, or if the Court decides that the consent decree is not properly before the Court, the Court

17   could decline to enter the consent decree but still grant final approval to the settlement. *See*, *e.g.*,

18   *Ward v. United Airlines, Inc.*, Case No. 3:15-cv-02309-WHA, ECF No. 162 (N.D. Cal. Jan. 24,

19   2024) (granting final approval to settlement but denying request to enter consent decree).

20   Accordingly, the Court's hesitation as to whether a consent decree will prove proper is no basis to

21   deny preliminary approval of the settlement.

22

23

---

24   [5] Paragraph 68 of the proposed class/PAGA settlement agreement provides as follows: "Consent

25   Decree.  At the same time as the Plaintiffs move the Court for Final Approval, Delta Air Lines will move the Court to enter a proposed consent decree that approves the form of the wage

26   statements provided to Class Members since October 8, 2022 and confirms that the wage statements address the deficiencies the Court identified in its July 8, 2022 Order (Dkt. No. 113)

27   and complies with California Labor Code Section 226.  Plaintiffs and Plaintiffs' Counsel will not oppose Delta Air Lines' motion to approve this consent decree."

28

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFFS'
                                                      UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
                                                      CASE NO. 3:15-CV-00131-WHO

III. **Administrator's Practice in Keeping Settlement Class Member Data Secure**

Plaintiffs have separately filed a declaration from the proposed settlement administrator, Rust Consulting, that discusses Rust's practice in keeping settlement class member data secure.

IV. **Conclusion**

The Parties believe that this Joint Submission effectively addresses the issues that the Court has raised in connection with the requested preliminary approval of the class/PAGA settlement. With this additional information, the Parties are hopeful that the Court's concerns have been alleviated and that preliminary approval will be granted. The Parties would gladly provide the Court with any additional information it may need.

Dated: July 8, 2024                        NICHOLS KASTER, LLP


                                           By */s/     Matthew C. Helland*
                                           Matthew C. Helland
                                           Daniel S. Brome

                                           Attorneys for Plaintiffs


Dated: July 8, 2024                        MORGAN, LEWIS & BOCKIUS LLP


                                           By  */s/ Andrew P. Frederick*
                                           Brendan T. Killeen
                                           Andrew P. Frederick

                                           Attorneys for Defendant
                                           DELTA AIR LINES, INC.

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
CASE NO. 3:15-CV-00131-WHO

I, Matthew C. Helland, am the ECF user whose identification and password are being used to file this Stipulation.  In compliance with Civil L.R. 5-1(h)(3), I hereby attest that Defendant's counsel concurs in this filing.

Dated:  July 8, 2024

NICHOLS KASTER, LLP

By  */s/ Matthew C. Helland*
Matthew C. Helland

Attorneys for Plaintiffs and the Putative Class