1
2
3
4

MORGAN, LEWIS & BOCKIUS LLP
Brendan T. Killeen (Admitted Pro Hac Vice)
brendan.killeen@morganlewis.com
101 Park Avenue
New York, NY 10178
Telephone:     +1.212.309.6000
Facsimile:      +1.212.309.3001

5
6
7
8

MORGAN, LEWIS & BOCKIUS LLP
Andrew P. Frederick (SBN 284832)
andrew.frederick@morganlewis.com
1400 Page Mill Road
Palo Alto, California 94304-1124
Telephone:     +1.415.442.1000
Facsimile:      +1.415.442.1001

9
10

Attorneys for Defendant
DELTA AIR LINES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17
18
19

| | |
|---|---|
| TODD EICHMANN and ALBERT FLORES, individually, on behalf of others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>DELTA AIR LINES, INC.,<br><br>Defendant. | Case No. 3:15-cv-00131-WHO<br><br>**DEFENDANT DELTA AIR LINES, INC.'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS MOTION FOR APPROVAL OF CONSENT DECREE**<br><br>Date:          November 13, 2024<br>Time:          2:00 p.m.<br>Courtroom:   2, 17th Floor<br>Judge:         Hon. William H. Orrick |

20
21
22
23
24
25
26
27
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

In accordance with Federal Rule of Evidence 201, Defendant Delta Air Lines, Inc. ("Delta" or "Defendant") respectfully requests that this Court take judicial notice of Exhibits 3 and 4 attached to this Request for Judicial Notice in connection with its Motion for Approval of Consent Decree.

Federal Rule of Evidence 201 ("Rule 201") allows a court to take judicial notice of facts that are "not subject to reasonable dispute" because they are either (1) "generally known within the trial court's territorial jurisdiction" or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

"Court orders and filings are the type of documents that are properly noticed under the rule."  *Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101, 1112-14 (C.D. Cal. 2003) (granting judicial notice of court orders); *see also MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (holding that courts may take judicial notice of matters of public record outside the pleadings; *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) ("In particular, a court may take judicial notice of its own records in other cases, as well as the records of an inferior court in other cases."); *Helm v. Alderwoods Group, Inc.*, 696 F. Supp. 2d 1057, n.3 (N.D. Cal. 2009) (taking judicial notice of complaint filed in another lawsuit); *E. & J. Gallo Winery v. Encana Energy Servs., Inc.*, No. CVF03-5412AWILJO, 2005 WL 2435900, at *6 (E.D. Cal. Sept. 30, 2005) ("A district court may take judicial notice pursuant to Rule 201 of the Federal Rules of Evidence . . . of orders or decisions or proceedings of any federal or state court.") (internal citation omitted); *Louie v. McCormick & Schmick Rest. Corp.*, 460 F. Supp. 2d 1153, 1156 n.4 (C.D. Cal. 2006) (taking judicial notice of Los Angeles Superior Court order granting defendant's motion for judgment on the pleadings); *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (judicial notice taken of complaints in related actions); *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (district court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue") (internal quotation and citations omitted).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

1

REQUEST FOR JUDICIAL NOTICE
ISO DELTA'S MOTION FOR APPROVAL
OF CONSENT DECREE
Case No.: 3:15-cv-00131-WHO

1  Accordingly, Delta respectfully requests that this Court take judicial notice of the

2  following documents:

3      o  **Exhibit 3** is a true and correct copy of the Order Granting the Motion for Final Approval,

4          Granting the Motion for Attorneys' Fees, Costs, and Enhancement Awards, as Modified,

5          and Granting the Motion for Approval of the Consent Decree in *Vidrio v. United Airlines,*

6          *Inc.*, Case No. 2:15-cv-07985-PSG-MRW, ECF No. 114 (June 29, 2023) (USDC, Central

7          District of California) (hereafter, "*Vidrio*"); and

8      o  **Exhibit 4** is a true and correct copy of the [Proposed] Order Granting Motion to Approve

9          Consent Decree in the *Vidrio* matter filed on May 17, 2023 (ECF No. 104-3).

10

11  Dated:  September 13, 2024                MORGAN, LEWIS & BOCKIUS LLP

12                                           By   */s/ Andrew P. Frederick*
13                                                Brendan T. Killeen
                                                  Andrew P. Frederick
14
15                                           Attorneys for Defendant
                                             DELTA AIR LINES, INC.

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

2

# EXHIBIT 3

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

## CIVIL MINUTES - GENERAL

| Case No. | CV 15-7985 PSG (MRWx) | Date | June 29, 2023 |
|---|---|---|---|
| Title | Vidrio v. United Airlines, Inc. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Damon Berry | | Not Reported |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| Not Present | | Not Present |

| **Proceedings (In Chambers):** | **Order GRANTING the motion for final approval; GRANTING the motion for attorneys' fees, costs, and enhancement awards, as modified; and GRANTING the motion for approval of the consent decree.** |
|---|---|

Before the Court are three motions. First, Plaintiffs Felicia Vidrio and Paul Bradley (collectively, "Plaintiffs") filed an unopposed motion for final approval of the class action settlement. *See generally* Dkt. # 102 ("*FA Mot.*"); Dkt. # 106 (notice of non-opposition). Second, Plaintiffs filed an unopposed motion for attorneys' fees, costs, and service awards. *See generally* Dkt. # 98-1 ("*Fees Mot.*"); Dkt. # 106. And finally, Defendant United Airlines Inc. filed a motion for the Court to grant a consent decree. *See generally* Dkt. # 104 ("*Consent Decree Mot.*").

After considering the moving papers and holding a hearing on June 23, 2023, the Court **GRANTS** the motion for final approval, **GRANTS** the motion for attorneys' fees, costs, expenses, and enhancement awards as modified by this order, and **GRANTS** the motion for approval of the consent decree.

I.      Background

        A.      Factual and Procedural Background

        Plaintiffs are current and former flight attendants for Defendant United Airlines, Inc., who brought this PAGA and class action case against Defendant alleging violations of California Labor Code § 226(a)(2), (a)(8), and (a)(9) for failing to list specific information on wage statements, such as total hours worked, hourly rates, number of hours worked at each applicable

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-7985 PSG (MRWx) | Date | June 29, 2023 |
|---|---|---|---|
| Title | Vidrio v. United Airlines, Inc. | | |

rate, and Defendant's physical address. *See Preliminary Approval Order* ("*PA Order*"), at 1; *see also FA Mot.* 2:13 18.

The Court granted Plaintiffs' motion for class certification, *see generally* Dkt. # 32, and the parties filed cross-motions for summary judgment, *see generally* Dkts. # 34, 41. The Court ruled in favor of Defendant, finding that because Class Members did not principally work and Defendant did not have major operations in California, § 226 did not apply. *See generally* Dkt. # 47.

Plaintiffs appealed the Court's summary judgment order, *see generally* Dkt. # 50, and the Ninth Circuit consolidated the case with *Ward v. United Airlines, Inc.*, No. C 15-02309 WHA, 2016 WL 3906077 (N.D. Cal. July 19, 2016). *See generally Ward v. United Airlines, Inc.*, 986 F.3d 1234 (9th Cir. 2021). The Ninth Circuit certified to the California Supreme Court the question whether § 226 applies to the circumstances in the consolidated cases, and the California Supreme Court answered, holding that Section 226 applies if either "(1) the employee works a majority of the time in California; or (2) with respect to interstate transportation workers who do not work a majority of the time in any one State, 'the worker has his or her base of work operations in California.'" *Id.* at 1237 39 (quoting *Ward v. United Airlines, Inc.*, 9 Cal. 5th 732, 761 (2020) ("*Ward I*"). The California Supreme Court also explained that an employee is "based in" California "if the employee performs at least some work in California and 'California serves as the physical location where the worker presents himself or herself to begin work.'" *Id.* at 1238 (quoting *Ward I*, 9 Cal. 5th at 755).

