Matthew C. Helland, CA SBN 250451
helland@nka.com
Daniel S. Brome, CA SBN 278915
dbrome@nka.com
NICHOLS KASTER, LLP
235 Montgomery St., Suite 810
San Francisco, CA 94104
Telephone: (415) 277-7235
Facsimile:  (415) 277-7238

*Attorneys for Plaintiffs and the Class*

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEV ANAND OMAN, TODD EICHMANN, MICHAEL LEHR, and ALBERT FLORES, individually, on behalf of others similarly situated, and on behalf of the general public,<br><br>          Plaintiffs,<br><br>vs.<br><br>DELTA AIR LINES, INC.,<br><br>          Defendant. | **Case No.  3:15-cv-00131-WHO**<br><br>**PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND PRIVATE ATTORNEYS GENERAL ACT (PAGA) REPRESENTATIVE ACTION SETTLEMENT**<br><br>Date:          November 13, 2024<br>Time:          2:00 p.m.<br>Courtroom:   2, 17th Floor<br><br>Judge: Hon. William H. Orrick |

**NOTICE OF MOTION TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that at 2:00 p.m. on November 13, 2024, in the courtroom of the Honorable William H. Orrick, Courtroom 2, 17th Floor of the United States District Court for the Northern District of California, 450 Golden Gate Ave., San Francisco, California, Plaintiffs will and hereby do move this Court for final certification of a Rule 23 settlement class and final approval of a Settlement reached in this Rule 23 Class Action and Private Attorneys General Act action against Defendant Delta Air Lines, Inc. Plaintiffs move the Court for an order confirming certification of the settlement class, confirming its preliminarily finding that the proposed settlement is fair, reasonable, and adequate, determining that the notice satisfied the requirements of Rule 23 and due process and granting final approval of the settlement. This motion is based on this Notice of Motion and Motion for Final Approval of Settlement, the Declaration of Matthew Helland and its attached exhibits, the Declaration of Jennifer Mills for Rust Consulting, and all other pleadings and papers on file in this action, and such argument as the Court may hear.

DATED:  October 9, 2024                    NICHOLS KASTER, LLP


By:  *Matthew Helland*
                                           Matthew Helland
                                           Attorney for Plaintiffs and the Class

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iv

MEMORANDUM OF LAW ...............................................................................................1

RELEVANT BACKGROUND .............................................................................................1

   I.   THE LITIGATION...................................................................................................1
   II.  THE SETTLEMENT................................................................................................1
        A.  Settlement Class..........................................................................................1
        B.  Settlement Amount and Allocations ..........................................................2
        C.  Notification Obligations..............................................................................3
        D.  Notice Process.............................................................................................3
        E.  Release of Claims........................................................................................4
            i.     Released Parties ...............................................................................4
            ii.    Released Claims ..............................................................................4
        F.  Settlement Allocations and Distribution of Funds......................................5

LEGAL ANALYSIS..............................................................................................................6

   I.   THE SETTLEMENT SATISFIES THE RULE 23 REQUIREMENTS FOR PURPOSES
      OF SETTLEMENT....................................................................................................7

        A.  Numerosity is Satisfied ...............................................................................7
        B.  There are Questions of Law and Fact Common to the Class........................7
        C.  The Named Plaintiffs' Claims Are Typical of the Class ............................8
        D.  Adequacy is Satisfied..................................................................................8
        E.  A Class Action is Superior to Other Alternatives..........................................9

   II.  THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE .............................9

        A.  The Strength of Plaintiffs' Case, Weighed Against the Risk, Expense,
            Complexity and Likely Duration of Further Litigation, and the Risk of
            Maintaining Class Action Status Through Trial, Supports Approval..............10
        B.  The Amount Offered in Settlement Weighs Strongly in Favor of Final
            Approval ....................................................................................................12
        C.  The Stage of the Proceedings Also Favors Final Approval ............................14
        D.  The Considerable Experience and Strongly Supportive Views of Counsel
            Weigh in Favor of Final Approval..................................................................14
        E.  The Absence of a Government Participant Favors Approval ..........................14
        F.  The Reaction of Class Members to The Proposed Settlement Supports
            Approval ....................................................................................................14

   III. THE PAGA SETTLEMENT WARRANTS APPROVAL.................................................15

IV. THE ADMINISTRATOR COMPLIED WITH THE APPROVED NOTICE
PROCESS ...................................................................................................16

V. PLAINTIFFS' REQUESTED ATTORNEYS' FEES, COSTS AND ENHANCEMENTS
ARE REASONABLE .................................................................................16

VI. THE COURT SHOULD APPROVE $31,478.00 IN SETTLEMENT ADMINISTRATOR
COSTS ........................................................................................................17

VII. THE COURT SHOULD APPROVE LEGAL AID AT WORK AS CY PRES
RECIPIENT .................................................................................................17

CONCLUSION...................................................................................................18

1

# TABLE OF AUTHORITIES

2

<u>Cases</u>

3

*Alexander v. FedEx Ground*,
    2016 WL 1427358 (N.D. Cal. Apr. 12, 2016) ...................................................16

4

5

*Arias v. Sup. Ct.*,
    46 Cal.4th 969 (2009) ............................................................................................15

6

7

*Bellinghausen v. Tractor Supply Co.*,
    306 F.R.D. 245 (N.D. Cal. 2015) .........................................................................16

8

9

*Bernstein v. Virgin Am., Inc.*,
    2023 WL 7284158 (N.D. Cal. Nov. 3, 2023) .......................................................17

10

*Boring v. Bed Bath & Beyond of California Ltd. Liab. Co.*,
    2014 WL 2967474 (N.D. Cal. June 30, 2014) .....................................................16

11

12

*Boyd v. Bank of Am.*,
    2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) .....................................................15

13

14

*Carrington v. Starbucks Corp.*,
    30 Cal. App. 5th 504 (2018) .................................................................................11

15

16

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004)). .............................................................................10