Following additional briefing from the parties, the Ninth Circuit rejected Defendant's federal preemption arguments, reversed and remanded the Court's summary judgment order with instructions to determine whether Defendant complied with § 226, and required the Court on remand to modify the class definition so that it conforms to the California Supreme Court's definition of § 226's reach. *See id.* at 1239 45.

On remand, the Court granted Plaintiffs' motion to modify the class definition. *See generally* Dkt. # 65. The parties then filed a second round of cross-motions for summary judgment. *See generally* Dkts. # 72, 74. The Court ruled in favor of Defendant regarding § 226(a)(8), finding that the wage statement address requirement was satisfied, and ruled in favor of Plaintiffs regarding § 226(a)(9), finding the wage statements did not list any hourly rates or the number of hours worked at any such rate during a pay period. *See generally* Dkt. # 81. After the Court's order, only Plaintiffs' § 226(a)(2) claim remained for trial. *See id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-7985 PSG (MRWx) | Date | June 29, 2023 |
|---|---|---|---|
| Title | Vidrio v. United Airlines, Inc. | | |

On September 13, 2022, the parties participated in mediation with Michael J. Loeb. *See PA Order* at 2. The parties came to an agreement that day and continued to negotiate specific settlement terms over the next few months. *See id.*

B. <u>Settlement Agreement</u>

The settlement agreement provides for a non-reversionary $53,500,000 Gross Settlement Value to resolve both the PAGA and class action claims. *See Declaration of Kirk Hanson*, Dkt. # 95-1, Ex. 1 ("*Settlement*"), ¶ 5. The Settlement also states that if it is approved by the Court, Defendant must transfer the Gross Settlement Value to the claims administrator, and the amount must be held in an interest-bearing Qualified Settlement Fund. *See id.* ¶ 5. After deductions, the common fund is to be disbursed to Class Members and aggrieved employees defined as all flight attendants who were employed by Defendant and domiciled/home-based at a California airport at any time between August 2014 and March 31, 2023. *See id.* ¶¶ 1, 3, 17 22. The Settlement provides for the following deductions from the Gross Settlement Value: (1) attorneys' fees in an amount of one-third of the common fund and litigation costs in an amount up to $110,000; (2) service awards of $20,000 for each class representative, totaling $40,000; (3) settlement administration costs; and (4) 75 percent of the $300,000 PAGA payment to be paid to the Labor & Workforce Development Agency ("LWDA"), totaling $225,000. *See id.* ¶¶ 18 22.

The Settlement provides that after deductions, the remaining balance, or the Net Settlement Value, will be paid to Class Members on a pro rata basis. *See id.* ¶ 22. The individual payment to each Class Member will be determined by multiplying the "paystub value" by the number of wage statements the individual Class Member received during the class period. *See FA Mot.* 5:4 18; *Settlement* ¶ 22. The "paystub value" will be determined by dividing the total number of wage statements received by all Class Members during the class period into the Net Settlement Amount. *See FA Mot.* 5:4 18; *Settlement* ¶ 22. If a Class Member fails to cash her settlement check within 180 days, the check will be voided, and the remaining balance will be redistributed among the class. *See Settlement* ¶ 24. In the event redistribution is economically unfeasible, the balance will be distributed to *cy pres* recipient Legal Aid to Work. *Id.*

The Settlement also releases Defendant from liability with respect to the specific claims alleged and certified as class claims in the case. *See id.* ¶ 26. But the agreement explicitly excludes from the release any claims of unpaid wages. *See id.* The Settlement further states that effective June 2022, Defendant has changed the format of its wage statements for its California-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-7985 PSG (MRWx) | Date | June 29, 2023 |
|---|---|---|---|
| Title | Vidrio v. United Airlines, Inc. | | |

based flight attendants to bring the wage statement into compliance with Labor Code § 226, subdivisions (a)(2) and (a)(9). *See id.* ¶ 30.

      C.    <u>Preliminary Approval</u>

On February 6, 2023, the Court granted Plaintiffs' motion for preliminary approval of the Settlement. *See generally PA Order*. And on February 28, 2023, Defendant provided the $53,500,000 Gross Settlement Amount to Rust Consulting, Inc. ("Rust Consulting") to be held in an interest-bearing account and provided an updated class list.[1] *See FA Mot.* 3:20 28; *Declaration of Sara Schwermer-Sween*, Dkt. # 102-5 ("*Schwermer-Sween Decl.*"), ¶ 10. Rust Consulting then mailed the Notice of Settlement to Class Members in March 2023 and tracked objections and opt-outs and skip-traced and re-mailed notices to Class Members whose notices were returned as undeliverable. *See FA Mot.* 3:24 27; *Schwermer-Sween Decl.* ¶¶ 11 16.

The final class size is now 11,077. *See FA Mot.* 11:2; *Schwermer-Sween Decl.* ¶ 11. None of the Class Members have objected to the Settlement, and only one Class Member has opted out. *See FA Mot.* 18:3 4; *Schwermer-Sween Decl.* ¶¶ 15 16.

II.    <u>Final Approval of Class and Collective Settlement</u>

      A.    <u>Analysis of Class Action Settlement</u>

          *i.*    *Legal Standard*

A court may finally approve a class action settlement "only after a hearing and only on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Approval or rejection of a settlement agreement is committed to the district court's sound discretion. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

In determining whether a settlement is fair, reasonable, and adequate, courts must balance the following factors:

---

[1] Plaintiffs note that the Gross Settlement Value will increase by approximately $908,649 due to the interest accrued. *See FA Mot.* 1 n.1. The final common fund settlement amount will therefore total approximately $54,408,649. *See id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-7985 PSG (MRWx) | Date | June 29, 2023 |
|---|---|---|---|
| Title | Vidrio v. United Airlines, Inc. | | |

[1] the strength of the plaintiffs' case; [2] the risk, expense, complexity and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of proceedings; [6] the experience and views of counsel; [7] the presence of a government participant; and [8] the reaction of the class members to the proposed settlement.

*Id.* at 1026; *see also Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Officers for Just. v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) (noting that the list of factors is "by no means an exhaustive list"). Additionally, under Federal Rule of Civil Procedure 23(e), the Court must "scrutiniz[e] the fee arrangement for potential collusion or unfairness to the class" by analyzing three factors: (1) whether counsel "receive[d] a disproportionate distribution of the settlement"; (2) whether the parties agreed to a "clear sailing arrangement"; and (3) whether the settlement includes a "kicker" or "reverter" clause. *See Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (citation omitted).