17

18

*Covillo v. Specialtys Café*,
    2014 WL 954516 (N.D. Cal. Mar. 6, 2014) .........................................................15

19

20

*Cruz v. Sky Chefs*,
    2014 WL 7247065 (N.D. Cal. Dec. 19, 2014) .....................................................16

21

*Cuzick v. Zodiac U.S. Seat Shells, LLC*,
    2017 WL 4536255 (N.D. Cal. Oct. 11, 2017) .....................................................13

22

23

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ...............................................................................6

24

25

*Dermis v. Kellogg Co.*,
    697 F.3d 858 (9th Cir. 2012) ...............................................................................18

26

*Dunleavy v. Nadler*,
    213 F.3d 454 (9th Cir. 2000). ................................................................................7

27

28

*Eddings v. Health Net, Inc.*,
    2013 WL 3013867 (C.D. Cal. June 13, 2013) .....................................................17

*Flores v. Starwood Hotels & Resorts Worldwide, Inc.*
    253 F.Supp.3d. 1074 (C.D. Cal. 2017) ........................................................15

*Franklin v. Kaypro Corp.*,
    884 F.2d 1222 (9th Cir. 1989) ..................................................................6

*Garner v. State Farm Mut. Auto. Ins. Co.*,
    No. 08-cv-1365-CW, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ..............................10

*Gay v. Waiters' & Dairy Lunchmen's Union*,
    489 F. Supp. 282 (N.D. Cal. 1980),
    *aff'd*, 694 F.2d 531 (9th Cir. 1982) ..........................................................7

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...............................................................8, 9

*Hernandez v. Dutton Ranch Corporation*,
    2021 WL 5053476 (N.D. Cal. Sept. 10, 2021) ...................................................13

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) .................................................................10

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000), *as amended* (June 19, 2000) ....................................6

*In re Rubber Chems. Antitrust Litig.*,
    232 F.R.D. 346 (N.D. Cal. 2005).............................................................7

*In re TracFone Unlimited Serv. Plan Litig.*,
    112 F. Supp. 3d 993 (N.D. Cal. 2015) ........................................................11

*Jennings v. Open Door Mktg., LLC*,
    No. 15-cv-04080-KAW, 2018 WL 4773057 (N.D. Cal. Oct. 3, 2018) .............................13

*Jordan v. NCI Grp., Inc.*,
    2018 WL 1409590 (C.D. Cal. Jan. 5, 2018) ....................................................10

*McCulloch v. Baker Hughes Inteq Drilling Fluids, Inc.*,
    2017 WL 5665848 (E.D. Cal. Nov. 27, 2017) ...............................................17, 18

*McKnight v. Uber Techs., Inc.*,
    No. 14-cv-05615-JST, 2017 WL 3427985 (N.D. Cal. Aug. 7, 2017)...............................6

*McLeod v. Bank of Am., N.A.*,
    No. 16-CV-03294-EMC, 2018 WL 5982863 (N.D. Cal. Nov. 14, 2018) ..........................12

*Merante v. American Institute for Foreign Study, Inc.*,
    Case No. 3:21-cv-03234-EMC (N.D.Cal.) ......................................................13

*Moore v. PetSmart, Inc.*,
    2015 WL 5439000 (N.D. Cal. Aug. 4, 2015) ...................................................................17

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................12

*Nordstrom Com'n Cases*,
    186 Cal.App.4th 576 (2010) ...................................................................15

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ...................................................................9, 11, 12

*Parra v. Bashas', Inc.*,
    536 F.3d 975 (9th Cir. 2008) ...................................................................8

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ...................................................................8

*Pitarro v. DSV Air & Sea, Inc.*,
    No. 19-CV-00849-SK, 2021 WL 6499973 (N.D. Cal. Jan. 28, 2021) ...................................................................10

*Ramirez v. Benito Valley Farms, LLC*,
    2017 WL 3670794 (N.D. Cal. Aug. 25, 2017) ...................................................................9

*Ramirez v. Merrill Gardens, LLC*,
    2024 WL 3011142 (E.D. Cal. June 11, 2024) ...................................................................16

*Rannis v. Recchia*,
    380 F. App'x 646 (9th Cir. 2010), ...................................................................16

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ...................................................................7

*Stonehocker v. Kindred Healthcare Operating LLC*,
    2021 WL 1643226 (N.D. Cal. Apr. 27, 2021); ...................................................................15

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ...................................................................8

*Valentino v. Carter–Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) ...................................................................9

*Vazquez v. USM Inc.*,
    2016 WL 612906 (N.D. Cal. Feb. 16, 2016) ...................................................................16

*Viceral v. Mistras Grp., Inc.*,
    2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) ...................................................................13

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL

*Viceral v. Mistras Grp. Inc.*,
    2017 WL 661352 (N.D. Cal. Feb. 17, 2017) ....................................................15

*Zakikhani v. Hyundai Motor Co.*,
    2023 WL 4544771 (C.D. Cal. June 14, 2023) .................................................16

Rules

Fed. R. Civ. P. 23(a)(1) ............................................................................................7

Fed. R. Civ. P. 23(e)(1)(C). .....................................................................................9

Statutes

Cal. Lab. Code § 2699(l)(2) ....................................................................................15

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL

1

## MEMORANDUM OF LAW

On July 16, 2024, this Court granted preliminary approval to the Parties' class and PAGA settlement agreement. *See* ECF No. 158. The settlement administrator distributed notice in response to that order, and the response from the Class has been overwhelmingly positive. Only three class members (out of 4,177) have opted out to date, and there have been no objections. For all the reasons outlined in Plaintiffs' Motion for Preliminary Approval (ECF No. 150), the Parties' Supplemental Memorandum in Support of Preliminary Approval (ECF No. 157), and Plaintiffs' Motion for Attorneys' Fees and Costs and Named Plaintiff Enhancements (ECF No. 159), and given the overwhelmingly positive response from the class, Plaintiffs respectfully request that the Court grant final approval to the settlement and authorize distribution of settlement funds.