The district court must either wholly approve or reject the settlement after comprehensively exploring all factors. *See Hanlon*, 150 F.3d at 1026 ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."). Courts may not delete, modify, or rewrite any provision of the settlement. *See id.* A court should be cognizant that a settlement "is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.* at 1027. The Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

  *ii.*  Hanlon *Factors*

    *a.*  *Strength of Plaintiffs' Case*

"An important consideration in judging the reasonableness of a settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488 (E.D. Cal. 2010) (citation omitted). This factor generally weighs in favor of approval when plaintiffs must overcome barriers to make their case. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 15-7985 PSG (MRWx) | Date | June 29, 2023 |
|---|---|---|---|
| Title | Vidrio v. United Airlines, Inc. | | |

Here, Plaintiffs have overcome many obstacles in this case, including prevailing on class certification, achieving success on appeal, and partially winning on the merits on remand. *See FA Mot.* 7:18‑25; *see PA Order* at 1‑2. And Plaintiffs note that if the case were to proceed through trial, Defendant would continue those obstacles by likely challenging the Court's ruling denying Defendant's "good faith" defense to Labor Code § 226. *See FA Mot.* 7:25‑28. As Plaintiffs explain, courts have differing opinions on the application of that defense, and thus, Defendant would have a significant chance of prevailing on appeal, which could shorten the class period and reduce the amount that Class Members could recover. *See id.* 8:1‑28. Further, with a Gross Settlement Amount of $53,500,000, plus accrued interest, the gross amount available to each Class Member exceeds what could be recovered at trial, as there is a $4,000 statutory cap on individual claims under Labor Code § 226(e). *See FA Mot.* 9:1‑10. This factor thus weighs in favor of approval.

> b.    *Risk, Expense, Complexity, and Duration of Further Litigation*

The second factor in assessing the fairness of the proposed settlement is the complexity, expense, and likely duration of the lawsuit if the parties had not reached a settlement agreement. *See Officers for Just.*, 688 F.2d at 625.

As explained above, Defendant could realistically challenge the Court's "good faith" determination, which would add on additional delays and litigation costs. *See FA Mot.* 9:19‑28. And a ruling in Defendant's favor on the "good faith" defense could significantly jeopardize the amount of recovery for Class Members. *See FA Mot.* 8:9‑24. For example, Plaintiffs point to a similar case where "based upon its acceptance of the 'good faith' defense, [it] slashed the class period by moving the beginning date of the class period from April 3, 2014, to February 2, 2021. . . . [t]hus, the class period was cut by almost seven (7) years." *FA Mot.* 8:18‑24. The Settlement therefore eliminates the costs and uncertainty of further litigation, and this factor supports final approval. *Cf. Dyer v. Wells Fargo Bank, N.A.*, CV 13‑02858 JST, 2014 WL 5369395, at *3 (N.D. Cal. Oct. 22, 2014) ("This factor supports final approval of this settlement because, without a settlement, Plaintiffs would risk recovering nothing after a lengthy and costly litigation.").

> c.    *Risk of Maintaining Class Action Status Through Trial*

Under Federal Rule of Civil Procedure 23(c)(1)(C), an "order that grants or denies class certification may be altered or amended before the final judgment," and considering Defendant's vigorous opposition over several years, including opposition to class certification, it is not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-7985 PSG (MRWx) | Date | June 29, 2023 |
| --- | --- | --- | --- |
| Title | Vidrio v. United Airlines, Inc. | | |

unwarranted to suspect that Defendant would try again to defeat class certification before or at trial. This factor thus supports final approval. *See Judson v. Goldco Direct, LLC*, No. CV 19-6798 PSG (PLAx), 2021 WL 8462049, at *4 (C.D. Cal. June 11, 2021).

> d.      *Amount Offered in Settlement*

The next factor in assessing the fairness of the proposed settlement is the amount of the settlement. "[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Just.*, 688 F.2d at 624 (citation omitted). The Ninth Circuit has explained that "the proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by negotiators." *Id.* at 625. Rather, the settlement amount must account for the risks of further litigation and trial, as well as expenses and delays associated with continued litigation. *Id.*

Here, there are 11,077 Class Members, and the Settlement provides for a Gross Settlement Value of $53,500,000, plus accrued interest. *See FA Mot.* 11:2 19; *Schwermer-Sween Decl.* ¶ 11. After accounting for deductions provided for in the Settlement, the net amount remaining in the common fund is approximately $35,200,000, not including accrued interest. *See id.* 11 13. That amounts to an average Net Settlement Value for each Class Member of approximately $3,178, which is approximately 79 percent of the highest possible individual recovery, given Labor Code § 226(e)'s $4,000 statutory cap. *See id.*[2] And in addition to the Settlement's monetary value, Defendant made changes to the format of its wage statements to better comply with California law. *See Settlement* ¶ 30. Considering that Class Counsel has achieved a significant result by negotiating an amount close to the true value of the case and achieving strong non-monetary results, the settlement amount is fair and reasonable. This factor thus weighs in favor of approval. *See Martinez v. Helzberg's Diamond Shops*, No. ED CV 20-1085 PSG (SHKx), 2021 WL 9181893, at *4 (C.D. Cal. Sept. 24, 2021) (collecting cases approving of wage-and-hour class actions settlements where the gross settlement amounts ranged from 4.6 to 13.62 percent of plaintiffs' estimation of defendant's total maximum liability); *Brown v. CVS Pharmacy, Inc.*, No. CV 15-7631 PSG (PJWX), 2017 WL 3494297, at *4 (C.D. Cal. Apr. 24, 2017) (approving a Labor Code § 226 wage statement settlement that was approximately 27 percent of the expected recovery at trial).

---

[2] Plaintiffs provide calculations based on accrued interest. *See FA Mot.* 11 13. Taking into account the almost $1 million in accrued interest, the fairness of the settlement amount thus only increases.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-7985 PSG (MRWx) | Date | June 29, 2023 |
|---|---|---|---|
| Title | Vidrio v. United Airlines, Inc. | | |

### e. Extent of Discovery Completed and Stage of the Proceedings

This factor requires the Court to gauge whether Plaintiffs had sufficient information to make an informed decision about the merits of their case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). The more discovery that has been completed, the more likely it is that the parties have "a clear view of the strengths and weaknesses of their cases," and the more heavily this factor weighs in favor of final approval. *Young v. Polo Retail, LLC*, No. C 02-4546 VRW, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007) (citation omitted).

This case has been heavily litigated over eight years and the parties have engaged in extensive discovery. *See FA Mot.* 15:2 5; *Declaration of Kirk D. Hanson*, Dkt. # 102-1 ("*Hanson Decl.*"), ¶ 40. The parties have litigated a motion for class certification, two rounds of cross-motions for summary judgment, and have litigated the case on appeal to the Ninth Circuit and California Supreme Court. Further, the Settlement was reached through an arms-length negotiation with JAMS mediator Michael Loeb, and the negotiations continued for months after. *See FA Mot.* 15:23 28; *Hanson Decl.* ¶¶ 40 41. The Court thus agrees that these circumstances indicate that the parties had a clear view of the strengths and weaknesses of their cases when negotiating the Settlement. The factor therefore weighs in favor of approval. *See Judson*, 2021 WL 8462049 at *5 (finding that nearly complete discovery and arms-length mediation suggests that the factor weighs in favor of final approval).

### f. Experience and Views of Counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). While counsel's views are instructive, they do not entitle the plaintiff to a presumption of fairness. *See Roes, 1 2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019).