## RELEVANT BACKGROUND

### I.    THE LITIGATION

The Court is familiar with the history of this litigation. Plaintiffs will not repeat it here, but instead incorporate previous briefing by reference. *See* ECF Nos. 150, 157, 159.

### II.    THE SETTLEMENT

The complete details of the Parties' agreement are contained in the Settlement Agreement ("the Settlement" or "Agreement") executed by the Parties and previously filed at ECF No. 150-2. The following summarizes the Agreement's key terms.

#### A.    Settlement Class

The settlement agreement provides for certification of the following class, which the Court conditionally certified at preliminary approval:

> All current and former flight attendants who worked for Delta while based in California ("California-based flight attendants") at any time from January 9, 2014 through March 31, 2024, and who did not participate in Delta's Enhanced Retirement or Voluntary Opt-Out Programs.

(Agreement ¶ 5; ECF No. 158 at ¶ 3.) PAGA penalty amounts will be allocated to Class Members who worked after November 9, 2014, even if those Class Members exclude themselves

from the Class. (Agreement ¶ 43.) Additionally, PAGA penalties will also be allocated to individuals who participated in Delta's Enhanced Retirement or Voluntary Opt-Out Programs.

**B.    Settlement Amount and Allocations**

Under the proposed settlement, Defendant will pay $15,900,000 for the claims of approximately 4,177 Class Members, with the following preliminary allocation:

- **Wage Statements:** $10,570,212.50 allocated to the Wage Statement Class. This amount will be distributed on a pro rata basis by pay periods based in California, with a 75% reduction for pay periods after October 7, 2022 and a maximum allocation of $4,000 per Wage Statement Class Member (Agreement ¶ 43);

- **PAGA:** $1,164,787.50 allocated to PAGA penalties, of which 75% ($873,585.00) shall be paid to the LWDA and 25% will be distributed to Class Members (including Non-Participating Class Members who exclude themselves and individuals who were part of Delta's Enhanced Retirement or Voluntary Opt-Out Programs) who worked since November 9, 2014. The penalties will be allocated pr rata, with a 75% reduction for pay periods after October 7, 2022.  (Agreement ¶¶ 17, 43);

- **Attorneys' Fees:** Up to $3,975,000 for Plaintiffs' Counsel's attorneys' fees, subject to Court approval (Agreement ¶ 14);

- **Attorneys' Costs:** Up to $65,000 for Plaintiffs' Counsel's costs, subject to Court approval (Agreement ¶ 14);

- **Enhancement Payments:** Payments of $20,000 each for the two Named Plaintiffs, subject to Court approval (Agreement ¶ 15);

- **Contingency Fund:** A contingency fund of $50,000 to be used to effectuate the purposes of the settlement (Agreement ¶ 14);

- **Settlement Administration Costs:** Costs of administering the settlement, not expected to exceed $35,000 (Agreement ¶ 14).

These amount payable to the class and the amount allocated to PAGA will increase slightly in the final allocation because (1) Plaintiffs only seek $58,944.08 in costs, not the $65,000.00 maximum provided for in the settlement agreement (*see* ECF No. 159); (2) administration costs

will only be $31,478.00, instead of the $35,000.00 provided for in the agreement (Mills Decl. ¶ 18); and (3) the funds allocated to the only three opt-outs (approximately $8,850.00 to date) will be reallocated to the class (Mills Decl. ¶ 16).

**C.    Notification Obligations**

Delta provided notice pursuant to the Class Action Fairness Act of 2005 ("CAFA"). (Frederick Decl. ¶ 2.) Plaintiff's Counsel notified the LWDA of the settlement (Helland Supp. Decl., ECF No. 155, ¶ 5.)

**D.    Notice Process**

Rust Consulting, the settlement administrator, has carried out the notice process in accordance with the settlement agreement. Specifically, Rust obtained a dedicated mailing address, phone number, facsimile number, email address, and website for notice administration. (Mills Decl. ¶¶ 4-8.) After receiving class list data from counsel, Rust ran the addresses through the National Change of Address database to obtain the most current address information available. (*Id.* ¶ 11.) On August 19, 2024, Rust distributed notice via U.S. Mail to 4,177 class members. (*Id.* ¶¶ 10, 12.) As of October 7, 2024, Rust performed 161 address traces on notices that were returned undeliverable. (*Id.* ¶ 13.) The address traces utilized the class member's name, previous address, and social security number. (*Id.*) Those address traces resulted in 133 new addresses, to which Rust promptly remailed the notice. (*Id.*) One of those remails was also returned as undeliverable. (*Id.*) In addition to the undeliverable notices, Rust received three notices returned with a forwarding address. (*Id.* ¶ 14.) Rust promptly remailed notices to these new addresses. (*Id.*) As of October 7, only 40 out of 4,177 notices (less than one percent) have remained undeliverable. (*Id.* ¶ 13.)

Rust maintained a settlement website, which contained the class notice and the settlement agreement. (Mills Decl. ¶ 8.) Rust added Plaintiffs' Motion for Fees, Costs, and Enhancements to the settlement website after it was filed. (*Id.* ¶ 8.)

The notice response deadline is October 15, 2024. (Mills Decl. ¶ 12.) The recent round of remails have until October 30, 2024 to respond to the settlement notice. (*Id.* ¶ 13.) As of October 7, only three class members have opted out of the settlement. (*Id.* ¶ 16.) These class members

were allocated a total of $8,850.24, which will be reallocated in the final allocation. (*Id.*) There have been no objections. (*Id.* ¶ 17.)