Here, Class Counsel is experienced in handling wage-and-hour class actions. *See FA Mot.* 16:18 28; *Hanson Decl.* ¶¶ 43 44. And the Court is satisfied that this experience has allowed Class Counsel to evaluate the merits of the claims and risks associated with pursuing them through trial and appeal. The Court thus credits Class Counsel's view that the Settlement is not only fair and reasonable, but also an excellent result. Indeed, this is the largest Labor Code § 226 settlement Class Counsel is aware of. *FA Mot.* 1:16 17, 17:1 5. This factor thus weighs slightly in favor of final approval.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-7985 PSG (MRWx) | Date | June 29, 2023 |
|---|---|---|---|
| Title | Vidrio v. United Airlines, Inc. | | |

       g.     *Presence of a Government Participant*

      While there is no government entity directly participating in the case, LWDA is affected by this action, as it stands to receive 75 percent of the PAGA portion of the Settlement. LWDA has received notice of the Settlement along with the motions for approval filed with the Court and has not objected. *See FA Mot.* 17:7 22; *Hanson Decl.* ¶ 46. This factor therefore weighs slightly in favor of final approval. *See Turner v. Motel 6 Operating L.P.*, No. CV 17-2544 PSG (SSX), 2018 WL 6977474, at *4 (C.D. Cal. Nov. 6, 2018) (finding that where LWDA received a monetary contribution under PAGA, the factor weighed in favor of final approval).

       h.     *Class Members' Reaction to the Proposed Settlement*

      In evaluating the fairness, adequacy, and reasonableness of a settlement, courts also consider the reaction of the class to the settlement. *See Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003), *overruled on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010). "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004); *see also Arnold v. Fitflop USA, LLC*, No. CV 11-0973 W (KSC), 2014 WL 1670133, at *8 (S.D. Cal. Apr. 28, 2014) (concluding that the reaction to the settlement "presents the most compelling argument favoring settlement").

      Here, no Class Member has objected to the Settlement and only one has opted out. *See Schwermer-Sween Decl.* ¶¶ 15 16. Accordingly, this factor weighs in favor of final approval.

       i.     *Balancing of* Hanlon *Factors*

      Having considered each of the *Hanlon* factors, the Court finds that all relevant factors weigh in favor of final approval.

       iii.   Briseño *Factors*

      In *Briseño*, the Ninth Circuit stressed that, before approving class action settlements, district courts must look for signs that class counsel pursued their own self-interests in the negotiations. *See* 998 F.3d at 1023. The *Briseño* court identified three "red flags" that are indicative of collusion between class counsel and the defendant: (i) if class counsel receives a disproportionate distribution of the gross settlement amount; (ii) if any of the gross settlement

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-7985 PSG (MRWx) | Date | June 29, 2023 |
|---|---|---|---|
| Title | Vidrio v. United Airlines, Inc. | | |

amount reverts to the defendant; and (iii) if there is a "clear sailing arrangement." *See id.* The Court discusses each "red flag" in turn.

### a.  *Disproportionate Distribution of Attorneys' Fees*

One sign that class counsel pursued their own self-interests over those of the class is if class counsel receives a disproportionate distribution of the common settlement fund. *See id.* at 1022 23. For example, in *Briseño*, the court found that class counsel's receipt of $5.85 million of the $8 million gross settlement fund raised red flags, particularly because the class received less than $1 million. *See id.* at 1020.

Here, Class Counsel seek one-third of the common fund in attorneys' fees. *See Fees Mot.* 9:10 13; *Settlement* ¶ 18. That figure is much lower than the approximate 73 percent that class counsel sought in *Briseño* and is around the typical fee award in a common fund case. *See, e.g.*, *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009) (noting that the federal benchmark is 25 percent, but in most common fund cases, the awards range around 30 percent). And after the deductions provided for in the Settlement, the Net Settlement Value totals roughly $35,200,000, which is approximately 65 percent of the Gross Settlement Value. This factor thus does not indicate collusion. *See Martinez v. Helzberg's Diamond Shop*, No. ED CV 20-1085 PSG (SHKx), 2021 WL 9181893, at *6 (C.D. Cal. Sept. 24, 2021) (ruling that where a class was expected to receive more than 60 percent of the gross settlement amount, a request for 33 percent in attorneys' fees was not disproportionate and weighed in favor of approval).

### b.  *Presence of a Reverter Clause*

A reverter clause is one that "returns unawarded fees to the defendant, rather than the class." *Briseño*, 998 F.3d at 1023. Here, because the Settlement is non-reversionary, *Settlement* ¶ 5, this factor does not indicate collusion.

### c.  *Presence of a "Clear Sailing Arrangement"*

A settlement agreement contains a "clear sailing arrangement" when "the defendant agrees not to challenge a request for an agreed-upon attorney's fee." *Briseño*, 998 F.3d at 1023. But the mere presence of a clear sailing arrangement is not "an independent basis for withholding settlement approval." *Id.* at 1027. Instead, such arrangements are material only if there is evidence of at least one of the other two *Briseño* factors  reverters or unreasonably high

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-7985 PSG (MRWx) | Date | June 29, 2023 |
|----------|------------------------|------|---------------|
| Title | Vidrio v. United Airlines, Inc. | | |

attorneys' fees. *See McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 610 (9th Cir. 2021) ("[A] clear sailing provision signals the potential that a defendant agreed to pay class counsel excessive fees in exchange for counsel accepting a lower amount for the class members." (citation omitted)).

Although a clear sailing arrangement does not appear to be part of the Settlement, any such arrangement under these circumstances would not carry much weight as the attorneys' fees here are not on their face excessively high, and the Settlement does not contain a reverter clause.

        *d.*    *Balancing of* Briseño *Factors*

After considering each of the *Briseño* factors, the Court finds that, on balance, the Settlement is not collusive or based on inappropriate self-interest.

    **B.**    <u>Analysis of PAGA Settlement</u>

        *i.*    *Legal Standard*

A plaintiff bringing a PAGA claim "does so as a proxy or agent of the state's labor law enforcement agencies." *Arias v. Superior Ct.*, 46 Cal. 4th 969, 986 (2009). A judgment in a private employment action therefore "binds not only that employee but also the state labor law enforcement agencies." *Id.* When a PAGA claim is settled, courts are tasked with determining whether the relief provided is "genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public." *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (citation omitted). This is of particular importance in a mixed class/PAGA action settlement when PAGA claims can be "used merely as a bargaining chip, wherein the rights of individuals who may not even be members of the class and the public may be waived for little additional consideration in order to induce the employer to agree to a settlement with the class." *Id.* But courts have still recognized that "in wage and hour class actions that settle, . . . very little of the total settlement is paid to PAGA penalties in order to maximize payments to the class members." *See, e.g., Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp. 3d 1058, 1101 (N.D. Cal. 2019); *see also JD Tamimi v. SGS N. Am., Inc.*, SACV 19-965 PSG (KSx), 2021 WL 3417645, at *9 (C.D. Cal. Mar. 2, 2021) (recognizing that courts approve PAGA allocations of 0 to 2 percent of the total settlement).