Six individuals have challenged their exclusion from the settlement class. (*Id.* ¶ 15.) One of those individuals asserted that she worked two or three pay periods more than was accounted for in the settlement. (Helland Final Approval Decl. ¶ 3.) Based on information provided by Defense Counsel and a review of the data used to calculate the settlement allocation, it was determined that the individual's settlement allocation was based on accurate dates of employment. (*Id.*) The other five were excluded because Delta's records confirmed they participated in Delta's Enhanced Retirement Program, which was offered in and around August 2020, and they each provided information showing that their employment ended in 2020 with four directly referencing retiring and/or an August 2020 separation date. (*Id.* ¶ 4.) Plaintiffs' Counsel informed all five of these individuals in writing of the reason for their exclusion from settlement class. (*Id.* ¶ 5.) Counsel also informed them that they would still receive their PAGA allocation. (*Id.*)

Plaintiffs will provide the Court will a supplemental administrator declaration after the October 30 final response deadline and in advance of the November 13, 2024 final approval hearing.

**E.    Release of Claims**

    i.    <u>Released Parties</u>

The Released Parties ("Releasees") are the Defendant Delta Air Lines, Inc. and each of its past or present direct and/or indirect, officers, directors, managers, employees, agents, representatives, attorneys, insurers, partners, investors, shareholders, members, administrators, parent companies, subsidiaries, affiliates, divisions, predecessors, successors, benefits plans, beneficiaries, trustees, and/or assigns. (Agreement ¶ 29.)

    ii.    <u>Released Claims</u>

"Released Claims" means all claims, rights, demands, liabilities and causes of action that were litigated in the Action against Releasees, as well as claims that could have been pled in this Action based on the factual allegations contained in the Fourth Amended Complaint or any

amendments thereto continuing through March 31, 2024, including all claims for failure to provide accurate wage statements, as well as derivative penalties under PAGA relating to wage statements. The release of claims against Delta will only be valid and enforceable if the settlement Effective Date occurs. (Agreement ¶ 28.)[1]

Class Members who exclude themselves from the Settlement will not release their claims, except that Class Members who submit valid and timely Requests for Exclusion will still receive a PAGA allocation, and will release all claims for PAGA penalties included in the Released Claims. (Agreement ¶¶ 22, 30.)

### F.    Settlement Allocations and Distribution of Funds

The Net Settlement Amount will be allocated based on Plaintiffs' Counsel's damages analysis, as calculated from Delta's compensation and employment history records. The allocation and formulas are as follows:

**PAGA:**  $1,164,787.50 was allocated to PAGA claims, with $873,585.00 to be paid to the LWDA and $291,202.50 to be allocated to Class Members who were based in California and worked between November 9, 2014 and March 31, 2024. The allocation to Class Members shall be pro rata based on months worked while based in California between November 9, 2014 to March 31, 2024, with a 75% reduced weighting for pay periods after October 7, 2022. Non-Participating Class Members who exclude themselves will still receive a PAGA allocation.

**Wage Statements:**  Approximately $10,570,212.50 was allocated to the Class Members on a pro rata basis by pay periods based in California, with a 75% reduced weighting for pay periods after October 7, 2022. There shall be a $4,000 maximum allocation to Class Members.  If the payments to any Class Members exceed $4,000 based on this pro rata allocation, the excess shall be allocated to PAGA claims and distributed as described immediately above.

(Agreement ¶ 43.) As noted above, the PAGA and Wage Statement class allocations will

---

[1] The parties provided further briefing regarding the scope of the release at ECF No. 157, which Plaintiffs incorporate here by reference.

increase slightly due to excess funds being made available.

The Settlement Administrator shall issue Settlement Payments to Class Members in the form of a check within fourteen (14) calendar days after Delta deposits the Gross Settlement Amount. (Agreement ¶ 44.) There will be a 120-day check cashing period, after which checks will become void. (Agreement ¶ 58.) The Settlement Administrator will send a reminder seventy-five (75) calendar days after check issuance to all class members who have not negotiated their checks. (*Id.*) There will be a second distribution if the funds represented by uncashed checks are sufficient to allow average payments of at least $50 to each Class Member who negotiated checks, net of costs of a second distribution. (*Id.*) Otherwise, or after the second distribution, funds represented by uncashed checks will be donated to Legal Aid at Work as *cy pres* recipient. (*Id.*) Legal Aid at Work is a nonprofit legal services organization, based in San Francisco, that has been assisting low-income, working families for more than 100 years. (*See* https://legalaidatwork.org/our-mission-and-how-we-work/.) Legal Aid at Work helps workers, like class members here, by, among other things, offering free clinics and helplines and free legal information. (*Id.*)

## LEGAL ANALYSIS

"The Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class actions." *McKnight v. Uber Techs., Inc.*, No. 14-cv-05615-JST, 2017 WL 3427985, at *2 (N.D. Cal. Aug. 7, 2017) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)); *see also Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("[O]verriding public interest in settling and quieting litigation" is "particularly true in class action suits.") (quotations omitted). The "decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants, and their strategies, positions, and proof." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000), *as amended* (June 19, 2000) (citation omitted).

Here, the Court should grant final approval to the settlement because it satisfies the Rule 23 requirements and is fair, adequate, and reasonable.

## I.   THE SETTLEMENT SATISFIES THE RULE 23 REQUIREMENTS FOR PURPOSES OF SETTLEMENT.

A trial court has wide discretion in certifying a class for settlement purposes and will be reversed only upon a strong showing that its decision was a clear abuse of discretion. *See Dunleavy v. Nadler*, 213 F.3d 454, 458 (9th Cir. 2000). Rule 23(a) provides that a class action is proper if four requirements are met: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a)(1). In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Federal Rule of Civil Procedure 23(b). Where, as here, the parties reach a class settlement for a class that has not yet been certified, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co*., 327 F.3d 938, 952 (9th Cir. 2003).

The Court conditionally certified the settlement class for settlement purposes in granting Plaintiffs' motion for preliminary approval. (ECF No. 158, ¶ 3.) The Court should confirm that finding now.