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-7985 PSG (MRWx) | | Date | June 29, 2023 |
|---|---|---|---|---|
| Title | Vidrio v. United Airlines, Inc. | | | |

    *ii.*    *Discussion*

    The Court is satisfied with the PAGA settlement here. The parties have agreed to a PAGA penalty of $300,000. *Settlement* ¶ 21. Pursuant to California Labor Code § 2699(i), 75 percent of the PAGA Amount ($225,000) will go to the LWDA, and the remaining 25 percent ($75,000) will be distributed to aggrieved Class Members on a pro rata basis. *See Settlement* ¶¶ 21, 22. The LWDA's portion of the PAGA allocation represents roughly 0.4 percent of the Gross Settlement Value, which the Court finds is reasonable. *See, e.g., In re M.L. Stern Overtime Litig.*, No. CV 07-0118 BTM (JMAx), 2009 WL 995864, at *1 (S.D. Cal. Apr. 13, 2009) (approving PAGA amount that was 2 percent of overall settlement); *Hopson v. Hanesbrands Inc.,* No. CV-08-0844 EDL, 2009 WL 928133, at *9 (N.D. Cal. Apr. 3, 2009) (approving a PAGA settlement of 0.3 percent).

    C.    <u>*Cy Pres* Clarification</u>

    In the Preliminary Approval Order, the Court ordered Plaintiffs to provide additional information explaining whether any conflict of interest exists regarding the *cy pres* recipient and how the parties came to choose the *cy pres* recipient. *See PA Order* at 13  14.

    The Court is satisfied that that no conflicts exist regarding the *cy pres* recipient. Plaintiffs state that Legal Aid at Work was chosen because of the organization's mission to serve underrepresented low-wage workers in California. *See FA Mot.* 18:24  28; *Hanson Decl.* ¶ 50. They also explain that neither Class Counsel, the named Plaintiffs, nor Defendant have any connection or preexisting relationship with the organization. *See FA Mot.* 18  19; *Hanson Decl.* ¶¶ 51  52. Finally, although Defendant's counsel's firm supports the organization, Plaintiffs state that neither the firm nor the individual attorneys representing Defendant have any interest in the organization nor will they receive any interest by agreeing to choose the organization as the *cy pres* recipient. *See FA Mot.* 19:6  7; *Hanson Decl.* ¶ 53.

    D.    <u>Final Approval Conclusion</u>

    Having considered all relevant factors, the Court **GRANTS** Plaintiffs' motion and approves the Settlement.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-7985 PSG (MRWx) | Date | June 29, 2023 |
|---|---|---|---|
| Title | Vidrio v. United Airlines, Inc. | | |

III.   Attorneys' Fees, Costs, and Enhancement Awards

    Plaintiffs additionally move for (1) one-third of the common fund in attorneys' fees for Class Counsel, (2) $91,745.45 in costs, (3) enhancement awards of $20,000 to each of the two Class Representatives, and (4) up to $75,299 in administration expenses.  *See generally Fees Mot*; *Schwermer-Sween Decl.* ¶ 17.  The Court addresses each of the requests in turn.

    A.   Attorneys' Fees

        i.   *Legal Standard*

    Federal Rule of Civil Procedure 23(h) governs awards of attorneys' fees in class action cases and provides that, after a class has been certified, the court may award reasonable attorneys' fees and nontaxable costs.  *See* Fed. R. Civ. P. 23(h).  The Court "must carefully assess" the reasonableness of the fee award.  *See Staton*, 327 F.3d at 963; *see also Browne v. Am. Honda Motor Co., Inc.*, No. CV 09-6750 MMM (DTB), 2010 WL 9499073, at *3 5 (C.D. Cal. Oct. 5, 2010) (explaining that in a class action case, the court must scrutinize a request for fees when the defendant has agreed to not oppose a certain fee request as part of a settlement).  "The mere fact that the defendant agrees to pay the fees 'does not detract from the need to carefully scrutinize the fee award.'"  *Zubia v. Shamrock Foods Co.*, No. CV 16-3128 AB (AGRx), 2017 WL 10541431, at *5 (C.D. Cal. Dec. 21, 2017) (quoting *Staton*, 327 F.3d at 964).

    Where litigation leads to the creation of a common fund, courts can determine the reasonableness of a request for attorneys' fees using either the lodestar method or the percentage-of-recovery method.  *See Kim v. Allison*, 8 F.4th 1170, 1180 (9th Cir. 2021).  "Though courts have discretion to choose which calculation method they use, their discretion must be exercised as to achieve a reasonable result," and the Ninth Circuit recommends "cross-checking their calculations against a second method."  *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 44 (9th Cir. 2011).

    The Court first analyzes the reasonableness of the request under the percentage-of-recovery method and then cross-checks it against the lodestar method.

        ii.   *Percentage-of-Recovery Method*

    Under the percentage-of-recovery method, courts typically use 25 percent of the fund as a benchmark for a reasonable fee award.  *See In re Bluetooth Headset*, 654 F.3d at 942.  The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-7985 PSG (MRWx) | Date | June 29, 2023 |
|---|---|---|---|
| Title | Vidrio v. United Airlines, Inc. | | |

percentage can vary, however, and courts have awarded more or less than 25 percent of the fund as they have deemed appropriate. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (noting that courts generally award between 20 and 30 percent of the common fund in attorneys' fees). When assessing fee awards' reasonableness under the percentage-of-recovery theory, courts consider the following factors: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046 (citing *Vizcaino*, 290 F.3d at 1048 50).

Here, Plaintiffs asks the Court to approve the fee award of 33.3 percent of the common fund. *See generally Fees Mot.* Because Plaintiffs ask the Court to depart from the federal benchmark of 25 percent, the Court evaluates each of the five factors set out in *Vizcaino*. *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

### a. Results Achieved

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046. Here, Class Counsel has achieved a Gross Settlement Amount of $53,500,000, excluding accrued interest, which amounts to approximately 120 percent of the highest possible recovery at trial and the largest Labor Code § 226 settlement that Class Counsel is aware of. *See Fees Mot.* 12 13. Further, the average net individual recovery per Class Member is approximately $3,178, which amounts to approximately 79 percent of the highest possible individual recovery.[3] *See FA Mot.* 1, 12. And in addition to the monetary results achieved, Class Counsel achieved significant non-monetary benefits; Defendant has agreed to change the format of their wage statements to better comply with California law. *See FA Mot.* 13 14; *Settlement* ¶ 30. This factor thus weighs strongly in favor of an upward departure from the federal benchmark. *See, e.g., Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1019 20 (E.D. Cal. 2019) (ruling that an award of 48 percent of what plaintiffs could have recovered was an exceptional result that weighed heavily in favor of a greater-than-benchmark award); *Vizcaino*, 290 F.3d at 1049 (noting that "[i]ncidental or non-monetary benefits conferred by the litigation are a relevant circumstance" in evaluating whether an upward departure from the benchmark is warranted).

---

[3] That amount will be higher because the Settlement requires the Gross Settlement Amount to be held in an interest-bearing account until disbursement. *See Fees Mot.* 12 13; *Settlement* ¶ 5.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 15-7985 PSG (MRWx) | Date | June 29, 2023 |
|---|---|---|---|
| Title | Vidrio v. United Airlines, Inc. | | |

       *b.*     *Risk of Litigation*

The risk that further litigation might result in no recovery is a "significant factor" in assessing the fairness and reasonableness of an award of attorneys' fees. *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046 47; *see also Vizcaino*, 290 F.3d at 1048 (discussing that "[r]isk is a relevant circumstance" in determining an attorneys' fee award in a common fund case).

Here, the risks of continued litigation are significant. As noted above, Defendant could realistically challenge the Court's "good faith" determination on appeal, which would add on additional delays and litigation costs, and a ruling in Defendant's favor on the defense could significantly jeopardize the amount of recovery. *See FA Mot.* 9:19 28, 8:9 24. This factor thus weighs in favor of an upward departure.