### A.   Numerosity is Satisfied

The class contains approximately 4,177 class members. (Mills Dec. ¶ 10.) The numerosity requirement is met where the class is so large that joinder of all members would be impracticable. *Gay v. Waiters' & Dairy Lunchmen's Union*, 489 F. Supp. 282 (N.D. Cal. 1980), *aff'd*, 694 F.2d 531 (9th Cir. 1982). In order to satisfy this requirement, plaintiffs need not state the "exact" number of potential class members, nor is there a specific number that is required. *See In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 350–51 (N.D. Cal. 2005). It would be impracticable and inequitable to require 4,177 class members to pursue their claims individually. Thus, the class satisfies the numerosity requirement.

### B.   There are Questions of Law and Fact Common to the Class

This case presents common issues of law and fact regarding Delta's wage statements and class members' entitlement to the protection of California law. Delta did not contest commonality during litigation (*see* ECF No. 128 at 2), acknowledging that Delta issued the same

form of wage statements to all California-based flight attendants, and this Court has determined that the form of wage statements issued prior to October 7, 2022 failed to comply with California law. These facts support commonality, since "the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 463 (2016). The existence of "shared legal issues with divergent factual predicates is sufficient" to meet the commonality requirement. *Parra v. Bashas', Inc*., 536 F.3d 975, 978 (9th Cir. 2008) (citation and internal quotations omitted).

In granting class certification, the Court's review was limited to the period before Delta's wage statements were revised. The Fourth Amended Complaint expanded the class period, but the broader claims still turn on common questions of law and fact, including whether the revised format is compliant with California law, and Delta's entitlement to a good faith defense to wage statements prior to 2022 (an issue Plaintiffs reserved for appeal), and after Delta's latest modifications. As with the class previously certified, the evidence and arguments upon which the settlement class's claims rest are common.

## C.    The Named Plaintiffs' Claims Are Typical of the Class

The Named Plaintiffs' wage statement claims—both for the period covered by the certified class and the period covered by the settlement class—are typical of the class because the Named Plaintiffs received the same form of wage statement that other class members received. *See* ECF No. 128 at 3. "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (citation and internal quotations omitted); *see also Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1020 (9th Cir. 1998). Additionally, the Named Plaintiffs have no conflicts of interests with the Class, sharing in a desire to recover for Delta's alleged wrongs.

## D.    Adequacy is Satisfied

The Class Members have been adequately represented in this case. *See* ECF No. 128 at 3. Under the adequacy of representation requirement in Rule 23(a)(4), the Court asks: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and

(2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 130 F.3d at 1020. Named Plaintiffs Eichmann and Flores have been dedicated representatives throughout the case. *See*, *generally*, Eichman Decl., ECF No. 159-4; Flores Decl., ECF No. 159-5.)  Further, as the Court previously found, Plaintiffs' Counsel are adequate. Nichols Kaster, LLP ("NKA") is a qualified firm with extensive experience in class action litigation. (*See*, *generally*, Helland Decl., ECF No. 159-1.)  Plaintiffs' Counsel have been actively prosecuting this action for years, securing successful decisions from this Court and on appeal, and ultimately obtaining a substantial monetary settlement for Class Members.

### E.    A Class Action is Superior to Other Alternatives

As the Court previously held, this case is maintainable under Rule 23(b)(3) because questions of law or fact common to class members predominate over any question affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. ECF No. 128 at 4; Fed. R. Civ. P. 23(b). The questions of law and fact regarding Delta's alleged failure to provide accurate wage statements, and whether Delta may assert a good faith defense to wage statement liability, are common to the class and predominate over any individual issues. Moreover, settlement on a class-wide basis will promote greater efficiency. *See Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1235 (9th Cir. 1996) ("Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation."). Thus, Delta's liability can and should be settled on a class-wide basis only once rather than many separate times as to each Class Member.

The criteria for class certification are met and this Court should confirm its preliminary certification of the class for settlement purposes.

## II.    THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE.

In deciding whether to approve a proposed class action settlement, the Court must determine whether a proposed settlement is "fair, adequate and reasonable." O*fficers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *see also* Fed. R. Civ. P. 23(e)(1)(C). Although there is no "specific benchmark for PAGA settlements, either on their own terms or in

relation to the recovery on other claims in the action," district courts in the Ninth Circuit have evaluated PAGA settlements using the Rule 23 standard for evaluating settlements. *See Ramirez v. Benito Valley Farms, LLC*, 2017 WL 3670794, at *3 (N.D. Cal. Aug. 25, 2017) (citation omitted); *see also Jordan v. NCI Grp., Inc*., 2018 WL 1409590, at *2 (C.D. Cal. Jan. 5, 2018) ("[T]he Court will approve the PAGA settlement upon a showing that the settlement terms are fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes."). The factors trial courts must balance in evaluating a proposed settlement include:

> (1) the strength of the plaintiffs' case;
>
> (2) the risk, expense, complexity, and likely duration of further litigation;
>
> (3) the risk of maintaining class action status throughout the trial;
>
> (4) the amount offered in settlement;
>
> (5) the extent of discovery completed and the stage of the proceedings;
>
> (6) the experience and views of counsel;
>
> (7) the presence of a governmental participant; and
>
> (8) the reaction of the class members to the proposed settlement.

*Pitarro v. DSV Air & Sea, Inc.,* No. 19-CV-00849-SK, 2021 WL 6499973, at *1 (N.D. Cal. Jan. 28, 2021) (citing *Churchill Vill., L.L.C. v. Gen. Elec*., 361 F.3d 566, 575 (9th Cir. 2004)). In addition to considering the above factors, a court also must ensure that "the settlement is not the product of collusion among the negotiating parties.*" In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 946-47 (9th Cir. 2011). As detailed below, these factors weigh heavily in favor of granting final approval.

### A.    The Strength of Plaintiffs' Case, Weighed Against the Risk, Expense, Complexity and Likely Duration of Further Litigation, and the Risk of Maintaining Class Action Status Through Trial, Supports Approval.