       *c.*     *Skills Required and Quality of Work*

The Court also considers the skills required to prosecute and manage this litigation, as well as Class Counsel's overall performance. *See In re Omnivision Techs.*, 559 F. Supp. 2d at 1047. As already mentioned, Class Counsel has vigorously litigated this case in this Court and on appeal over the course of eight years. *See Fees Mot.* 19:10 17. Class Counsel achieved class certification, litigated two cross-motions for summary judgment, and successfully prevailed on appeal to the Ninth Circuit and California Supreme Court on novel, complex issues. *See Fees Mot.* 5 7. The Court recognizes that Class Counsel has demonstrated significant skill and zeal in pursuing this case, and thus this factor weighs in favor of an upward departure.

       *d.*     *Contingent Nature and Plaintiff's Financial Burden*

Class Counsel is comprised of only two attorneys, who have been working on this case on a pure contingency basis since March of 2015 and have advanced all litigation costs, which they claim total $91,745.45. *See Fees Mot.* 20; *Hanson Decl.* ¶ 67. Further, Class Counsel states that because of their limited resources, they have taken significant risks with investing in this case on a pure contingency basis. *See Fees Mot.* 20; *Hanson Decl.* ¶ 67. This factor thus weighs in favor of an upward departure.

       *e.*     *Awards Made in Similar Cases*

The Court is also satisfied that the requested award is sufficiently comparable to awards approved by other courts in similar cases. *See, e.g.*, *Fernandez v. Victoria Secret Stores*, LLC,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-7985 PSG (MRWx) | | Date | June 29, 2023 |
|---|---|---|---|---|
| Title | Vidrio v. United Airlines, Inc. | | | |

No. CV 06-4149 MMM (SH), 2008 WL 8150856, at *16 (C.D. Cal. July 21, 2008) (awarding 34 percent of the common fund in attorneys' fees in a wage and hour class action settlement); *Knight*, 2009 WL 248367, at *17 ("[N]early all common fund awards range around 30%"). This factor thus supports an upward departure.

*f.     Conclusion*

In conclusion, the Court finds that, in light of all the *Vizcaino* factors, Class Counsel's request for an upward departure from the federal benchmark appears appropriate unless the lodestar cross-check shows it is unreasonable.

*iii.     Lodestar Method Cross-Check*

To calculate the "lodestar," the court must multiply the number of hours the attorneys reasonably spent on the litigation by the reasonable hourly rate in the community for similar work. *McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999).

Class Counsel assert that the current lodestar is $1,374,600. *See Fees Mot.* 23:26; *Hanson Decl.* ¶ 74. And in support, Class Counsel submits timekeeping statements that are summarized as follows:

| Name | Hours | Rate | Amount |
|---|---|---|---|
| Kirk D. Hanson, Esq. | 1,187.7 | $1,000 | $1,187,700.00 |
| Jeffery C. Jackson, Esq. | 186.9 | $1,000 | $186,900.00 |
| **Total Lodestar** | **1,374.6** | --- | **$1,374,600.00** |

*See Hanson Decl.*, Exh. 2 ("*Hanson Billing Statement*"); *Declaration of Jeffrey C. Jackson*, Dkt. # 102-2 ("*Jackson Decl.*"), Exh. 1 ("*Jackson Billing Statement*").

*a.     Reasonable Rate*

When calculating the lodestar, the reasonable hourly rate is the rate prevailing in the community for similar work. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1200 (9th Cir.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 15-7985 PSG (MRWx) | Date | June 29, 2023 |
|---|---|---|---|
| Title | Vidrio v. United Airlines, Inc. | | |

2013) ("[T]he court must compute the fee award using an hourly rate that is based on the prevailing market rates in the relevant community." (citation omitted)); *Viveros v. Donahue*, No. CV 10-08593 MMM (Ex), 2013 WL 1224848, at *2 (C.D. Cal. Mar. 27, 2013) ("The court determines a reasonable hourly rate by looking to the prevailing market rate in the community for comparable services."). The relevant community is the community in which the court sits. *See Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895, 906 (9th Cir. 1995). If an applicant fails to meet its burden, the court may exercise its discretion to determine reasonable hourly rates based on its experience and knowledge of prevailing rates in the community. *See, e.g.*, *Viveros*, 2013 WL 1224848, at *2; *Ashendorf & Assocs. v. SMI-Hyundai Corp.*, No. CV 11-02398 ODW (PLAx), 2011 WL 3021533, at *3 (C.D. Cal. July 21, 2011); *Bademyan v. Receivable Mgmt. Servs. Corp.*, No. CV 08-00519 MMM (RZx), 2009 WL 605789, at *5 (C.D. Cal. Mar. 9, 2009).

The Court turns to the *2022 Real Rate Report: The Industry's Leading Analysis of Law Firm Rates, Trends, and Practices* ("Real Rate Report") as a useful guidepost to assess the reasonableness of these hourly rates in the Central District. *See Eksouzian v. Albanese*, No. CV 13-728 PSG (AJWx), 2015 WL 12765585, at *4 5 (C.D. Cal. Oct. 23, 2015). The Real Rate Report identifies attorney rates by location, experience, firm size, areas of expertise, and industry, as well as specific practice areas, and is based on actual legal billing, matter information, and paid and processed invoices from more than 80 companies. *See Hicks v. Toys 'R' Us-Del., Inc.*, No. CV 13-1302 DSF JCG, 2014 WL 4670896, at *1 (C.D. Cal. Sept. 2, 2014). Courts have found that the Real Rate Report is "a much better reflection of true market rates than self-reported rates in all practice areas." *Id.*; *see also Tallman v. CPS Sec. (USA), Inc.*, 23 F. Supp. 3d 1249, 1258 (D. Nev. 2014) (considering the Real Rate Report); *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 433 (S.D.N.Y. 2012) (same).

Here, Class Counsel has used a rate of $1,000. *See Hanson Decl.* ¶ 75. The 2022 Real Rate Report provides that, in Los Angeles, partners litigating employment-related matters, such as wage and hour claims, have hourly rates ranging from $525 to $935. *See* Real Rate Report at 117. Although Class Counsel's rate is not excessively high, the Court finds that using the high-end Real Rate Report partner rate of $935 is more reasonable here.

####    b.    *Reasonable Hours*

An attorneys' fee award should include compensation for all hours reasonably expended prosecuting the matter, but "hours that are excessive, redundant, or otherwise unnecessary" should be excluded. *Costa v. Comm'r of Soc. Sec. Admin.*, 690 F.3d 1132, 1135 (9th Cir. 2012) (citation omitted). The standard is whether a reasonable attorney would have believed the work

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-7985 PSG (MRWx) | Date | June 29, 2023 |
|---|---|---|---|
| Title | Vidrio v. United Airlines, Inc. | | |

to be reasonably expended in pursuit of success at the point in time when the work was performed. *See Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982).