The first three factors collectively require the Court to assess the "likelihood of success on the merits and the range of possible recovery" versus the risks of continued litigation and maintaining class action status through the duration of the trial. *See Garner v. State Farm Mut. Auto. Ins. Co*., No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010). While the court must assess the likelihood of success on the merits, "the court need not reach any

ultimate conclusions on the contested issues" because it is often "the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice*, 688 F.2d at 625. These three factors weigh in favor of approving settlement when the defendant has "plausible defenses that could have ultimately left class members with a reduced or non-existent recovery." *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 999 (N.D. Cal. 2015). These factors support approval here.

In this case, even though many of the merits issues have been litigated to decision, future litigation presented substantial uncertainty. For example, while Plaintiffs prevailed on the merits of their PAGA claims, the amount of PAGA penalties are within the Court's discretion. *See Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018) (rejecting plaintiff's request for nearly $70 million in PAGA penalties and affirming the superior court's imposition of .2% of the total penalties). Accordingly, Plaintiffs could litigate this case through trial only to receive a very small PAGA award.

Similarly, while the Court had ruled on the wage statement claims, if the case proceeded through trial, a judgment would only have opened the door for the Parties to appeal. Delta would likely have appealed the Court's finding that the former wage statement format did not comply with the Labor Code, and that it was not entitled to a good faith defense for the entire time period. On the other side, Plaintiffs held out hope of overturning this Court's decision that Delta was entitled to a good faith defense prior to 2022. Success on that appeal would have depended on the legal standard applied to such claims of good faith— the *Naranjo II* issue. (*See* Plaintiffs' Motion for Preliminary Approval, ECF No. 150 at 15-16.)   When the parties inked the settlement agreement, *Naranjo II* had not been decided and the vast majority of the settlement value for the class was driven by the risk that the *Naranjo II* decision could provide Plaintiffs sufficient grounds to overturn the Court's decision here.

*Naranjo II* did not go the employees' way. The litigation risk going forward therefore weighs strongly in favor of granting final approval to the settlement. If the class is forced to go back to litigation, it will do so without the substantial appellate upside it enjoyed prior to the *Naranjo II* decision. Plaintiffs do not believe they would be able to obtain a settlement anywhere

1  near the value presented here without going through a full PAGA trial and obtaining a substantial

2  PAGA award—a risky proposition given the discretionary nature of PAGA penalties and this

3  Court's previous rulings on Delta's good faith defense. The Court should approve the settlement.

**B.      The Amount Offered in Settlement Weighs Strongly in Favor of Final Approval.**

5          In the face of the above risks, Plaintiff negotiated an excellent result for the class and the

6  LWDA. In evaluating the amount of recovery the court must examine the settlement as a whole

7  for overall fairness. *See Officers for Justice*, 688 F.2d at 628. In addition, "it is well-settled law

8  that a proposed settlement may be acceptable even though it amounts to only a fraction of the

9  potential recovery that might be available to the class members at trial." *Nat'l Rural*

10 *Telecommunications Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 527 (C.D. Cal. 2004).

11         This settlement provides an exemplary result for the class on their Section 226 claims. At

12 the time of the settlement conference Plaintiffs valued the wage statement claims at $2,884,200

13 for the time period covered by the Court's summary judgment ruling. (Helland Decl., ECF No.

14 150-1, ¶ 9.) If Plaintiffs had been able to secure a reversal of the Court's decision on good faith,

15 the value of these claims would have increased to $10,325,650 from the start of the class period

16 through October 2022.[2] (*Id.* ¶ 9.) The ~$7.5 million difference between these two numbers

17 represents the *Naranjo II* appellate risk. At the time of settlement, this was a live issue before the

18 California Supreme Court in *Naranjo II*, which led to considerable uncertainty and risk for both

19 parties.

20         The Supreme Court's decision in *Naranjo II* all but eliminated the appellate upside for

21 the class. And yet, under the settlement, class members will receive their *full allotment of pre-*

22 *January 2022 Section 226 wage statement penalties* and nearly the full value of the potential

23 appellate upside under *Naranjo II*. The Court must consider this considerable excess value when

24 evaluating whether the settlement as a whole provides good value to class members. Indeed,

25 even though the allocation does not assign weight to the minimum wage claims, the settlement

26

27 _____

28 [2] The settlement also covers the time period after the October 2022 wage statement revisions and will allocate payment to Class Members for this period. At the time of the settlement conference, Plaintiffs had not precisely valued those claims because they had been excluded from the case.

will pay class members more than the present-day, realistic value of their wage statement claims.[3]

Plaintiffs also recovered $1,164,787.50 in PAGA penalties, with $873,585.00 to be paid to the LWDA and $291,202.50 to be allocated to PAGA Members per statute. Plaintiffs valued their PAGA penalty claims at approximately $52,776,800. (Helland Decl., ECF No. 150-1, ¶ 9.) However, as the Court is well aware, the theoretical maximum PAGA penalties often greatly exceeds the likely recovery at trial. Moreover, "where a settlement for a Rule 23 class is robust, the statutory purposes of PAGA may be fulfilled even with a relatively small award on the PAGA claim itself, because such a settlement not only vindicates the rights of the class members as employees, but may have a deterrent effect upon the defendant employer and other employers, an objective of PAGA." *Viceral v. Mistras Grp., Inc.*, 2016 WL 5907869, at *9 (N.D. Cal. Oct. 11, 2016) (internal quotation omitted). Given the substantial class award here, which covers an almost identical class as the PAGA claims, the amount allocated to PAGA is more than sufficient.[4]  For example, a recent hybrid PAGA/FLSA case involving unpaid wages to farm workers approved a PAGA settlement of just under $200,000 (after fees and expenses) in the face of almost $20 million in potential PAGA exposure. *Hernandez v. Dutton Ranch Corporation*, 2021 WL 5053476 (N.D. Cal. Sept. 10, 2021) (granting final approval to settlement in which PAGA allocation represented "approximately 2%-4% of the PAGA exposure,"); *see also Cuzick v. Zodiac U.S. Seat Shells, LLC*, 2017 WL 4536255, at *1-2 (N.D. Cal. Oct. 11, 2017) (granting preliminary approval for $952,000 gross settlement of off-the-clock, and meal and rest break claims, for 1,168 individuals for a gross average recovery of approximately $800 per person); *Jennings v. Open Door Mktg., LLC*, No. 15-cv-04080-KAW, 2018 WL 4773057, at *9 (N.D. Cal. Oct. 3, 2018) (approving a PAGA settlement of 0.6% of its total value because of

---

[3] For further discussion of the value this settlement provides class members, Plaintiffs refer the Court to the Supplemental Memorandum in Support of Plaintiffs' Unopposed Motion for Preliminary Approval.  ECF No. 157 at pp. 7-10 of 16.