Here, the Court finds that the hours listed by Class Counsel are, for the most part, reasonable. Class Counsel avers that they have spent 1,374.6 hours on this case over the course of eight years. *See Hanson Decl.* ¶ 74. And most of those hours involved investigating the relevant facts, conducting significant research, drafting various motions, preparing for and attending hearings, oral arguments, and mediation, and negotiating the Settlement. *See generally Hanson Billing Statement*; *Jackson Billing Statement*. But Class Counsel inappropriately includes time spent preparing for and drafting their motion for attorneys' fees and costs. *See Hanson Billing Statement* 12  17; *Jackson Billing Statement* 2  3. The Ninth Circuit has held that "[t]ime spent obtaining an attorneys' fee in common fund cases is not compensable because it does not benefit the plaintiff class." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994). The Court will thus reduce the number of hours for lodestar purposes by 81.8 to reflect deductions for non-compensable time. Class Counsel's hours for purposes of the lodestar calculation are thus set at 1,292.8.

*c.     Reasonableness of Lodestar*

Based on the foregoing, the adjusted lodestar amount is $1,208,768. Class Counsel seeks one-third of the common fund, or $17,833,333.33, plus one-third of the accrued interest. Comparing the lodestar with the requested fee, the resulting multiplier is approximately 15.

The Ninth Circuit has noted that multipliers in common fund cases have ranged from .6 to 19.6, with most multipliers ranging between 1 and 4 and a "bare majority" in the 1.5 to 3 range. *See Vizcaino*, 290 F.3d at 1051 n.6; *see also Contreras v. Armstrong Flooring, Inc.*, No. CV 20-3087 PSG (SKx), 2021 WL 4352299, at *12 (C.D. Cal. July 6, 2021).

The Court finds that Class Counsel has achieved an extraordinary result, which justifies their attorneys' fees request and the exceptional lodestar multiplier. The unprecedented results achieved by Class Counsel in this case, including changes in California law, while facing significant risks throughout litigation, must be recognized. The Court thus awards Class Counsel one-third of the common fund, plus one-third of the accrued interest. This result, however, should not be taken as a new benchmark; the Court is highly unlikely to award a fee with such a high lodestar multiplier in the future absent circumstances as unique as those of this case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-7985 PSG (MRWx) | Date | June 29, 2023 |
|---|---|---|---|
| Title | Vidrio v. United Airlines, Inc. | | |

The Court thus **GRANTS** Class Counsel motion for attorneys' fees in the amount of
**$18,136,216.33**.  The Court approves the attorneys' fees to be paid as cash and/or future periodic
payments.

      B.    <u>Litigation Costs</u>

"Attorneys may recover their reasonable expenses that would typically be billed to paying
clients in non-contingency matters."  *In re Omnivision Techs.*, 559 F. Supp. 2d at 1048.  Here,
pursuant to the Settlement allowing for reimbursement of costs up to $110,000 in costs, Class
Counsel requests reimbursement in the amount of $91,745.45.  *See Settlement* ¶ 18; *Fees Mot.*
25:2  12.

The Court is satisfied that most of the listed costs are reasonable.  But the Court does not
find that Class Counsel's purchase of the "2022 Real Rate Report" in support of its attorneys'
fee motion is a reasonable cost to pass on to a client.  *See In re Washington Pub. Power Supply
Sys. Sec. Litig.*, 19 F.3d at 1299.  The Court therefore will not allow reimbursement for that cost.
And while Class Counsel includes the fees incurred for hiring appellate counsel as costs, those
expenses are more appropriately reimbursed through the attorneys' fee award, so the Court will
not allow additional reimbursement for that cost.

The Court therefore **GRANTS** the request for reimbursement of costs in the amount of
**$41,954.88**

      C.    <u>Enhancement Awards</u>

"Incentive awards are fairly typical in class action cases."  *Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948, 958 (9th Cir. 2009).  When assessing requests for incentive awards, courts
consider five principal factors:

> (1) the risk to the class representative in commencing suit, both financial and
> otherwise; (2) the notoriety and personal difficulties encountered by the class
> representative; (3) the amount of time and effort spent by the class representative; (4)
> the duration of the litigation; (5) the personal benefit (or lack thereof) enjoyed by the
> class representative as a result of the litigation.

*Van Vranken,* 901 F. Supp. at 299 (N.D. Cal. 1995).  Further, while "[t]he range of acceptable
enhancement payments is discretionary, . . . courts have determined that a $5,000 payment is

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 15-7985 PSG (MRWx) | Date | June 29, 2023 |
|---|---|---|---|
| Title | Vidrio v. United Airlines, Inc. | | |

presumptively reasonable." *Gaston v. FabFitFun, Inc.*, No. 2:20-CV-09534-RGK-E, 2021 WL 6496734, at *4 (C.D. Cal. Dec. 9, 2021) (citation omitted).

Here, Plaintiffs request an enhancement award of $20,000 each, or $40,000 total. *See Fees Mot.* 25  29. Considering the over 100 hours Plaintiffs claim to have put into the case over eight years, the risks they bore, including significant costs associated with defeat, and the potential for negative employment repercussions, the Court finds the incentive award appropriate. *See Declaration of Paul Bradley*, Dkt. # 102-4; *Declaration of Felicia Vidrio*, Dkt. # 102-3. Further, considering the modified attorneys' fees and costs, the total enhancements are approximately .07 percent of the Gross Settlement Value and approximately six times the average Class Member net award. This proportion places the requested awards within the range of approval. *See, e.g.*, *Dawson v. Hitco Carbon Composites, Inc.*, No. CV 16-07337 PSG (FFMx), 2019 WL 7842550, at *10 (C.D. Cal. Nov. 25, 2019) (finding an enhancement award of five times the average class award reasonable); *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, No. CV13-5693 PSG (GJSX), 2017 WL 4685536, at *10  11 (C.D. Cal. May 8, 2017) (approving $25,000 incentive award, in part, because the award reflected 0.2 percent of the total settlement).

The Court thus **GRANTS** Plaintiffs' request for enhancement awards of $20,000 per named Plaintiff, for a total of **$40,000**.

### D.      Administration Costs

The Settlement provides that Rust Consulting will be paid to administer the Settlement out of the Gross Settlement Amount. *Settlement* ¶ 20. Rust Consulting estimates that the cost of administering the Settlement will be $62,997, and potentially an additional $12,302 if a second distribution is awarded, totaling $75,299. *See Schwermer-Sween Decl.* ¶ 17. Given that the class size is 11,077, *see id.* ¶ 11, the Court finds that the administration costs are reasonable. *See Gatdula v. CRST Int'l, Inc.*, No. 11  cv  01285  VAP, 2015 WL 12637656, at *9 (C.D. Cal. Aug. 26, 2015) (approving $68,000 in administration costs for a class of roughly 10,000 members).

The Court thus **GRANTS** administration costs to Rust Consulting in an amount up to **$75,299**.

### IV.      Defendant's Motion for Approval of a Consent Decree

Defendant's have also filed an unopposed motion for the Court to grant a consent decree "that approves of the revised form of flight attendant wage statements and confirms they comply

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-7985 PSG (MRWx) | Date | June 29, 2023 |
|---|---|---|---|
| Title | Vidrio v. United Airlines, Inc. | | |

with California Labor Code Section 226(a)(2) and Section 226(a)(9)." *Consent Decree Mot.*
1:2  5.