[4] Pursuant to Northern District of California guidelines, Plaintiffs' Counsel provided a comparison to *Merante v. American Institute for Foreign Study, Inc.*, Case No. 3:21-cv-03234-EMC (N.D.Cal.) in the Declaration of Matthew C. Helland. (*See* Helland Decl., ECF No. 150-1, ¶ 10.)

the "risks of no recovery"); *McLeod v. Bank of Am., N.A.*, No. 16-CV-03294-EMC, 2018 WL 5982863, at *4 (N.D. Cal. Nov. 14, 2018) (finding settlement for $50,000 in PAGA penalties adequate where the total possible recovery for penalties was estimated at $4.7 million).

### C.    The Stage of the Proceedings Also Favors Final Approval.

The extent of discovery is relevant in determining the parties' knowledge of the case. The parties engaged in substantial litigation over the life of this case and were on the eve of trial when the case settled. Over the course of litigation some of Plaintiffs' claims were eliminated and some were confirmed on the merits, and as a result the range of likely outcomes came into focus. At the same time, the parties reached a settlement prior to engaging in the next steps of litigation—a class and PAGA trial—which would have been time consuming and expensive and would have resulted in a judgement that surely would have been tested on appeal. After nine years of litigation, the Parties found an opportune time to settle this case.

### D.    The Considerable Experience and Strongly Supportive Views of Counsel Weigh in Favor of Final Approval.

"In determining whether a settlement is fair and reasonable, the opinions of counsel should be given considerable weight both because of counsel's familiarity with the litigation and previous experience with cases." *Slezak v. City of Palo Alto*, Case No. 16-cv-3224-LHK, 2017 WL 2688224, at *5 (N.D. Cal. June 22, 2017). Plaintiffs' and Defendant's Counsel are experienced attorneys who are familiar with PAGA and wage and hour class actions. (Helland Decl., ECF No. 150-1, ¶¶ 8, 14, 15.) Counsel is especially well-versed in the factual and legal issues of this case, having litigated to the California Supreme Court and Ninth Circuit. Plaintiffs' Counsel fully supports the resulting settlement as fair, reasonable, and adequate given the risks of litigation. (Helland Decl., ECF No. 150-1, ¶ 14.) This factor weighs in favor of approval.

### E.    The Absence of a Government Participant Favors Approval.

At the outset of the case, Plaintiffs exhausted with the LWDA with no response. Plaintiffs filed the settlement agreement with the LWDA. (Helland Supp. Decl., ECF No. 155, ¶ 5.) Accordingly, there is no governmental entity involved other than the LWDA which so far has chosen not to intervene. This factor also favors approval.

### F.    The Reaction of Class Members to The Proposed Settlement Supports Approval

1     The reaction of the Rule 23 class was overwhelmingly positive. Out of approximately

2  4,177 class members who received notice, not a single class member objected and only 3 class

3  members opted out of the settlement to date.[5]  (Mills Decl. ¶¶ 16-17; Court Docket 3:15-cv-

4  00131-WHO (no objections filed).) This rate of participation supports approval. *See Stonehocker*

5  *v. Kindred Healthcare Operating LLC*, 2021 WL 1643226, at *8 (N.D. Cal. Apr. 27, 2021);

6  *Covillo v. Specialtys Café*, 2014 WL 954516, at *6 (N.D. Cal. Mar. 6, 2014) (38% participation

7  with no objections and no opt-outs "strongly favors approval").

8  **III.    THE PAGA SETTLEMENT WARRANTS APPROVAL**

9     The PAGA portion of a settlement must be reviewed and approved by the Court. Cal. Lab.

10  Code § 2699(l)(2). Neither PAGA nor state law squarely address the standard of review for

11  PAGA claims. *See, e.g. Flores v. Starwood Hotels & Resorts Worldwide, Inc.* 253 F.Supp.3d.

12  1074, 1075 (C.D. Cal. 2017) ("[N]either the California legislature, nor the California Supreme

13  Court, nor the California Courts of Appeal, nor the California Labor & Workforce Development

14  Agency (LWDA)" has definitively addressed the standard of review for PAGA). "[C]lass action

15  requirements . . . need not be met when an employee's representative action against an employer

16  is seeking civil penalties under [PAGA]." *Arias v. Sup. Ct.*, 46 Cal.4th 969, 975 (2009). PAGA

17  settlements must be considered in the context of "the overall settlement of the case" and need not

18  allocate any portion of the recovery to PAGA penalties to warrant court approval. *Nordstrom*

19  *Com'n Cases,* 186 Cal.App.4th 576, 589 (2010).

20     Here, the $1,164,787.50 PAGA allocation represents 2.2% of the estimated value of the

21  PAGA claims. (Helland Decl., ECF No. 150-1, ¶ 9). The PAGA allocation amounts to 7.3% of

22  the gross settlement, which is considerably more than the portions that are routinely approved in

23  other hybrid class and PAGA actions. *See, e.g.*, *Boyd v. Bank of Am.*, 2014 WL 6473804, at *8

24  (C.D. Cal. Nov. 18, 2014) (approving PAGA penalties worth 0.32% of gross settlement); *Viceral*

25  *v. Mistras Grp. Inc.*, 2017 WL 661352, at ** 1, 3 (N.D. Cal. Feb. 17, 2017) (approving PAGA

26  penalties worth 0.33% of gross settlement and worth 0.15% of total estimated value of PAGA

27

28  _____

[5] Plaintiffs will file a supplemental Administrator Declaration after the final response deadline
passes and in advance of the November 13, 2024 final approval hearing.