"A consent decree is essentially a settlement agreement subject to continued judicial
policing." *United States v. State of Oregon*, 913 F.2d 576, 580 (9th Cir. 1990) (citation omitted);
*see also Rouser v. White*, 825 F.3d 1076, 1081 (9th Cir. 2016).  Approval of a proposed consent
decree is within the district court's discretion.  *See State of Oregon*, 913 F.2d at 580.  In
approving a consent decree, a district court must find that "it is at least fundamentally fair,
adequate and reasonable." *Id.*  "This requires the court to evaluate both the procedural and
substantive fairness of the consent decree." *McLeod v. Bank of Am., N.A.*, No. 16-cv-03294-
EMC, 2019 WL 1170487, at *3 (N.D. Cal. Mar. 13, 2019) (citation omitted); *see also City of
Colton v. Am. Promotional Events, Inc.*, 281 F. Supp. 3d 1009, 1012 (C.D. Cal. 2017).  The
consent decree must also "conform to applicable laws," although it "need not impose all the
obligations authorized by law." *State of Oregon*, 913 F.2d at 580  81.

The Court finds that the proposed consent decree is both procedurally and substantively
fair.  It is a product of extensive settlement negotiations, which were conducted, in part, through
arms-length discussions with JAMS mediator Michael Loeb, after several years of hard-fought
litigation between the parties.  So it is procedurally fair. *See State of Oregon*, 913 F.2d at 581
(noting that a consent decree is "presumptively valid" if it is "the product of good faith, arms-
length negotiations"); *see also United States v. Pac. Gas & Elec.*, 776 F. Supp. 2d 1007,
1024  25 (N.D. Cal. 2011) (stating that procedural fairness requires that the negotiation process
was "fair and full of adversarial vigor" (citation omitted)).  It is also substantively fair as it
compels Defendant to revise its flight-attendant wage statements so that they more effectively
state the total hours worked, the applicable effective hourly rates, and the number of hours
worked at each rate, all of which are requirements of California Labor Code Sections 226(a)(2)
and (a)(9). *See Declaration of Adam P. KohSweeney*, Dkt. # 104-1, Ex. A (proposed consent
decree); *Declaration of Janie Salazar*, Dkt. # 104-2, Ex. A (example of revised wage statement).
This case has also broken new legal ground in this area, and there remains uncertainty about
what is required for wage statements in cases like this one.  The Court thus finds that the
proposed consent decree and wage statement revisions reasonably conform to the applicable law.
*See State of Oregon*, 913 F.2d at 581 ("The court need only be satisfied that the decree
represents a reasonable factual and legal determination." (citation omitted)); *see also McLeod*,
2019 WL 1170487, at *4 (explaining that with substantive fairness, the court's task is not to
decide whether "the settlement is one which the court itself might have fashioned, or considers
ideal" (citation omitted)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-7985 PSG (MRWx) | Date | June 29, 2023 |
|---|---|---|---|
| Title | Vidrio v. United Airlines, Inc. | | |

The Court therefore **GRANTS** Defendant's motion for approval of the proposed consent decree.

V.     Conclusion

For the reasons stated above, the Court **GRANTS** Plaintiffs' motion for final approval of the PAGA and class action Settlement, **GRANTS**, as modified by this order, Plaintiffs' motion for attorneys' fees, costs, and enhancement awards, and **GRANTS** Defendant's motion for approval of the consent decree.  It is **HEREBY ORDERED AS FOLLOWS**:

• The Court approves settlement of the action between Plaintiffs and Defendant, as set forth in the Settlement, as fair, just, reasonable, and adequate.  The parties are directed to perform their settlement in accordance with the terms set forth in the Settlement.

• Class Counsel is awarded **$18,136,216.33** in attorneys' fees and **$41,954.88** in costs.  The Court approves the attorneys' fees to be paid as cash and/or future periodic payments.  Additionally, the Court grants the requested **$40,000** in enhancement awards.  The Court finds that these amounts are reasonable for the reasons stated in this order.

• The Court approves payment of administration costs to Rust Consulting in an amount up to **$75,299**.

• The Court approves the consent decree.

• Without affecting the finality of this judgment in any way, this Court hereby retains exclusive jurisdiction for all matters relating to the litigation, including the administration, interpretation, effectuation, or enforcement of the Settlement and this order.  This order closes the case.

**IT IS SO ORDERED.**

# EXHIBIT 4

ROBERT SIEGEL (S.B. #64604)
rsiegel@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

ADAM P. KOHSWEENEY (S.B. #229983)
akohsweeney@omm.com
KRISTIN MACDONNELL (S.B. #307124)
kmacdonnell@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
Telephone:  (415) 984-8912
Facsimile:   (415) 984-8701

Attorneys for Defendant
United Airlines, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELICIA VIDRIO and PAUL BRADLEY, individually, and on behalf of all others similarly situated,<br><br>          Plaintiff(s),<br><br>    v.<br><br>UNITED AIRLINES, INC., and DOES 1 through 50, inclusive,<br><br>          Defendant(s). | Case No. 2:15-cv-07985-PSG-MRW<br><br>**[PROPOSED] ORDER GRANTING MOTION TO APPROVE CONSENT DECREE**<br><br>Hearing Date:  June 16, 2023<br>Time:  1:30 p.m.<br>Place:  Courtroom 6A, 6th Floor<br>Judge:  Hon. Phillip Gutierrez |

Upon consideration of Defendant United Airlines, Inc.'s ("United's") Motion to Approve Consent Decree ("Motion"), the Court hereby finds that the Consent Decree, as set forth at Exhibit A to the Declaration of Adam P. KohSweeney filed in support of United's Motion, is fair and reasonable, both procedurally and substantively, and consistent with applicable law.

Accordingly, the motion to enter the proposed consent decree is hereby GRANTED and the terms of the Consent Decree are hereby approved, as follows:

1. From the date of entry of this Order, to the extent not done so already, United shall issue wage statements to California-based flight attendants substantially in the format reflected in Exhibit A to the Declaration of Janie Salazar filed in support of United's Motion.

2. From the date of entry of this Order until the fifth (5th) anniversary of said date (the "Covered Period"), compliance with Paragraph 1 (above) will constitute a complete defense against California Labor Code § 226 claims by California-based United flight attendants, to the extent those claims involve allegations that United's wage statements fail to show total hours worked (pursuant to Labor Code § 226(a)(2)) or fail to show applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee (pursuant to Labor Code § 226(a)(9)) (the "Decree").

3. The Decree's intended and desired effect is to ensure that United's revised wage statements for California-based flight attendants are sufficient to comply with Labor Code § 226(a)(2) and (a)(9) to the extent United continues to issue the revised wage statements in substantially this form to California-based flight attendants.

4. To the extent that United, at any point during the Covered Period, fails to implement the steps set out in Paragraph 1 (above) it shall not be found to be in violation of the Decree until after (i) notice is provided of any alleged violation

and/or non-compliance and (ii) an opportunity to cure has been provided.  Notice shall be provided in writing and at least forty-five (45) calendar days shall be provided for United to cure.

5.     The Covered Period shall expire on the fifth (5th) anniversary of the date of entry of this Order without need for any action by Class Counsel, United, or the Court.  United, in its sole and complete discretion, may move the Court to terminate the Covered Period early in the event of legislative developments or of a ruling by a court of competent jurisdiction that renders the further implementation of the Decree unlawful, unnecessary, and/or ineffective.  United, in its sole and complete discretion, may also move the Court extend the Covered Period in advance of its expiration.

IT IS SO ORDERED, this the _____ day of _____, 2023.


_____
Honorable Phillip S. Gutierrez
United States District Judge

[PROPOSED] ORDER GRANTING
MOTION TO APPROVE CONSENT
DECREE 2:15-CV-07985-PSG-MRW