1    claims); *Alexander v. FedEx Ground*, 2016 WL 1427358, at *2 (N.D. Cal. Apr. 12, 2016) (0.7%

2    PAGA allocation); *Vazquez v. USM Inc.*, 2016 WL 612906, at *1 (N.D. Cal. Feb. 16, 2016)

3    (0.67%); *Cruz v. Sky Chefs*, 2014 WL 7247065, at *3 (N.D. Cal. Dec. 19, 2014) (0.57%).

4    **IV.    THE ADMINISTRATOR COMPLIED WITH THE APPROVED NOTICE**

5    **PROCESS**

6         In granting preliminary approval to the settlement, the Court found that the contemplated

7    notice process and documents satisfied all legal requirements. (ECF No. 158, ¶ 5.) The Parties,

8    through the settlement administrator, executed that notice process. (*See*, *generally*, Mills Decl.)

9    The notice was exceptionally effective in reaching class members, with less than 1 percent of

10   notices remaining undeliverable—with a class that stretches back 10 years. Because Rule 23

11   "does not necessarily require that every in-state class member actually receive notice," *Rannis v.*

12   *Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010), the Court should confirm that the notice process

13   satisfied the requirements of Rule 23 and due process. *See*, *e.g.*, *Zakikhani v. Hyundai Motor*

14   *Co.*, 2023 WL 4544771, at *5 (C.D. Cal. June 14, 2023) (overruling objection to sufficiency of

15   notice where 6.2% and 8.6% of notice packets were returned undeliverable and no skip tracing

16   was performed); *Ramirez v. Merrill Gardens, LLC*, 2024 WL 3011142, at *10 (E.D. Cal. June

17   11, 2024) (finding notice to be sufficient with 2% undeliverable rate in a class of 4,673);

18   *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 254 (N.D. Cal. 2015) (notice was

19   sufficient where, in class with 1,318 members, administrator could not locate new address for 16

20   undeliverable notices and 4 notices were returned after a second mailing, resulting in a 1.5%

21   undeliverable rate); *Boring v. Bed Bath & Beyond of California Ltd. Liab. Co.*, 2014 WL

22   2967474, at *1 (N.D. Cal. June 30, 2014) (mailed notice sufficient where 27 of 1,374 notices

23   (2%) were returned undeliverable).

24   **V.    PLAINTIFFS' REQUESTED ATTORNEYS' FEES, COSTS, AND**

25   **ENHANCEMENTS ARE REASONABLE**

26        Plaintiffs filed their motion for Approval of Fees, Costs, and Enhancements on

27   September 12, 2024. *See* ECF No. 159. The settlement administrator added the motion to the

28   settlement website on or around September 19. (Mills Decl. ¶ 8.) To date no class members have

objected to the requested fees, costs, or enhancements. (Mills Decl. ¶ 17.) For the reasons outlined in that motion, Plaintiffs respectfully request that the Court granted the requested fees, costs, and enhancements.

## VI.    THE COURT SHOULD APPROVE $31,478.00 IN SETTLEMENT ADMINISTRATOR COSTS

The settlement administrator has capped its costs at $31,478.00. (Mills Decl. ¶ 18.) This is below the estimated range of $32,000 to $40,000, ECF No. 157-2, and less than the $35,000 amount contemplated in the settlement agreement. The Court should approve payment of the requested administration costs.

## VII.    THE COURT SHOULD APPROVE LEGAL AID AT WORK AS CY PRES RECIPIENT

In the event that any settlement checks remain uncashed after 120 days, the Settlement Agreement calls for those funds to be donated to Legal Aid at Work as a *cy pres* beneficiary. (Agreement ¶ 58.) In granting preliminary approval, the Court approved Legal Aid at Work as the cy pres beneficiary. (ECF No. 158, ¶ 9.) For completeness of the record, Plaintiffs provide detailed information about Legal Aid at Work here.

Formerly known as the Legal Aid Society – Employment Law Center, Legal Aid at Work is a non-profit organization "that provides civil legal services to the indigent and pro bono employment law advice to low-income communities." *Moore v. PetSmart, Inc.*, 2015 WL 5439000, at *8 (N.D. Cal. Aug. 4, 2015) (approving designation as *cy pres* recipient, noting that "the work performed by the Employment Law Center bears a substantial nexus to the interests of the class members" in a wage and hour case). Legal Aid at Work "works to ensure that all workers benefit from the laws that regulate pay and work hours." *Eddings v. Health Net, Inc.*, 2013 WL 3013867, at *4 (C.D. Cal. June 13, 2013). Accordingly, Legal Aid at Work satisfies the Ninth Circuit's standard that a *cy pres* recipient be guided by objectives underlying the statutes at issue and the interests of silent class members. *Bernstein v. Virgin Am., Inc.*, 2023 WL 7284158, at *1 (N.D. Cal. Nov. 3, 2023) (approving Legal Aid at Work as cy pres beneficiary in flight attendant settlement); *McCulloch v. Baker Hughes Inteq Drilling Fluids, Inc.*, 2017 WL

17

5665848, at *6 (E.D. Cal. Nov. 27, 2017) (approving Legal Aid at Work as cy pres beneficiary in wage and hour class and collective settlement, citing *Dermis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012)).

### **CONCLUSION**[6]

For these reasons Plaintiffs ask that the Court grant final approval to the settlement.

DATED: October 9, 2024                    NICHOLS KASTER, LLP

By: s/ Matthew C. Helland
Matthew Helland

Attorneys for Plaintiffs

---

[6] Delta filed its motion Approval of a Consent Decree on September 13, 2024 (ECF No. 160), which Plaintiffs do not oppose (ECF No. 162). The Court's grant or denial of that consent decree has no bearing on its ruling on this motion for Final Approval. *See* ECF No. 157 p. 14 of 16.